EXHIBIT 1



1    Michael Hurey (State Bar No. 139,550)
     mhurey@kleinberglerner.com
2    Michael Carwin (State Bar No. 309,696)
     mcarwin@kleinberglerner.com
3    KLEINBERG & LERNER, LLP
     1875 Century Park East, Suite 1150
4    Los Angeles, California 90067-2501
     Telephone:   (310) 557-1511
5    Facsimile:   (310) 557-1540

6

7    Attorneys for Plaintiff
     REKO HOLDINGS, LLC

8

     **CONFORMED COPY**
     **ORIGINAL FILED**
     Superior Court of California
     County of Los Angeles

     **JAN 20 2017**

     Sherri R. Carter, Executive Officer/Clerk
     By: Judi Lara, Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT

| | |
|---|---|
| REKO HOLDINGS, LLC, | Case No. **BC 6 4 7 6 6 1** |
|        Plaintiff, | **UNLIMITED CIVIL ACTION** |
|        v. | 1. **CONVERSION** <br> 2. **UNJUST ENRICHMENT** <br> 3. **TREBLE DAMAGES PURSUANT TO** <br>     **PENAL CODE § 496** <br> 4. **NEGLIGENCE** <br> 5. **CONSPIRACY** |
| ACAP FINANCIAL, INC., DAVID ADAMS, ALPINE SECURITIES CORP., AMP GROUP HOLDINGS, INC., CITIBANK, N.A., EMPIRE STOCK TRANSFER, INC., GSS GROUP LLC, VLADIMIR HANIN, HJK TRADE, INC., HOVIK KOSTANDYAN, PAUL KOZLOV, JP MORGAN CHASE BANK, N.A., LISANDRA PATIN, GARY SHIRINYAN, WELLS FARGO BANK, N.A., and DOES 1 - 30, inclusive, | **DEMAND FOR A JURY TRIAL** |
|        Defendants. | |

             - 1 -

                                                 **COMPLAINT**

Plaintiff Reko Holdings, LLC ("Reko" or "Plaintiff") as their Complaint in this action allege as follows:

**THE PARTIES**

1.      Plaintiff Reko is a corporation formed and existing under the laws of the State of Nevada. The managing member of Reko is Ms. Regina Kats.

2.      Plaintiff is informed and believes, and on that basis alleges, that all times herein mentioned, Defendant Vladimir Hanin is an individual, residing in the County of Los Angeles.

3.      Defendant ACAP Financial, Inc. ("ACAP") is a corporation formed and existing under the laws of the State of Utah.

4.      Defendant Alpine Securities Corporation ("Alpine") is a corporation formed and existing under the laws of the State of Utah.

5.      Defendant AMP Group Holdings, Inc. ("AMP") is a corporation formed and existing under the laws of the State of Delaware.

6.      Defendant Empire Stock Transfer, Inc. ("Empire") is a corporation formed and existing under the laws of the State of Nevada having a principal place of business at 1859 Whitney Mesa Dr., Henderson, Nevada, 89014.

7.      Defendant GSS Group LLC ("GSS") is a California limited liability company having a principal place of business at 5242 Vesper Ave, Unit 11, Van Nuys, California, 91411.

8.      Defendant HJK Trade, Inc. ("HJK") is a corporation formed and existing under the laws of the State of California, having a principal place of business at 5730 Katherine Ave, Van Nuys, California, 91401.

9.      Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), 45 Fremont St., San Francisco, CA 94104, is an interstate federally regulated banking institution, licensed to do

- 2 -

**COMPLAINT**

business in the State of California with offices throughout the State of California, and in Los Angeles County, California.

10.     Defendant Citibank, N.A. ("Citibank"), 399 Park Avenue, New York, New York 10043, is an interstate federally regulated banking institution, licensed to do business in the State of California with offices throughout the State of California, and in Los Angeles County, California.

11.     Defendant JPMorgan Chase Bank, N.A. ("Chase"), 270 Park Avenue, New York, New York 10017, is an interstate federally regulated banking institution, licensed to do business in the State of California with offices throughout the State of California, and in Los Angeles County, California.

12.     Plaintiff is informed and believes, and on that basis alleges, that all times herein mentioned, Defendant Hovik Kostandyan is the director of HJK.

13.     Plaintiff is informed and believes, and on that basis alleges, that all times herein mentioned, Defendants Paul Kozlov and Lisandra Patin were and are managers of AMP.

14.     Plaintiff is informed and believes, and on that basis alleges, that all times herein mentioned, Defendant Adams David is an agent of ACAP.

15.     Plaintiff is informed and believes, and on that basis alleges, that all times herein mentioned, Defendant Gary Shirinyan is a manager of GSS.

16.     The true names and capacities of Does one through thirty, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names, and when the true names and capacities of such Defendants are ascertained, complainant will ask leave of Court to amend this complaint to insert the same.

COMPLAINT

17.   Plaintiff is informed and believes, and thereon alleges, that each of the Defendants including the Doe Defendants, are contractually liable for the events and happenings herein alleged and that such manner legally caused the damages herein set forth. Plaintiff is uncertain as to the manner of function of said Defendants, and Plaintiff prays leave to amend this Complaint when the same has been ascertained.

## JURISDICTION AND VENUE

18.   The Court has subject matter jurisdiction over this action based on California Constitution Article 6, Section 10.

19.   The Court has personal jurisdiction over all of the Defendants referred to herein because all causes of action asserted herein arise out of conduct undertook by Defendants in Los Angeles County, State of California.

20.   Venue is proper in this Court under Code of Civil Procedure §§ 395 and 395.5 because the injury to Plaintiffs occurred, and is occurring, in Los Angeles County, State of California, and the liabilities to which Defendants are subject arise in Los Angeles County, State of California.

## FACTUAL BACKGROUND

21.   The present action arises out of a theft of stock certificates owned by the Plaintiff and the subsequently improperly transferred to some of the Defendants.

The Stock Certificates

22.   Third party Gopher Protocol, Inc. ("Gopher") is a California corporation engaged in the business of developing a real-time, heuristic based mobile tracking technology. Gopher is a publicly traded corporation, whose share trade in the "over-the-counter" market. In some instances, Gopher issues physical stock certificates to owners of stock in the company. Each of the stock certificates issued by Gopher is identified by a unique number.

- 4 -

COMPLAINT

23.    As of April 16, 2016 Plaintiff Reko was the owner of 619,000 shares of Gopher. The ownership of these shares was evidenced by stock certificate nos. 372, 373 and 375. True and correct copies of stock certificate nos. 372, 373 and 375 are attached hereto and marked as Exhibits 1, 2, and 3, respectively.

24.    As of April 16, 2016 third-party Direct Communications was the owner of 250,000 shares of common stock of Gopher. The ownership of these shares was evidenced by stock certificate nos. 368, 369, 370 and 371. True and correct copies of each of the stock certificates are attached hereto and marked as Exhibits 4, 5, 6 and 7. Although the stock certificates bear the names of third parties, Direct Communications was the actual owner of stock certificates 368, 369, 370 and 371.

25.    Direct Communications has, prior to filing of this action, assigned to Reko all rights to recover for the actions described in this Complaint with respect to the shares in Gopher evidenced by stock certificates 368, 369, 370 and 371.

The Theft and Subsequent Unauthorized Transfer of the Stock Certificates

26.    On a date that is presently unknown to Plaintiff, but was sometime after approximately April 12, 2016, Gopher stock certificate nos. 368, 369, 370, 371, 372, 373, and 375 were stolen from a private residence in Tarzana, California.

27.    Vladimir Hanin had from time to time, been inside the residence in Tarzana California where the certificates were located prior to April 12, 2016.

28.    Reko and Direct Communications never authorized any of the Defendants to take possession of Gopher stock certificate nos. 368, 369, 370, 371, 372, 373, and/or 375.

29.    On information and belief, the stock certificates were stolen by Defendant Vladimir Hanin.

30.    Ms. Kats, the managing member of Reko, first discovered the theft of Reko's stock certificates on or about September 26, 2016.

31.    Ms. Kats reported the theft of the stock certificates to the Los Angeles Police

- 5 -

1    Department ("LAPD") on or about September 26, 2016. True and correct copies of the police

2    report and an affidavit made by Regina Kats are attached hereto and marked as Exhibit 8.

3         32.    A portion of the police report of Exhibit 8, which was prepared by the LAPD,

4    states the stock certificates were stolen from Los Angeles Valley College. That information is

5    incorrect and does not reflect the true fact that the certificates were stolen from a private

6    residence in Tarzana, California.

7         33.    Plaintiff is informed and believes, and thereon alleges, that after the theft of stock

8    certificates 368, 369, 370, 371, 372, 373 and 375 they came into the possession of Defendants

9    Vladimir Hanin, HJK, GSS and AMP.

10        34.    On or about July 20, 2016, the Gopher common stock represented by certificate

11   nos. 368, 369 and 370, respectively, were transferred to GSS. Stock certificates 368, 369 and 370

12   were subsequently cancelled and a new consolidated stock certificate no. 401 for 187,500 shares

13   of common stock in Gopher was issued to Defendant GSS. True and correct copies of the stock

14   transfer documents are attached hereto and marked as Exhibit 9.

15        35.    On information and belief, GSS received consolidated stock certificate no. 401

16   knowing that it had no right to receive the stock, as stock certificates 368, 369 and 370 had been

17   previously stolen or otherwise lost.

18        36.    On or about July 26, 2016, the Gopher common stock represented by stock

19   certificate no. 371 was transferred to AMP. Stock certificate 371 was subsequently cancelled and

20   a new stock certificate no. 402 for 62,500 shares of common stock in Gopher was issued to

21   Defendant AMP. True and correct copies of the stock transfer documents are attached hereto and

22   marked as Exhibit 10.

23        37.    On information and belief, GSS received stock certificate no. 402 knowing that it

24   had no right to receive the stock, as stock certificate no. 371 had been previously stolen or

25   otherwise lost.

26        38.    On or about July 26, 2016, Reko's 213,000 shares of common stock in Gopher,

27   represented by stock certificate no. 372, were transferred to Vladimir Hanin using a forged

28

**COMPLAINT**

1  signature of Regina Kats, the managing member of Reko.

2      39.    Defendant Vladimir Hanin furnished false and inconsistent information to transfer

3  agent Empire at the time of the fraudulent stock transfer request. A forged "Stock Purchase

4  Agreement" purporting to be between Reko and Defendant Vladimir Hanin was provided to

5  Empire by Vladimir Hanin at the time of the transfer of stock.

6      40.    Defendant Chase, at a location in Sherman Oaks, California, improperly issued a

7  medallion stamp guarantee (stamp # Z9010406) in connection with stock certificate no. 372

8  based on the forged signature of Regina Kats.

9      41.    Stock certificate no. 372 was subsequently cancelled and new stock certificate no.

10  403 for 213,000 shares of common stock in Gopher was issued to Defendant Vladimir Hanin.

11  True and correct copies of the stock transfer documents are attached hereto and marked as

12  Exhibit 11.

13     42.    On information and belief, Vladimir Hanin received stock certificate no. 403

14  knowing he had no right to receive the stock, as stock certificate no. 372 had been stolen or

15  otherwise lost.

16     43.    On or about July 28, 2016, Reko's 213,000 shares of common stock in Gopher,

17  represented by stock certificate 373, were transferred to HJK at the direction of Hovik

18  Kostandyan using a forged signature of Regina Kats, the managing member of Reko.

19     44.    Defendant Wells Fargo, at a location in Sherman Oaks, California, improperly

20  issued a medallion stamp guarantee (stamp #X0209353) in connection with stock certificate no.

21  373 based on the forged signature of Regina Kats.

22     45.    Stock certificate no. 373 was subsequently cancelled and new stock certificate no.

23  405 for 213,000 shares of common stock in Gopher was issued to Defendant HJK.

24     46.    On information and belief, HSK received stock certificate no. 405 knowing it had

25  no right to receive the stock, as stock certificate no. 373 had previously been stolen or otherwise

26  lost.

27     47.    On or about July 28, 2016, Reko's 213,000 shares of common stock in Gopher,

28

- 7 -

1   represented by stock certificate 375, were transferred to AMP at the direction of Paul Kozlov

2   and/or Lisandra Patin using a forged signature of Regina Kats.

3       48.     Defendant Citibank, at a location in Sherman Oaks, California, improperly issued

4   a medallion stamp guarantee (stamp #X0209353) in connection with stock certificate no. 375

5   based on the forged signature of Regina Kats.

6       49.     Stock certificate no. 375 was subsequently cancelled and new stock certificate no.

7   404 for 213,000 shares of common stock in Gopher was issued to Defendant AMP.

8       50.     On information and belief, AMP received stock certificate no. 404 knowing it had

9   no right to receive the stock, as stock certificate no. 375 had previously been stolen or otherwise

10  lost.

11      51.     None of the Defendants Vladimir Hanin, AMP, GSS or HJK paid Reko or Direct

12  Communications any consideration for the stock transferred to them.

13      52.     At no time did Reko or Direct Communications ever agree to transfer any stock in

14  Gopher to any of the Defendants Vladimir Hanin, AMP, GSS or HJK.

15      53.     Defendant Empire is the transfer agent for Gopher stock.

16      54.     Plaintiffs are informed and believe, and thereon allege, that Empire did not verify

17  the authenticity of the signatures provided in the documentation for the stock transfers described

18  above, even though Empire had records containing the authentic signature of Regina Kats.

19      55.     The stock certificates owned by Reko were for restricted stock and stock

20  certificates no. 372, 373 and 375 bore a "Restricted" legend on their face.

21      56.     On August 19, 2016, Empire received a request from GSS and AMP to remove

22  the restricted label for stock certificate nos. 401 and 402. Empire subsequently sent an email to

23  Gopher asking it advise Empire of any known circumstances under which the legends should not

24  be removed.

25      57.     In response to Empire's email, Gopher submitted multiple stop requests to

26  Defendants Empire, Alpine, and ACAP advising them of "totally defective" discrepancies in the

27  documentation provided by GSS and AMP to Empire. Some of the stop requests were submitted

28

COMPLAINT

1  the same day – August 19, 2016 – and others were submitted on August 30, 2016. True and

2  correct copies of the stop requests are attached hereto and marked as Exhibit 12.

3      58.    On or about September 1, 2016, despite Defendants Empire, Alpine and ACAP's

4  awareness of the defects in the documentation, transferred GSS's stock represented by stock

5  certificate no. 401 to a third party. Stock certificate no. 401 was subsequently cancelled and a

6  new stock certificate no. 418 for 187,500 shares of common stock in Gopher was issued to the

7  third party. Defendants Empire, Alpine and ACAP's made the transfer despite knowing that stock

8  represented by stock certificate no. 401 had been stolen.

9      59.    On or about September 1, 2016, despite Empire, Alpine and ACAP's awareness of

10 the defects in the documentation, transferred AMP's stock represented by stock certificate no.

11 402 to ALPCO. Stock certificate 402 was subsequently cancelled and newly issued stock

12 certificate no. 417 for 62,500 shares of common stock in Gopher issued to Defendant ALPCO.

13 True and correct copies of the stock certificates are attached hereto and marked as Exhibit 13.

14

15                     **FIRST CAUSE OF ACTION**
                              Conversion
16        (AMP, GSS, Vladimir Hanin, HJK Hovik Kostandyan,
              Paul Kozlov, Lisandra Patin and Gary Shirinya)
17
18      60.    Plaintiff repeats and incorporates by this reference the allegations contained in

    Paragraphs 1 through 59 above as though fully set forth herein.
19
20      61.    The stock certificates and common stock shares described above were and are the

    property of Plaintiff because Plaintiff did not authorize any transfer of Gopher Stock.
21
22      62.    The stock certificates and common stock shares in Gopher are identifiable and/or

23 capable of being made certain from a review of either the information of Plaintiff and/or the

    records of Defendants.
24
25      63.    Defendants AMP, GSS, Vladimir Hanin and HJK intentionally and substantially

26 interfered with the ownership of the Gopher Protocol stock and stock certificates owned by Reko

    and Direct Communications by taking possession of the stock certificates and converting them
27

28
                              - 9 -
                                                              **COMPLAINT**

1  for their own use and enjoyment.

2          64.     Defendants Hovik Kostandyan, Paul Kozlov, Lisandra Patin and Gary Shirinyan,

3  intentionally and substantially interfered with the ownership of the Gopher Protocol stock and

4  stock certificates owned by Reko and Direct Communications by preventing Reko and Direct

5  Communications from having access to the stock certificates.

6          65.     On information and belief, Defendants Hovik Kostandyan, Paul Kozlov, Lisandra

7  Patin and Gary Shirinyan, assisted in the transfer of the Gopher stock certificates to AMP, GSS,

8  Vladimir Hanin and HJK by making false statements of fact.

9          66.     Plaintiff did not consent in any manner to Defendants AMP, GSS, Vladimir Hanin

10  and HJK taking the stock certificates and common stock shares.

11          67.     Defendants Vladimir Hanin, HJK, GSS, AMP and ALPCO have not returned the

12  stock certificates or the common stock shares.

13          68.     As a result of the actions of Defendants AMP, GSS, Vladimir Hanin, HJK Hovik

14  Kostandyan, Paul Kozlov, Lisandra Patin and Gary Shirinya in misappropriating and converting

15  the stock certificates and common stock shares of Gopher, Plaintiff has been damaged in an

16  amount that is presently uncertain, but is no less than $1,000,000, the exact amount of which will

17  be proven at trial.

18          69.     In doing the actions mentioned above, including forging documents and

19  participating in the fraudulent and unauthorized transfer of stock certificates, Defendants AMP,

20  GSS, Vladimir Hanin, HJK Hovik Kostandyan, Paul Kozlov, Lisandra Patin and Gary Shirinya

21  acted with malice, oppression, or conscious disregard for the common law rights of Plaintiff.

22  Such wrongful and intentional acts justify awarding Plaintiff punitive damages pursuant to

23  California Civil Code § 3294 in an amount sufficient to deter future similar conduct by such

24  Defendants. Accordingly, Plaintiff is entitled to and hereby requests punitive damages to be paid

25  to Plaintiff in a sum to be proven at trial.

26

27

28

COMPLAINT

**SECOND CAUSE OF ACTION**
<u>Unjust Enrichment</u>
(Against AMP, GSS, Vladimir Hanin and HJK)

70.     Plaintiffs repeat and incorporate by this reference the allegations contained in Paragraphs 1 through 69 above as though fully set forth herein.

71.     As a legal, direct, and proximate result of the wrongdoing as set forth above, the sums obtained by Defendants AMP, GSS, Vladimir Hanin and HJK were obtained by virtue of and in the course of their wrongdoing and were therefore not properly earned. Said sums must therefore be disgorged and repaid to Plaintiff in a sum that is presently unknown but is in excess of $1,000,000, together with interest at the legal rate thereon from on or about April 12, 2016, to the time of the entry of judgment herein.

**THIRD CAUSE OF ACTION**
<u>Treble Damages – Penal Code § 496</u>
(Against AMP, GSS, Vladimir Hanin, HJK Hovik Kostandyan,
Paul Kozlov, Lisandra Patin and Gary Shirinya)

72.     Plaintiff repeats and incorporates by this reference the allegations contained in Paragraphs 1 through 71 above as though fully set forth herein.

73.     Section 496 of the California Penal Code provides, in pertinent part:

"(a) Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (b) of Section 1170.

- 11 -

COMPLAINT

... (c) Any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees ."

74.     Defendants AMP, GSS, Vladimir Hanin and HJK received the Gopher stock certificates as described above, knowing the same to be stolen from Rreko and Direct Communications.

75.     Defendants Hovik Kostandyan, Paul Kozlov, Lisandra Patin and Gary Shirinyan have concealed, transferred, and/or withheld the stolen stock certificates from Reko and/or Direct Communications or have assisted others in doing the same.

76.     In light of the foregoing, Plaintiffs are entitled to treble damages authorized under Penal Code § 496(c) against Defendants AMP, GSS, Vladimir Hanin, HJK Hovik Kostandyan, Paul Kozlov, Lisandra Patin and Gary Shirinya. The actual damages sustained by Reko and Direct Communications by the theft and concealment of the Gopher common stock described above is no less than $1,000,000 and will be proven at trial. Plaintiff therefore seeks treble damages herein in the sum of no less than $3,000,000.

### FOURTH CAUSE OF ACTION
#### Negligence
(Against Alpine, Empire, ACAP, Wells Fargo, Citibank and Chase)

77.     Plaintiff repeats and incorporates by this reference the allegations contained in Paragraphs 1 through 76 above as though fully set forth herein.

78.     Pursuant to California Civil Code 1714(a), Defendants Alpine, Empire, ACAP, Wells Fargo, Citibank and Chase owed a duty of care to Reko and Direct Communications. The named Defendants are responsible not only for the result of their own willful acts, but also for an

- 12 -

injury occasioned to Reko and Direct Communications by want of ordinary care or skill in the management of Wells Fargo, Citibank and Chase's (the "Bank Defendants") property or person.

79.     Defendant Empire, as Gopher's transfer agent, owes Plaintiff a duty to confirm that the person seeking registration of a stock transfer is eligible to have the security registered in its name; the endorsement is made by the appropriate person or his authorized agent; reasonable assurance is given that the endorsement is genuine and authorized; the transfer does not violate certain restrictions; and the transfer is in fact rightful or to a protected purchaser.

80.     Defendants Alpine and ACAP, as brokers and/or broker-dealers, had a duty to Reko and Direct Communications to not transfer any stock knowing the same to be stolen or otherwise in dispute. Defendants Alpine and ACAP proceeded with the stock transfer in the face of direct notification of the fraudulent nature of the transactions.

81.     The Bank Defendants owe Plaintiffs a duty of care to prudently investigate and verify the authenticity of the signatures for a Medallion Signature Guarantee.

82.     Defendant Empire breached its duties of care that were owed to Plaintiff because it did not confirm Defendants Vladimir Hanin, HJK, GSS, AMP and ALPCO were eligible to have the security registered in their name; the endorsements were made by the appropriate person or his authorized agent; no reasonable assurance was given that the endorsement was genuine and authorized; the transfer violated certain restrictions; and the transfer damaged the Plaintiff.

83.     Defendants Alpine, Empire, ACAP, Wells Fargo, Citibank and Chase negligently, carelessly, recklessly, and wantonly caused injury to Plaintiff in that among other things: Defendants Alpine, Empire, ACAP, Wells Fargo, Citibank and Chase conducted themselves in such a manner that Defendants Vladimir Hanin, HJK, GSS, AMP and ALPCO were able to

fraudulently transfer a controlling interest in a publicly traded corporation with documentation that was obviously forged.

84. Defendant Empire negligently failed to exercise due care when it transferred 688,818 common stock shares in Gopher, represented by certificates 362, 372, 373, and 375, to Defendants Vladimir Hanin, HJK, GSS and AMP.

85. Defendants Wells Fargo, Citibank and Chase, at locations in Los Angeles County, California, negligently medallion guaranteed the forged signatures without adequate safeguards or verification of the signatories.

86. At the time of the forgery, all of the shares of stock were valued in an amount that is presently unknown, but was no less than $1,000,000.

87. Defendants Wells Fargo, Citibank and Chase had a duty to the Plaintiff to ensure that they had in place adequate safeguards for verification of the signatories before the same were medallion guaranteed.

88. As a direct result of the medallion guarantee by Defendants Wells Fargo, Citibank and Chase, the stock shares belonging to the Plaintiff were immediately transferred to third party entities, all to the economic damage of the Plaintiff.

89. Plaintiff had no knowledge of the illegal transfers of their respective shares of Gopher stock, which would not have occurred but for the negligence of Defendants Alpine, Empire, ACAP, Wells Fargo, Citibank and Chase.

90. As a result of the negligence of Defendants Wells Fargo, Citibank and Chase in issuing the medallion stamp guarantees, Plaintiff has been damaged in an amount that is presently uncertain, but is no less than $1,000,000, the exact amount of which will be proven at trial.

COMPLAINT

## FIFTH CAUSE OF ACTION
### Conspiracy
(Against All Defendants)

91.     Plaintiff repeats and incorporates by this reference the allegations contained in Paragraphs 1 through 90 above as though fully set forth herein.

92.     Defendants willfully conspired between themselves to hinder, delay and defraud Reko and Direct Communications of their respective stock ownership in Gopher.

93.     Plaintiff is informed and believes, and on that basis alleges, that Defendants conspired among themselves to continue the transfer of stocks owned by Reko and Direct Communications in an attempt to hide the assets from their rightful owner.

94.     Defendants did the acts and things herein alleged pursuant to, and in furtherance of, the conspiracy alleged above.

95.     As a proximate result of the wrongful acts herein alleged, Reko and Direct Communications have been generally damaged in the sum of no less than $1,000,000, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.     For a preliminary and permanent injunction preventing further transfer of Gopher Protocol common stock represented by stock certificate nos. 368, 369, 370, 371, 372, 373, 375, 401, 402, 403, 404 and/or 405. or any other certificate derivative of said certificates;

B.     Compensatory damages against all Defendants in an amount to be proven at trial, but no less than $1,000,000;

C.     Treble damages against Defendants AMP, GSS, Vladimir Hanin, HJK Hovik Kostandyan, Paul Kozlov, Lisandra Patin and Gary Shirinya only in an amount to be proven at

COMPLAINT

1    trial, but no less than $3,000,000;

2        D.       Punitive damages against Defendants AMP, GSS, Vladimir Hanin, HJK Hovik

3    Kostandyan, Paul Kozlov, Lisandra Patin and Gary Shirinya only, in an amount to be proven at

4    trial;

5        E.       Pre- and post-judgment interest on all monetary relief awarded;

6        F.       The costs of bringing this suit, including reasonable attorney's fees; and

7        G.       For such additional and further relief as the Court may deem just and proper under

8    the circumstances.

9
10                                      KLEINBERG & LERNER, LLP

11   Dated: January 20, 2017          By: _____
12                                          Michael Hurey
                                            Michael Carwin
13
14                                      Attorneys for Plaintiff
                                        REKO HOLDINGS, LLC
15

16

17                                      **JURY DEMAND**

18       Plaintiff hereby demands a trial by jury on all matters so triable.

19                                      KLEINBERG & LERNER, LLP

20
21   Dated: January 20, 2017          By: _____
22                                          Michael Hurey
                                            Michael Carwin
23
24                                      Attorneys for Plaintiff
                                        REKO HOLDINGS, LLC
25

26

27

28
                                            - 16 -

                                                             **COMPLAINT**

# EXHIBIT 1



NUMBER
372

SHARES
***213,000***

COMMON STOCK

COMMON STOCK
CUSIP 38268V108

*GOPHER PROTOCOL INC.*

Par Value $.00001
INCORPORATED UNDER THE LAWS OF THE STATE OF
NEVADA

SEE REVERSE FOR CERTAIN DEFINITIONS

THIS CERTIFIES THAT

***Reko Holdings, LLC***

is the Owner of *** Two Hundred Thirteen Thousand ***

RESTRICTED
CONTROL

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF
GOPHER PROTOCOL INC.

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.

Dated: November 6, 2015

COUNTERSIGNED AND REGISTERED:
EMPIRE STOCK TRANSFER INC.
Transfer Agent and Registrar

By
AUTHORIZED SIGNATURE

SECRETARY

PRESIDENT

CORPORATE
NEVADA
GOPHER PROTOCOL INC.
July 22, 2009
SEAL

B 65247

# EXHIBIT 2



NUMBER
373

COMMON STOCK

SHARES
***213,000***

COMMON STOCK
CUSIP 38268V108

*GOPHER PROTOCOL INC.*

Par Value $ 00001

INCORPORATED UNDER THE LAWS OF THE STATE OF
NEVADA

SEE REVERSE FOR CERTAIN DEFINITIONS

CANCELLED

THIS CERTIFIES THAT

***Reko Holdings, LLC***

Is the Owner of  *** Two Hundred Thirteen Thousand ***

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF
GOPHER PROTOCOL INC.

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.

Dated:  November 6, 2015

COUNTERSIGNED AND REGISTERED
EMPIRE STOCK TRANSFER INC.
Transfer Agent and Registrar
By
AUTHORIZED SIGNATURE

CORPORATE
NEVADA
GOPHER PROTOCOL INC.
July 22, 2009
SEAL

SECRETARY

PRESIDENT

B   65248

# EXHIBIT 3



NUMBER
375

COMMON STOCK

SHARES
***213,000***

COMMON STOCK
CUSIP 38268V108

GOPHER PROTOCOL INC.

Par Value $.00001

INCORPORATED UNDER THE LAWS OF THE STATE OF
NEVADA

SEE REVERSE FOR CERTAIN DEFINITIONS

CANCELED

THIS CERTIFIES THAT

***Reko Holdings, LLC***

is the Owner of  *** Two Hundred Thirteen Thousand ***

RESTRICTED
CONTROL

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF
GOPHER PROTOCOL INC.

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly
endorsed.  This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.

Dated:  November 6, 2015

COUNTERSIGNED AND REGISTERED
EMPIRE STOCK TRANSFER INC.
Transfer Agent and Registrar

By
AUTHORIZED SIGNATURE

CORPORATE
NEVADA
GOPHER PROTOCOL INC.
July 22, 2009
SEAL

SECRETARY

PRESIDENT

B  65250

# EXHIBIT 4

NUMBER
368

SHARES
***62,500***

COMMON STOCK

**GOPHER PROTOCOL INC.**

Par Value $.00001

INCORPORATED UNDER THE LAWS OF THE STATE OF
NEVADA

COMMON STOCK
CUSIP 38268V108

SEE REVERSE FOR CERTAIN DEFINITIONS

THIS CERTIFIES THAT

***Simon J. Merman Living Trust***

is the Owner of *** Sixty-Two Thousand Five Hundred ***

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF
GOPHER PROTOCOL INC.

*transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.*

*Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.*

Dated: **August 31, 2015**

COUNTERSIGNED AND REGISTERED,
**EMPIRE STOCK TRANSFER INC.**
Transfer Agent and Registrar

By

AUTHORIZED SIGNATURE

CORPORATE
NEVADA
GOPHER PROTOCOL INC.
July 22, 2009
SEAL

SECRETARY

PRESIDENT

RESTRICTED

B  65017

# EXHIBIT 5

| NUMBER | | SHARES |
|---|---|---|
| 369 | | ***62,500*** |
| COMMON STOCK | | COMMON STOCK |

**GOPHER PROTOCOL INC.**

Par Value $.00001

INCORPORATED UNDER THE LAWS OF THE STATE OF
NEVADA

CUSIP 38268V108

SEE REVERSE FOR CERTAIN DEFINITIONS

THIS  CERTIFIES THAT

***Trevor J Merman Living Trust***

RESTRICTED

is the Owner of  *** Sixty-Two Thousand Five Hundred ***

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF
**GOPHER PROTOCOL INC.**

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed.  This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.

Dated:  **August 31, 2015**

COUNTERSIGNED AND REGISTERED.
**EMPIRE STOCK TRANSFER INC.**
Transfer Agent and Registrar

By

AUTHORIZED SIGNATURE

CORPORATE
NEVADA
GOPHER PROTOCOL INC.
July 22, 2009
SEAL

SECRETARY

PRESIDENT

B  65018

# EXHIBIT 6

| NUMBER | | SHARES |
|---|---|---|
| **370** | | **\*\*\*62,500\*\*\*** |

**COMMON STOCK**

**COMMON STOCK**
CUSIP 38268V108

## GOPHER PROTOCOL INC.

Par Value $.00001

INCORPORATED UNDER THE LAWS OF THE STATE OF
NEVADA

SEE REVERSE FOR CERTAIN DEFINITIONS

THIS CERTIFIES THAT

**\*\*\*James K. Merman Living Trust\*\*\***

is the Owner of **\*\*\* Sixty-Two Thousand Five Hundred \*\*\***

**RESTRICTED**

FULLY PAID AND NON ASSESSABLE SHARES OF COMMON STOCK OF
GOPHER PROTOCOL INC.

*transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.*

*Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.*

Dated: **August 31, 2015**

COUNTERSIGNED AND REGISTERED.
**EMPIRE STOCK TRANSFER INC.**
Transfer Agent and Registrar

By

AUTHORIZED SIGNATURE

CORPORATE
NEVADA
GOPHER PROTOCOL INC.
July 22, 2009
SEAL

SECRETARY

PRESIDENT

B 65019

# EXHIBIT 7



NUMBER
371

COMMON STOCK

SHARES
***62,500***

COMMON STOCK
CUSIP 38268V108

SEE REVERSE FOR CERTAIN DEFINITIONS

GOPHER PROTOCOL INC.

Par Value $0.0001
INCORPORATED UNDER THE LAWS OF THE STATE OF
NEVADA

THIS CERTIFIES THAT

***Theresa E. Merman Living Trust***

RESTRICTED

is the Owner of   *** Sixty-Two Thousand Five Hundred ***

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF
GOPHER PROTOCOL INC.

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed.  This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.

Dated:   August 31, 2015

COUNTERSIGNED AND REGISTERED
EMPIRE STOCK TRANSFER INC.
Transfer Agent and Registrar

By
AUTHORIZED SIGNATURE

CORPORATE
NEVADA
GOPHER PROTOCOL INC.
July 22, 2009
SEAL

SECRETARY

PRESIDENT

B   65020

# EXHIBIT 8

9/26/2016                                    Print Report - CaLosAngelesPd



This incident has been reported to the
Los Angeles Police Department
and is pending approval

Los Angeles Police Department
100 West 1st Street Room
Los Angeles, CA 90012
877-275-5273

## General Information
Incident Type                Lost Property
Tracking Number              E16000206
Report Date                  09/26/2016 04:49 PM

## Reporting Person Information
Name                         Kats, Regina
Home Address                 20154 Chapter dr, Woodland Hills, CA 91364, US
Home Phone                   818-389-3434
Mobile Phone                 818-389-3434
Email                        katsregina@gmail.com
Race                         White
Gender                       Female
Date of Birth                08/09/1977
Driver License No            B5084660
Licensing State              CA
Height                       505
Weight                       140
Eye Color                    Brown
Hair Color                   Blonde

## Incident Information
Incident Location            LOS ANGELES VALLEY COLLEGE (5800 FULTON Avenue), LOS ANGELES,
                             CA 91342
Incident Time (start)        04/12/2016 04:35 PM
Incident Time (end)          09/26/2016 04:35 PM
Location Type                Residence - Single Family

## Property Information
No 1
Type                         Briefcase
Brand                        Stock Certificates
Color                        Pink
How Many                     4
Item Value ($)               4500
Property Description         4 Stock Certificates

## Narrative

Incident Description         I lost briefcase with companies stock certificates
                             Number Shares
                             372 213,000
                             373 213,000
                             375 213,000
                             Also I was holding a certificate for my friend Itzhak Kleyman who leaves in
                             Israel. His certificate number 362 in the amount of 49,818 shares I am
                             declaring also lost

You will be notified via email of any problems with your report. Once your report is approved, it will be issued a case number and you will receive a PDF copy as an attachment in your email within approximately five business days.

Print This Report

## **Affidavit**

I am the SOLE officer of REKO HOLDINGS, LLC, and as such the ONLY authorized person to sign on REKO HOLDINGS, LLC behalf.

I NEVER SIGNED, NEVER AOTHORIZED, WAS NOT AWARE OF the following transfer of shares from REKO HOLDING, LLC to none of the following parties:

| Cert Number | Number of Shares | Transferred to |
|---|---|---|
| 372 | 213,000 | Vladimir Hanin |
| 373 | 213,000 | HJK Trade, Inc. |
| 375 | 213,000 | AMO Group Holdings |

None of those transfers have my signature, I never authorized here, and basically this is a FRAUD on lost/stolen certificate. Also I was holding a certificate for my friend Itzhak Kleyman who leaves in Israel. His certificate number 362 in the amount of 49,818 shares I am declaring also lost/stolen.

Please CANCEL those transfers, and have the shares 639,000 shares return to REKO HOLDINGS, LLC name and  49,818 shares to Itzhak Kleyman

I swear under the penalty of perjury with full responsibility and indemnify you for any damage you potentially may have associated with said cancelation and bring the shares back to REKO HOLDINGS, LLC

REKO HOLDING, LLC

Regina Kats ✓Sole Manager

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles
On _Sep 26, 16_ before me, _sharauna Daniali_
Notary Public personally appeared _Regina Kats_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/ her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature:_____

SHAROUNA DANIALI
Commission # 2068760
Notary Public - California
Los Angeles County
My Comm. Expires Jun 5, 2018

# EXHIBIT 9

RECEIVED

# ALPINE SECURITIES

*Stock Brokerage & Investment Company*

EMPIRE STOCK TRANSFER INC.

August 10, 2016

Empire Stock Transfer
1859 Whitney Mesa Dr.
Henderson, NV 89014

[ x ] Restricted Email    [   ] Indemnity Notice
[   ] Indemnity Required   [   ] Transfer Notice
[   ] No Medallion          [   ] No Fees
[   ] No Instructions       [   ] Indemnity Attached

[   ] Other _____

## Transfer Instructions

**CUSIP:** 38268V108   **Security Name:** GOPHER PROTOCOL INC

## Certificates to Cancel

RECEIVED

AUG 1 2 2016

EMPIRE STOCK TRANSFER INC.

| **Description:** | **Date:** | **Certificates:** | **Denomination:** |
|---|---|---|---|
| GSS GROUP LLC | 7/20/2016 | 401 | 187,500 |

## Certificates to Issue

| **Account Name:** | **ID:** | **Denominations:** | **Fees:** |
|---|---|---|---|
| ALPCO | 87-0403873 | | |
| 39 Exchange Place | | 187,500 | |
| Salt Lake City, UT 84111 | | *UNRESTRICTED* | 60.00 |
| | | Reject Fee: | 75.00 |
| | | REMOVAL FEE: | 100.00 |
| | | CANCEL FEE: | 10.00 |
| **Totals** | | 187,500 | 170.00 |
| | | | + 75.00 |
| | | | 245.00 |

**Instructions:** RULE 144 FREE UP
**Account #:** 308082083
**TCN #:** 308082083 223 2016

## *** Please call if Payment is incorrect***                     AF

**Please remit certificates after transfer via FedEx Priority Overnight back to:**

Alpine Securities
39 Exchange Place
Salt Lake City, UT 84111
Tel# 801-355-5588
**FedEx # 121560747**

60PH   308082083

| NUMBER | | SHARES |
|---|---|---|
| **401** | | ***187,500*** |

**COMMON STOCK**

## *GOPHER PROTOCOL INC.*

Par Value $.00001

INCORPORATED UNDER THE LAWS OF THE STATE OF
NEVADA

**COMMON STOCK**
CUSIP 38268V108

SEE REVERSE FOR CERTAIN DEFINITIONS

THIS CERTIFIES THAT

***GSS Group LLC***

**RESTRICTED**

Is the Owner of *** **One Hundred Eighty-Seven Thousand Five Hundred** ***

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF
**GOPHER PROTOCOL INC.**

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.

Dated: July 20, 2016

COUNTERSIGNED AND REGISTERED:
EMPIRE STOCK TRANSFER INC.
Transfer Agent and Registrar

By

AUTHORIZED SIGNATURE

SECRETARY

PRESIDENT

CORPORATE
NEVADA
GOPHER PROTOCOL INC.
July 22, 2009
SEAL

B   69238

The following abbreviations, when used in the inscription on the face of this certificate, shall be construed as though they were written out in full according to applicable laws or regulations:

TEN COM — as tenants in common

TEN ENT — as tenants by the entireties

JT TEN — as joint tenants with right of survivorship and not as tenants in common

UNIF GIFT MIN ACT — _____ Custodian _____
(Cust)                              (Minor)
under Uniform Gifts to Minors Act

_____
(State)

Additional abbreviations may also be used though not in the above list.

*For Value Received,* _____ *hereby sells, assigns and transfers unto*

PLEASE INSERT SOCIAL SECURITY
OR OTHER IDENTIFYING NUMBER

(PLEASE PRINT OR TYPE NAME AND ADDRESS INCLUDING POSTAL ZIP CODE OF ASSIGNEE)

*Shares*

*of the Capital Stock represented by this Certificate and hereby*

*irrevocably constitutes and appoints*

*Attorney*

*to transfer the said stock on the books of the within-named Corporation*

*with full power of substitution in the premises.*

*Dated* _____

NOTICE   THE SIGNATURE(S) TO THIS ASSIGNMENT MUST CORRESPOND WITH THE NAME(S) AS WRITTEN UPON THE FACE OF THIS CERTIFICATE IN EVERY PARTICULAR WITHOUT ALTERATION OR ENLARGEMENT OR ANY CHANGE WHATSOEVER.

SIGNATURE(S) GUARANTEED

NOTICE   THE SIGNATURE(S) SHOULD BE GUARANTEED BY AN ELIGIBLE GUARANTOR INSTITUTION, (BANKS, STOCKBROKERS, SAVINGS AND LOAN ASSOCIATION AND CREDIT UNIONS) WITH MEMBERSHIP IN AN APPROVED SIGNATURE GUARANTEE MEDALLION PROGRAM PURSUANT TO S.E.C. RULE 17AD-15.

# RESTRICTED

308082083

# IRREVOCABLE STOCK POWER

**FOR VALUE RECEIVED,** the undersigned does (do) hereby sell, assign and transfer to

_____

_____

_____

| (SOCIAL SECURITY |
| (OR TAXPAYER IDENTIFYING NO.) |

**PLEASE COMPLETE THIS PORTION**

_____ shares of the _____ stock of _____

represented by Certificate(s) No(s) _____ inclusive,

standing in the name of the undersigned on the books of said Company.

The undersigned does (do) hereby irrevocably institute and appoint _____

_____ attorney to transfer the said stock or bond(s), as the case may be, on

the books of said Company, with full power of substitution in the premises.

Dated ___ 08/08/16

GARY SHIRINYAN

PRINTED NAME                                    PRINTED NAME

SIGNATURE GUARANTEED
MEDALLION GUARANTEED
ALPINE SECURITIES
CORPORATION
A 0071092

SIGNATURE GUARANTEED
MEDALLION GUARANTEED
ALPINE SECURITIES
CORPORATION
A 0071092
( 007 )
SECURITIES TRANSFER AGENTS MEDALLION PROGRAM

## LIMITED LIABILITY COMPANY CERTIFICATION

Name of Limited Liability Company: **GSS GROUP LLC**

State of Organization: _____

Please specify one of the following:

_____ **MEMBER MANAGED LLC** This Company is member managed and has appointed a Designated Member whose

name is _____. All other members' names are set forth below.

_____

_____

OR

**GS** _____ **MANAGER MANAGED LLC** This Company is manager managed and has appointed a Manager whose name is

**GANG SHIKINYAN.**

_____

1. The undersigned is either a Manager or all of the Members of the Limited Liability Company whose name(s) and state of organization are set forth above.
2. The undersigned represents that the undersigned is duly authorized and empowered to execute this certification on behalf of the company.
3. The undersigned acknowledges that for the purposes of this certification the following terms have the meaning specified:
   - "Account" means an account for the execution of transaction in securities and such other services provided from time to time.
   - "Company" means the limited liability company whose name and states of organization are set forth above.
   - "Designated Member" means the member of the Company designated herein which the members of the Company have duly authorized and empowered to deal with and on behalf of the account in accordance with the representations, warranties, and certification contained therein.
   - "Organizational Documents" means the Articles of Organization, the Operating Agreement, and any other documents memorializing the decisions of, or resolutions adopted by, the members of the company.
4. The undersigned represents, warrants, and certifies that:
   a. Any statement of purpose of the Company in any of the Organizational documents which purports to limit the activities of the Company does not restrict the authority of the Company to purchase, hold, sell, transfer assign or otherwise deal in securities of any kind.
   b. The Organization Documents authorize and empower the Manager or the Designated Member for the account of, and on behalf of, the Company without limit to:
      - Open and maintain an Account in the name of the Company and enter into and execute agreements; and, do all things which are necessary to open and maintain such account.
      - Direct the purchase, sale, or transfer of stocks, bonds, put and call options and other securities, to borrow money secured by assets in the account (margin), and to issue such other instructions as are necessary for the operation of the account.
      - Receive notices, demands, confirmations, statements of account and communications of any kind relating to the operation of, or assets in the account.
      - Direct that the securities be transferred to another account for, or transferred into, the name of the Company or any third party, including an account for, or in the name of, of the Manager or Designated Member. In addition, to direct the funds and other assets be distributed on behalf of the Account to the Company or any third party, including any Manager or Designated Member, or an account for any of them.
   c. Nothing in the Organizational Documents limits the authority or power of the Manager or Designated Member to manage or exercise control over or on behalf of the Account or the assets thereof.
   d. A true and correct copy of the Articles of organization as presently filed with the Secretary of State or as otherwise required in the state of organization is attached hereto; or, has otherwise been provided.

IF MANAGER MANAGED, MANAGER MUST SIGN BELOW, OR IF MEMBER MANAGED, ALL MEMBERS MUST SIGN BELOW.

_05/18/16_
DATE

X_____
MANAGER OR DESIGNATED MEMBER SIGNATURE

X_____
MEMBER SIGNATURE (If Applicable)

X_____
MEMBER SIGNATURE (If Applicable)

X_____
MEMBER SIGNATURE (If Applicable)

X_____
MEMBER SIGNATURE (If Applicable)

**SIGNATURE GUARANTEED**
**MEDALLION GUARANTEED**
ALPINE SECURITIES
CORPORATION

_Aalynn Fell_
AUTHORIZED SIGNATURE
( 007 )                  A 0071092
SECURITIES TRANSFER AGENTS MEDALLION PROGRAM™

Created: 3/25/2013

# STOCK PURCHASE AGREEMENT

This Stock Purchase Agreement ("Agreement") is entered into as of July 21, 2016 by and between Trevor J. Merman Living Trust ("Seller") and GSS GROUP LLC ("Purchaser"). Purchaser and Seller may collectively be referred to as the "Parties."

WHEREAS, Seller is the record owner and holder of shares of the capital stock of Gopher Protocol (the "Company"), a California Corporation

WHEREAS, the Parties desire to enter into this Agreement pursuant to which Purchaser will purchase from Seller shares of capital stock of the Company.

NOW, THEREFORE, in consideration for the promises set forth in this Agreement, the Parties agree as follows:

1. PURCHASE AND SALE: Subject to the terms and conditions set forth in this Agreement, Purchaser hereby agrees to purchase from Seller, and Seller hereby agrees to sell, transfer and convey to the Purchaser *Cert 369 Sixty Two Hundred Thousand Five Hundred (62,500)* common shares of Gopher Protocol stock of the Company (the "Stock").

2. PURCHASE PRICE: The purchase price for each share of Stock shall be *Twenty cents ($.20)* for an aggregate purchase price of *Twelve Thousand Five Hundred Dollars ($12,500.00)* (the "Purchase Price"), to be paid to the Seller in cash at the closing.

3. CLOSING: The closing contemplated by this Agreement for the transfer of the Stock and the payment of the Purchase Price shall take place TBD on June 29, 2016 at TBD (the "Closing"). The certificates representing the Stock shall be duly endorsed for transfer or accompanied by an appropriate stock transfer.

4. REPRESENTATIONS AND WARRANTIES OF SELLER: Seller hereby warrants and represents that:

   (a) Restrictions on Stock. The Seller is not a party to any agreements that create rights or obligations in the Stock relating to any third party including voting or stockholder agreements. The Seller is the lawful owner of the Stock, free and clear of any encumbrances, security interests or liens of any kind and has full power and authority to sell and transfer the Stock as contemplated in this Agreement.

   (b) Organization and Standing. To the Seller's knowledge, the Company is duly organized, validly existing and in good standing under the laws of the State of Nevada *[insert state of incorporation]* and has full power and authority to own

and operate its property and assets and to carry on its business as presently conducted.

5. **SEVERABILITY:** If any part or parts of this Agreement shall be held unenforceable for any reason, the remainder of this Agreement shall continue in full force and effect. If any provision of this Agreement is deemed invalid or unenforceable by any court of competent jurisdiction, and if limiting such provision would make the provision valid, then such provision shall be deemed to be construed as so limited.

6. **BINDING EFFECT:** The covenants and conditions contained in this Agreement shall apply to and bind the parties and the heirs, legal representatives, successors and permitted assigns of the Parties.

7. **BROKER'S FEES:** The Parties represent that there has been no act in connection with the transactions contemplated in this Agreement that would give rise to a valid claim against either party for a broker's fee, finder's fee or other similar payment.

8. **ENTIRE AGREEMENT:** This Agreement constitutes the entire agreement between the Parties and supersedes any prior understanding or representation of any kind preceding the date of this Agreement. There are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Agreement. This Agreement may be modified in writing and must be signed by both the Seller and Purchaser.

9. **GOVERNING LAW:** This Agreement shall be governed by and construed in accordance with the laws of the State of California.

10. **NOTICE:** Any notice required or otherwise given pursuant to this Agreement shall be in writing and mailed certified return receipt requested, postage prepaid, or delivered by overnight delivery service:

    (a) If to Purchaser:

    _____

    _____

    (b) If to Seller:

    _____

    _____

11. **WAIVER:** The failure of either party to enforce any provisions of this Agreement shall not be deemed a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be executed the day and year first above written.

SELLER:

BUYER:                                           COMPANY:

By:                                              By: GSS GROUP LLC.

Chase Online                                                    07/05/16 3:30 PM

# CHASE ⬡

Search

## Check 155

GSS GROUP LLC                                                    155

PAY TO THE
ORDER OF   TReVOR. S. Livingtrust          $ 12.500⁰⁰

twelve thousand five hundred          DOLLARS

CHASE ⬡
JPMorgan Chase Bank, N.A.
www.chase.com

MEMO

⑈322271627⑈   830326836⑈0155

ENDORSE HERE

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE

Security | Terms of Use

© 2016 JPMorgan Chase & Co.

From: David Adams          Fax: (818) 399-3353          To: DA-fax          Fax: +1 (888) 7845271          Page 2  of 2  08/10/2016 11:09 AM



# ALPINE SECURITIES
*Stock Brokerage & Investment Company*

**Re:  Removal of Restrictive Legend Pursuant to Rule 144(b)**

GOPHER PROTOCOL , INC.
_____

**Issuer (the "Company")**
GSS GLOBAL LLC.
_____                    308082083

**Full Name of Shareholder**                                        **Account Number**

187,500                    401
_____          _____

**Total Shares**          **Certificate Number(s)**

**To Whom It May Concern:**
   This letter is submitted to you and the Company in connection with my request that the restrictive legend on the certificate(s) representing the above identified securities (the "Securities") be removed pursuant to rule 144 promulgated under the Securities Act of 1933 ("Rule 144"). In connection therewith, the undersigned represents and warrants to you and the Company as follows:

   1.  The undersigned is not and has not been during the preceding three months, an "affiliate" of the Company as that term is defined in paragraph (a) (1) of Rule 144.

   2.  The undersigned has fully paid for, beneficially owned, and held the shares of the Company for a period of

      ☑  Six Months (If issuer is an SEC reporting company) or

      ☐  One Year in accordance with paragraph (d) of rule 144 as amended on 2/15/2008

   3.  These certificates are not issued from a Shell / Blank Check Company as defined by the SEC.

The undersigned is familiar with Rule 144 promulgated under the Securities Act of 1933 and agrees that you and the Company may rely upon the above statements.

Sincerely,

_____                    8/10/2016
**Signature of Shareholder**                        **Date**
   GSS GLOBAL LLC
_____
**(Print Name)**

_____                    _____
**Signature of Joint Shareholder (if applicable)**  **Date**

_____
**(Print Name)**

## RULE 144 BROKER'S REPRESENTATION LETTER – NON-AFFILIATE

Dear ___ALPINE_____ :

We have been requested by ___GSS GLOBAL LLC_____ (the "Seller") to
sell up to _187,500_____ shares of common stock (the "Securities") of
_____(GOPH)_____ (the "Company") pursuant to the provisions
of Rule 144 adopted under the Securities Act of 1933 (the "Act"). We were provided with
a representation letter from Seller stating that Seller is not an affiliate of the issuer and
was not an affiliate during the 90-day period prior to the sale. In order to obtain the
removal, of the legend and stop order relating to the Securities and to permit their sale,
we hereby represent, warrant and agree as follows:

    1.  Reporting Issuer/Non-Reporting Issuer (mark one box)

        [X] Reporting Issuer:  The Company
          a)  has been subject to such 1934 Exchange Act filing requirements for at
             least 90 days
          b)  has not been at any time within the 12 month period preceding the
             date hereof, a shell issuer as described in Rule 144(i)(1), and
          c)  for shares held for at least 6 months but less than 1 year, is in
             compliance with the current public information requirements of Rule
             144(c)

    **OR**

        [ ] Non-Reporting Issuer*: The Company
          a)  is not subject to the reporting requirements of the 1934 Exchange Act,
          b)  has either (i) never been a shell company as described in Rule
             144(i)(1), or, (ii) if it was ever a shell company, complied with Rule
             144(i)(2) for at least 12 months prior to becoming a non-reporting
             company and has not been a shell company at any time since its
             compliance with Rule 144(i)(2).

        *Shares of a non-reporting company must be held for a minimum of 1
        year.

Sincerely,

ACAP FINANCIAL, INC._____        8/10/2016_____
(Broker/Dealer)                                               Date

By:_____D.C.A_____

# LAW OFFICE OF TOD A. DITOMMASO

3020 Bridgeway, Suite 269
Sausalito, CA 94965
(310) 367-0918
todanthonyditommaso@earthlink.net

August 22, 2016

Casey Weseloh
**EMPIRE STOCK TRANSFER, INC.**
1859 Whitney Mesa Dr.
Henderson, NV 89014

David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
57 West 200 South Suite 202
Salt Lake City, UT 84101

> **Re: Gopher Protocol, Inc. (GOPH):**
> **Shareholder: GSS GROUP, LLC - Rule 144**
> **Number of Shares: 187,500**
> **Certificate Number: 401**

Dear Casey and David:

We have been requested by GSS Group, LLC, ("Holder"), to provide an opinion with respect to the transferability, under available exemptions provided by Rule 144 of the Securities Act of 1933, as amended ("Act"), of Certificate Number 401, representing 187,500 shares ("Shares") of Common Stock of Gopher Protocol, Inc. ("Issuer" or "Company"), a Nevada Corporation, f.k.a. Forex International Trading Corporation [an S.E.C. reporting company trading on the OTC Markets - OTC QB].

**Background:**

The Holder acquired the above referenced Shares as follows:

**Assignment of Series D Preferred Stock to Direct Communications, Inc.**

- On March 4, 2015, Issuer, entered into a Territorial License Agreement ("License Agreement") with Hermes Roll, LLC ("Hermes"). Pursuant to the License Agreement, Hermes licensed to the Issuer, certain intellectual property relating to Hermes' system and method for scheduling categorized deliverables based on a smartphone application and/or via the internet, in consideration of 100,000 shares of Series D Preferred Stock of the Issuer ("Preferred Shares") [Form 8-K, Filed March 12, 2015 for the Period Ending March 2, 2015].

Casey Weseloh
**EMPIRE STOCK TRANSFER, INC.**
David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
Re: Gopher Protocol, Inc. (GOPH):
Shareholder: GSS GROUP, LLC - Rule 144
Number of Shares: 187,500
Certificate Number: 401
August 22, 2016
Page 2

- The issuance of the Preferred Shares was made in reliance upon exemptions from registration pursuant to Section 4(2) under the Securities Act of 1933 and Rule 506 promulgated under Regulation D. Hermes is an accredited investor as defined in Rule 501 of Regulation D promulgated under the Securities Act of 1933.

- The Preferred Shares have a conversion price of $0.01 ("Conversion Price") and a stated value of $10.00 per share ("Stated Value"). Subject to the Issuer increasing its authorized shares of common stock to 500,000,000, each Preferred Share is convertible, at the option of the shareholder, into such number of shares of common stock of the Issuer as determined by dividing the Stated Value by the Conversion Price.

- The License Agreement authorized Hermes to assign its right and interest in the Series D Preferred Shares to various third parties.

- Hermes assigned 9,200 Preferred Shares to Direct Communications, Inc. ("Direct Communications") under the License Agreement.

**Direct Communications, Inc.'s Conversion of Series D Preferred Stock into Common Shares**

- On August 31, 2015, Direct Communications gave a notice of conversion to the Issuer stating its intention to convert 250 Series D Preferred Shares into 250,000 common shares, which were issued to Direct Communications on or around that date [Form 10-Q, Filed November 16, 2015 for the Period Ending September 30, 2015].

**Sale of Common Stock by Direct Communications, Inc., to Simon Merman Living Trust, Trevor Merman Living Trust, and James Merman Living Trust**

- On August 27, 2015, Direct Communications sold 62,500 shares to the Simon Merman Living Trust [Stock Purchase Agreement, dated August 27, 2015; Certificate Number 368, 62,500 shares, issued on August 31, 2015].

- On August 27, 2015, Direct Communications sold 62,500 shares to the Trevor Merman Living Trust [Stock Purchase Agreement, dated August 27, 2015; Certificate Number 369, 62,500 shares, issued on August 31, 2015].

Casey Weseloh
**EMPIRE STOCK TRANSFER, INC.**
David C. Adams, Jr. MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
Re: Gopher Protocol, Inc. (GOPH):
Shareholder: GSS GROUP, LLC - Rule 144
Number of Shares: 187,500
Certificate Number: 401
August 22, 2016
Page 3

- On August 27, 2015, Direct Communications sold 62,500 shares to the James Merman Living Trust [Stock Purchase Agreement, dated August 27, 2015; Certificate Number 370, 62,500 shares, issued on August 31, 2015].

**Sale of Common Stock by Simon Merman Living Trust, Trevor Merman Living Trust, and James Merman Living Trust to GSS Group, LLC**

- With a Closing Date effective June 29, 2016, the Simon Merman Living Trust sold 62,500 shares to Holder [Stock Purchase Agreement, dated June 28, 2016; Check Number 154, dated June 27, 2016, in the amount of $12,500.00].

- With a Closing Date effective June 29, 2016, the James Merman Living Trust sold 62,500 shares to Holder [Stock Purchase Agreement, dated June 28, 2016; Check Number 153, dated June 28, 2016, in the amount of $12,500.00].

- With a Closing Date effective June 29, 2016, the Trevor Merman Living Trust sold 62,500 shares to Holder [Stock Purchase Agreement, dated July 21, 2016; Check Number 155, dated June 25, 2016, in the amount of $12,500.00].

- Certificate Number 401 was issued on July 20, 2016, to Holder, representing 187,500 shares. Certificate Numbers 368, 369, and 370 were then cancelled.

In our opinion and based on the information and rationale set forth below, an exemption from registration is available under Rule 144 of the Act with respect to the Shares and Certificate Number 401. The restrictive legend may be removed from Certificate Number 401.

**Pertinent Law and Application to the Facts:**

We have analyzed the facts and circumstances presented to us within the framework of the Act, including some of the scholarly treatises and articles authored addressing exemptions under the Act.

### Registration Requirements and Rule 144 Exemption:

Section 5 of the Act requires that any offer or sale of securities which involves the mails or a means of interstate commerce must be registered. Certain offerings may be exempt from the registration process by the nature of the security, nature of the transaction, or the amount of the

Casey Weseloh
**EMPIRE STOCK TRANSFER, INC.**
David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
Re: Gopher Protocol, Inc. (GOPH):
Shareholder: GSS GROUP, LLC - Rule 144
Number of Shares: 187,500
Certificate Number: 401
August 22, 2016
Page 4

offering.

Section 4 of the Act provides several transactional exemptions to the registration requirements of Section 5, as do certain rules and regulations promulgated thereunder. Specifically, Section 4(a)(1) provides that "[t]he provisions of section 5 shall not apply to. . . (1) transactions by any person other than an issuer, underwriter or dealer."

Section 2(4) of the Act defines an "issuer" as including ". . . every person who issues or proposes to issue any security." An issuer is subject to the registration requirements of Section 5 of the Act whenever it makes an original distribution of securities to the public.

Section 2(12) of the Act defines a "dealer" to include "any person who engages either for all or part of his time, directly or indirectly, as agent, broker, or principal, in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person."

Based on the above definitions, the Holder is not an issuer nor a dealer under the Act.

"The term 'underwriter' is broadly defined in Section 2(11) of the . . . Act to mean any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates, or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking." An investor holding restricted securities may be considered underwriters if they act as a link in the chain of transactions through which securities are transferred to the public.

Rule 144 sets out objective standards under which an exemption to being classified as an underwriter is available to non-affiliates and provides a safe harbor for those claiming an exemption. Under Rule 144(b)(1) a seller who is not an affiliate, and has not been an affiliate during the preceding 90 days, who complies with the holding period requirement of Rule 144 (i.e., six months for a reporting company and 12 months for a non-reporting company) will not be classified as an underwriter.

### Affiliate Status:

Rule 144(a)(1) provides that "[a]n affiliate of an issuer is a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer." Furthermore, any person or entity who is an officer, director, or

Casey Weseloh
**EMPIRE STOCK TRANSFER, INC.**
David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
Re: Gopher Protocol, Inc. (GOPH):
Shareholder: GSS GROUP, LLC - Rule 144
Number of Shares: 187,500
Certificate Number: 401
August 22, 2016
Page 5

which owns more than ten percent of the issuer's shares is considered an affiliate.

We have determined that Hermes Roll, LLC, Direct Communications, Inc., Simon Merman Living Trust, James Merman Living Trust, Trevor Merman Living Trust, and the Holder, are not now, nor have ever been, an affiliate, officer, director, or control person of the Issuer, and are not a beneficial owner of more than 10% of any class of security of the Issuer. I am satisfied that none of these individuals and entities are an affiliate of the Issuer.

**Holding Period:**

In the case of an S.E.C. reporting corporation, Rule 144 authorizes a non-affiliate holder of restricted stock to resell such stock upon the expiration of a six-month holding period. The foundational principle underlying Rule 144's holding period is that securities acquired and held for six months were most likely purchased with investment intent and not with a "view toward distribution." The holding period commences on the date when the full purchase price or other consideration has been paid. In this case, the Holder is deemed to have acquired the Shares more than six months prior to the issuance of this Opinion Letter (See, Tacking).

**Tacking:**

As provided in Rule 144(d)(3)(ii) "the holding period for other securities from the same issuer can be tacked on to the holding period on the new exchanged shares only if the exchange consists of solely of other securities of the same issuer." To meet the time frame, a shareholder is entitled to "tack" onto the holding periods of prior owners, except affiliates. Tacking is also permitted for shares acquired: (a) in stock dividends, splits, and recapitalizations; (b) through conversions (if made without payment of any additional consideration); (c) through gifts; and (d) from trusts and estates.

The original securities, the Preferred Shares, were acquired by Direct Communications on March 4, 2015. The holding period of Direct Communications, Simon Merman Living Trust, James Merman Living Trust, and Trevor Merman Living Trust, may be tacked on to the holding period of the Holder. As such, we are of the opinion that the restrictive legend may be removed from Certificate Number 401.

**Shell Status:**

For purposes of Rule 144(i)(1)(i), a shell company is a company that has no or nominal

Casey Weseloh
**EMPIRE STOCK TRANSFER, INC.**
David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
Re: Gopher Protocol, Inc. (GOPH):
Shareholder: GSS GROUP, LLC - Rule 144
Number of Shares: 187,500
Certificate Number: 401
August 22, 2016
Page 6

operations and either: (i) no or nominal assets; (ii) assets consisting solely of cash and cash equivalents; or (iii) assets consisting of any amount of cash and cash equivalents and nominal other assets.

The Issuer was incorporated on July 22, 2009, and is a "Development-stage Company that is developing a real-time, heuristic based, mobile technology, per license agreement it holds. Upon development, the technology will consist of a smart microchip, mobile application software and supporting software that run on a server." The Issuer maintains a website: www.gopherprotocol.com, containing additional information concerning its business and its products.

Furthermore, we have reviewed the annual and quarterly reports filed by the Issuer and published in the OTC News Service at www.otcmarkets.com. It is our opinion that the requirements of Rule 144(i) have been satisfied. To the best of our knowledge and belief, the Issuer is not now and never has been a "shell company" within the meaning of "shell company" as defined by the staff of the Securities and Exchange Commission ("SEC") in SEC Release 33-8587.

**Records and Documents:**

My investigation has included review of everything I deemed necessary and appropriate under S.E.C. rules and regulations, including, but not limited to, the following records and documents provided by the Issuer and the Holder:

1. Form 8-K, Filed March 12, 2015 for the Period Ending March 2, 2015;

2. Form 10-Q, Filed November 16, 2015 for the Period Ending September 30, 2015;

3. Stock Purchase Agreement, dated August 27, 2015;

4. Certificate Number 368, 62,500 shares, issued on August 31, 2015;

5. Stock Purchase Agreement, dated August 27, 2015;

6. Certificate Number 369, 62,500 shares, issued on August 31, 2015;

7. Stock Purchase Agreement, dated August 27, 2015;

Casey Weseloh
**EMPIRE STOCK TRANSFER, INC.**
David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
Re: Gopher Protocol, Inc. (GOPH):
Shareholder: GSS GROUP, LLC - Rule 144
Number of Shares: 187,500
Certificate Number: 401
August 22, 2016
Page 7

8.    Certificate Number 370, 62,500 shares, issued on August 31, 2015;

9.    Stock Purchase Agreement, dated June 28, 2016;

10.   Check Number 154, dated June 27, 2016, in the amount of $12,500.00;

11.   Stock Purchase Agreement, dated June 28, 2016;

12.   Check Number 153, dated June 28, 2016, in the amount of $12,500.00;

13.   Stock Purchase Agreement, dated July 21, 2016;

14.   Check Number 155, dated June 25, 2016, in the amount of $12,500.00;

15.   Certificate Number 401, 187,500 shares, issued on July 20, 2016;

16.   Shareholder Statement, dated July 27, 2016; and,

17.   Company Certification, dated July 27, 2016.

**Qualifications:**

The opinion expressed above is subject to the following qualifications and limitations:

•    Nothing came to my attention during the course of my investigation that led me to conclude that any of the documents provided by the Company and the Holder were not genuine or authentic, were not complete, or that the facts set forth therein were not true. The opinions do not take into consideration any events that may occur subsequent to the date of this opinion letter. Any inaccuracy in the factual representations provided by the Company and/or Holder may affect the opinions and conclusions set forth in this opinion letter. This opinion letter may not be relied upon by any person or entity which has any knowledge of the facts or circumstances which are contrary to said representations, or which would alter the opinions and conclusions set forth above.

•    We are of the opinion that the Company is current in its reporting requirements. The information provided by the Company (i) constitutes "adequate current public information" concerning the securities and the Company and "is available within the meaning of Rule 144(c)(2) under the Securities Act"; (ii) includes all of the information

Casey Weseloh
**EMPIRE STOCK TRANSFER, INC.**
David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
<u>Re: Gopher Protocol, Inc. (GOPH)</u>:
Shareholder: GSS GROUP, LLC - Rule 144
Number of Shares: 187,500
Certificate Number: 401
August 22, 2016
Page 8

that a broker-dealer would be required to obtain from the Company to publish a quotation of the securities under Rule 15c2-11 under the Securities Exchange Act of 1934, as amended; (iii) complies as to form with the OTC Markets Guidelines for Providing Adequate Current Information, which are located on the internet at www.otcmarkets.com; and (iv) has been posted in the OTC Markets News Service.

• Our opinions are expressly limited to the matters set forth above and we render no opinion, whether by implication or otherwise, as to any other matters relating to the Company or the Holder.

• We express no opinion concerning the past, present or future fair market value of the Shares.

• The various statutory provisions, regulatory rules, and court decisions upon which the above opinions are based are subject to change.

• Be advised that opinion letters from counsel are not binding upon the S.E.C., other regulatory bodies or the courts.

• This opinion letter is only valid for ninety (90) days from the date of issuance.

• We are admitted to practice law in the State of California.  The opinions expressed above are limited to the Federal laws of the United States of America.   We express no opinion with respect to the laws of any other jurisdiction. No opinion is expressed herein with respect to the qualification of the Shares under the securities or blue sky laws of any state or any foreign jurisdiction.

• This opinion is solely for the use of the Holder, for the Company, and for the use of the Transfer Agent and the Broker/Dealer.  This opinion may not be published, relied upon or provided to any other person or entity without our prior written consent.

• No attorney/client relationship is intended, or created by, the rendering of this Opinion Letter.  We are acting as independent special counsel for this single transaction only.

**Conclusion:**

I am of the opinion that the Holder is not an issuer, underwriter or dealer, and meets the "substantial burden" set forth by the S.E.C. on those who desire to rely on a sales exemption under Rule 144, and may avail itself of the protection of the safe harbor under Rule 144.

Casey Weseloh
**EMPIRE STOCK TRANSFER, INC.**
David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
Re: Gopher Protocol, Inc. (GOPH):
Shareholder: GSS GROUP, LLC - Rule 144
Number of Shares: 187,500
Certificate Number: 401
August 22, 2016
Page 9

Accordingly, I am further of the opinion that Certificate Number 401 representing 187,500 common shares is exempt from the registration requirements of the Act.

Very Truly Yours,

**Tod Anthony DiTommaso, Esq.**

*Should be fixed!*



# *REJECTED TRANSFER

The securities described herein are being rejected for the reason(s) indicated below.

| PRESENTED BY: | REGARDING: |
|---|---|
| Alpine Securities | Company Name: Gopher Protocol Inc |
| | Certificate No(s).: 401 |
| | Total Share Amount: 187,500 |

## MISSING ITEMS

### GENERAL

☐ Transfer instructions

☐ Delivery Instructions

☐ Signatures of transferor(s)

☐ Shareholder address(es)

☐ Signature guarantee stamp

☐ Stock power for Cert _____ must be signature guaranteed

☐ Our $60 fee per each new certificate issued: _____

☐ Additional fee in the amount of $100.00 for legend removal per certificate

☐ Corporate resolution/List of Managers or Members dated within six months authorizing an individual to sign on behalf of entity

### RESTRICTED/LEGAL

☐ Form 144

☐ Broker's letter

☐ Seller's representation letter – Must be completed

☐ Opinion letter required

☐ Prospectus delivery letter

☐ Letters of testamentary

☐      Affidavit of Loss

☐ Court certificate dated within sixty days naming an executor or heir

☐ Lost instrument bond in an open penalty amount, issued in three counterparts, naming Empire Stock Transfer Inc. and subject corporation as obligees

## INCOMPLETE PAPERWORK

☐ Corporate resolution must completely filled out

☐ Officer/manager/member signing the stock power must differ from the officer/manager/member signing the resolution, OR "sole officer/manager/member" must be indicated

☐ Instructions to issue are over / under the number of shares presented

☐ If entity is an LLC and is managed by members, all members must provide information and signatures. If entity is an LLC and is managed by managers, all managers must provide information and signatures

## OTHER

☐ Shares not eligible for legend removal at this time, but will become eligible on _____

☐ Returned at the request of the broker/shareholder

☐ Shares not eligible in Canada per the Company

☐ Empire Stock Transfer Inc. is not the agent for this security. The transfer agent is: _____

☐ Authorization from the Company to transfer restricted shares

☐ The prospectus is out of date. All 144 paperwork is needed for legend removal

☒ Other: Per the company, see attached & contact them directly with any questions.

/s/ _____     08/16/2016
Signature                                         Date

# EXHIBIT 10

# ALPINE SECURITIES
*Stock Brokerage & Investment Company*

RECEIVED
AUG 19 2016
EMPIRE STOCK TRANSFER INC.

August 18, 2016

Empire Stock Transfer
1859 Whitney Mesa Dr
Henderson, NV 89014

## Transfer Instructions

**CUSIP:**   38268V108   **Security Name:**   GOPHER PROTOCOL INC

## Certificates to Cancel

| Description: | Date: | Certificates: | Denomination: |
|---|---|---|---|
| AMP GROUP HOLDINGS INC | 7/26/2016 | 402 | 62,500 |

## Certificates to Issue

| Account Name: | ID: | Denominations: | Fees: |
|---|---|---|---|
| ALPCO<br>39 Exchange Place<br>Salt Lake City, UT 84111 | 87-0403873 | 62,500<br>*UNRESTIRCTED* | 60.00 |
| | | REMOVAL FEE: | 100.00 |
| | | CANCEL FEE: | 10.00 |
| **Totals:** | | 62,500 | 170.00 |

**Instructions:** RULE 144 FREE UP
**Account #:** 122583433
**TCN #:** 122583433 231 2016

## *** Please call if Payment is incorrect***                                    AF

**Please remit certificates after transfer via FedEx Priority Overnight back to:**

Alpine Securities
39 Exchange Place
Salt Lake City, UT 84111
Tel# 801-355-5588
**FedEx # 121560747**

[X] Restricted Email          [  ] Indemnity Notice
[  ] Indemnity Required       [  ] Transfer Notice
[  ] No Medallion             [  ] No Fees
[  ] No Instructions          [  ] Indemnity Attached

[  ] Other _____

GoPH 122583433

| NUMBER | | SHARES |
|---|---|---|
| **402** | | ***62,500*** |
| COMMON STOCK | | COMMON STOCK |

## GOPHER PROTOCOL INC.

Par Value $.00001
INCORPORATED UNDER THE LAWS OF THE STATE OF
NEVADA

CUSIP 38268V108

SEE REVERSE FOR CERTAIN DEFINITIONS

THIS CERTIFIES THAT

***Amp Group Holdings Inc.***

**RESTRICTED**

Is the Owner of *** **Sixty-Two Thousand Five Hundred** ***

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF

GOPHER PROTOCOL INC.

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.

Dated: **July 26, 2016**

COUNTERSIGNED AND REGISTERED:
EMPIRE STOCK TRANSFER INC.
Transfer Agent and Registrar

By
AUTHORIZED SIGNATURE

CORPORATE
NEVADA
GOPHER PROTOCOL, INC.
July 22, 2009
SEAL

SECRETARY

PRESIDENT

B   69244

The following abbreviations, when used in the inscription of the face of this certificate, shall be construed as though they were written out in full according to applicable laws or regulations:

TEN COM — as tenants in common

TEN ENT — as tenants by the entireties

JT TEN — as joint tenants with right of survivorship and not as tenants in common

UNIF GIFT MIN ACT — _____Custodian_____
(Cust)                          (Minor)
under Uniform Gifts to Minors Act

_____
(State)

Additional abbreviations may also be used though not in the above list.

*For Value Received,_____hereby sells, assigns and transfers unto*

PLEASE INSERT SOCIAL SECURITY
OR OTHER IDENTIFYING NUMBER

(PLEASE PRINT OR TYPE NAME AND ADDRESS INCLUDING POSTAL ZIP CODE OF ASSIGNEE)

*Shares*

*of the Capital Stock represented by this Certificate and hereby irrevocably constitutes and appoints*

*Attorney*

*to transfer the said stock on the books of the within-named Corporation with full power of substitution in the premises.*

*Dated* _____

NOTICE   THE SIGNATURE(S) TO THIS ASSIGNMENT MUST CORRESPOND WITH THE NAME(S) AS WRITTEN UPON THE FACE OF THIS CERTIFICATE IN EVERY PARTICULAR WITHOUT ALTERATION OR ENLARGEMENT OR ANY CHANGE WHATSOEVER.

SIGNATURE(S) GUARANTEED

NOTICE   THE SIGNATURE(S) SHOULD BE GUARANTEED BY AN ELIGIBLE GUARANTOR INSTITUTION, (BANKS, STOCKBROKERS, SAVINGS AND LOAN ASSOCIATION AND CREDIT UNIONS) WITH MEMBERSHIP IN AN APPROVED SIGNATURE GUARANTEE MEDALLION PROGRAM PURSUANT TO S.E.C. RULE 17AD-15.

# RESTRICTED

*122583433*

## IRREVOCABLE STOCK POWER

**FOR VALUE RECEIVED,** the undersigned does (do) hereby sell, assign and transfer to

_____

_____

_____

| (SOCIAL SECURITY |
|-------------------|
| OR TAXPAYER IDENTIFYING NO.) |

**PLEASE COMPLETE THIS PORTION**

_____ shares of the _____ stock of _____

represented by Certificate(s) No(s) _____ inclusive,

standing in the name of the undersigned on the books of said Company.

The undersigned does (do) hereby irrevocably institute and appoint _____

_____ attorney to transfer the said stock or bond(s), as the case may be, on

the books of said Company, with full power of substitution in the premises.

Dated    *8-9-2016*

_____          _____

*Paul   Kozlov*

PRINTED NAME                                    PRINTED NAME

SIGNATURE GUARANTEED
MEDALLION GUARANTEED
ALPINE SECURITIES
CORPORATION

AUTHORIZED SIGNATURE
A 0071092

( 007 )
SECURITIES TRANSFER AGENTS MEDALLION PROGRAM



# ALPINE SECURITIES
### Stock Brokerage & Investment Company

**Re: Removal of Restrictive Legend Pursuant to Rule 144(b)**

GOPHER PROTOCOL , INC.

| | | |
|---|---|---|
| **Issuer (the "Company")** | | |
| AMP GROUP HOLDINGS, INC. | | 122583433 |
| **Full Name of Shareholder** | | **Account Number** |
| 62,500 | 402 | |
| **Total Shares** | **Certificate Number(s)** | |

To Whom It May Concern:

This letter is submitted to you and the Company in connection with my request that the restrictive legend on the certificate(s) representing the above identified securities (the "Securities") be removed pursuant to rule 144 promulgated under the Securities Act of 1933 ("Rule 144"). In connection therewith, the undersigned represents and warrants to you and the Company as follows:

1. The undersigned is not and has not been during the preceding three months, an "affiliate" of the Company as that term is defined in paragraph (a) (1) of Rule 144.

2. The undersigned has fully paid for, beneficially owned, and held the shares of the Company for a period of

   ☒ Six Months (if issuer is an SEC reporting company) or

   ◌ One Year in accordance with paragraph (d) of rule 144 as amended on 2/15/2008

3. These certificates are not issued from a Shell / Blank Check Company as defined by the SEC.

The undersigned is familiar with Rule 144 promulgated under the Securities Act of 1933 and agrees that you and the Company may rely upon the above statements.

Sincerely,

_____          8/18/2016
**Signature of Shareholder**                        **Date**
PAUL KOZLO
**(Print Name)**

_____          _____
**Signature of Joint Shareholder (if applicable)**          **Date**

_____
**(Print Name)**

39 Exchange Place | Salt Lake City, UT 84111
P (801) 355-5588 | F (801) 355-5742 | toll free (800) 274-5588 | www.alpine-securities.com
Member FINRA & SIPC

Revised 10/4/2013

From: David Adams     Fax: (619) 398-3353     To:          Fax: +1 (888) 794-5271     Page  30of 42 03/22/2016 4:21 PM

*Corp Res*

**Action by the Unanimous Written**
**Consent of the Directors of**
**AMP Group Holdings, Inc.**
**(a Delaware Company)**

THE UNDERSIGNED, representing the consent of Directors of AMP Group Holdings, Inc., a Delaware Company (the "**Company**"), hereby consent in writing to the adoption of the following resolutions and order that this Consent be filed with the minutes of the proceedings of the Board of Directors (the "**Board**"), as of the 19th day of March 2016.

---

## OPENING OF A BROKERAGE ACCOUNT

**WHEREAS,** the Board believes that it is in the best interest of the Company to open a brokerage account with ACAP Financial, Inc. 57 West 200 South Suite 202 Salt Lake City, UT 84101 and/or with Alpine Securities Company 39 Exchange Place Salt Lake City, UT 84111, collectively or individually, the Broker/Dealer.

**RESOLVED,** That the Individual named hereinbelow, Mr. Paul Kozlov, in this Resolution is authorized on behalf of this Company to establish and maintain one or more accounts which may be margin accounts with the Broker/Dealer named in the preceding paragraph. The account(s) will be used for the purpose of purchasing, investing in, or otherwise acquiring, selling (including short sales in margin accounts), possessing, transferring, exchanging, or otherwise disposing of, or turning to account of, or realizing upon, and generally dealing in and with all forms of securities including, but not limited to, shares, stocks, bonds, debentures, notes, scrip, participation certificates, rights to subscribe, certificates of deposit, mortgages, evidences of indebtedness, commercial paper, certificates of indebtedness and certificates of interest of every kind and nature whatsoever, secured or unsecured, whether represented by trust, participating and/or other certificates or otherwise. The fullest authority at all times with respect to any such commitment or transaction, deemed by any of the officers and/or agents to be proper in connection with, is hereby conferred, including authority (without limiting the generality of the foregoing) to give written or oral instructions with respect to transactions.

Mr. Paul Kozlov, as the "duly authorized individual" on behalf of the Company is authorized to borrow money and securities and to borrow such money and securities from or through the Broker/Dealer and to secure repayment thereof with the property of the Company. The authorized individual may bind and obligate the Company to and for the carrying out of any contract, arrangement, or transaction, which is entered into by any officer and/or agent for and on behalf of the Company with or through the Broker/Dealer. The authorized individual may pay by checks, and/or drafts drawn on the funds of the Company such sums as may be necessary in connection with any of the said accounts. The authorized individual may deliver securities and contracts to the Broker/Dealer and deliver securities to/and deposit funds with it. The authorized individual may order the transfer or delivery of securities to any other person whatsoever, and/or to order the transfer of record of any securities, to any name selected by any of the said officers or agents, affix the corporate seal to any documents or securities to any name selected by any of the said officers or agents and affix the corporate seal to any documents or agreements, or otherwise to endorse any securities and/or contracts in order to pass title. The authorized individual may direct the sale or exercise any rights with respect to any securities and sign for the Company all releases, powers of attorney, trading authorizations, Margin Agreements,

Options Contracts and/or other documents in connection with any such account, and to agree to any terms or conditions to control any account. The authorized individual may direct the Broker/Dealer to surrender any securities to the proper agent or party for the purpose of effecting any exchange or conversion, or for the purpose of deposit with any protective or similar committee. The authorized individual may accept delivery of any securities and appoint any other person or persons to do any and all things which any of the said officers and/or agents is hereby empowered to do; and also, it is

RESOLVED, That the Broker/Dealer may deal with all of the persons directly or indirectly by the foregoing resolution empowered, as though they were dealing with the Company directly; and furthermore, it is

RESOLVED, That the Secretary, and any other officer of the Company is hereby authorized, empowered, and directed to certify, under the seal of the Company, or otherwise, to the Broker/Dealer that: A. A true copy of these resolutions B. Specimen signatures of each and every person by these resolutions empowered C. A certificate (which, if required by Broker/Dealer, shall be supported by an opinion of the general counsel of the Company, or other counsel satisfactory to the Broker/Dealer) that the Company exists, that its charter empowers it to transact the business by these resolutions, and that no limitation has been imposed upon such powers by the by-laws or otherwise; and continuing, it is

RESOLVED, That the Broker/Dealer may rely upon any certification within these resolutions, until it receives written notice of a change in or rescission of authority (no other form of notice is acceptable), nor shall the fact that any individual previously authorized ceases to be an officer of the Company or becomes an officer under some other title, in any way affect the powers hereby conferred. The failure to supply the Broker/Dealer with written notification of changes does not invalidate any transaction if the transaction is in accordance with authority actually granted,

RESOLVED, That in the event of any change in the office or powers of person empowered, the Secretary or any other officer of the Company shall notify changes to the Broker/Dealer in writing. When received, the Broker/Dealer will terminate the powers of the person previously authorized, and to empower the persons taking the place of the previous persons; and continuing, it is

RESOLVED, That the foregoing resolutions and the certificates furnished to the Broker/Dealer by the Secretary or other officer of the Company are made irrevocable until written notice of the revocation has been received by the Broker/Dealer; and continuing, it is

RESOLVED, that the form, terms and provisions of the Certificate of Designation are hereby approved in all respects, and the Company's Authorized Offers are each hereby authorized to execute the Certificate of Designation in the form attached hereto, together with such amendments and changes thereto as such authorized officers, or any of them in his/her/their sole discretion shall approve, his/her/their signature thereon to be conclusive evidence of such approval; and continuing, it is

RESOLVED, that the officers of the Company be, and they hereby are, authorized in the name and on behalf of the Company to take all actions that they deem necessary or advisable in order to effect the qualification of the securities for issue, and in connection therewith to execute, acknowledge, verify, deliver, file or cause to be published any applications, reports, consents to service of process, appointment of attorneys to receive service of process, and other papers and

instruments which may be required, and to take any further action which they deem necessary or advisable in order to maintain any qualifications for as long as they deem necessary or as required by law; and finally, it is

**RESOLVED**, that the action taken by this consent shall have the same force and effect as if taken at a meeting of the Board of Directors of the Company, duly called.

   **IN WITNESS WHEREOF**, the undersigned, being the directors of the Company, consents hereto in writing as of the date first written above and direct that this instrument be filed with the minutes of proceedings of the Board of Directors of the Company.

_____
Paul Kozlov

SIGNATURE GUARANTEED
MEDALLION GUARANTEED
ALPINE SECURITIES
CORPORATION

A 0 0 7 1 0 9 2
( 007 )
SECURITIES TRANSFER AGENTS MEDALLION PROGRAM

**Page 3 of 3**

# LAW OFFICE OF TOD A. DITOMMASO

3020 Bridgeway, Suite 269
Sausalito, CA 94965
(310) 367-0918
todanthonyditommaso@earthlink.net

August 22, 2016

Casey Weseloh
**EMPIRE STOCK TRANSFER, INC.**
1859 Whitney Mesa Dr.
Henderson, NV 89014

David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
57 West 200 South Suite 202
Salt Lake City, UT 84101

> **Re: Gopher Protocol, Inc. (GOPH):**
> **Shareholder: AMP Group Holdings, Inc. - Rule 144**
> **Number of Shares: 62,500**
> **Certificate Number: 402 - Issued: July 26, 2016**

Dear Casey and David:

We have been requested by AMP Group Holdings, Inc. ("Holder"), to provide an opinion with respect to the transferability, under available exemptions provided by Rule 144 of the Securities Act of 1933, as amended ("Act"), of Certificate Number 402, representing 62,500 shares ("Shares") of Common Stock of Gopher Protocol, Inc. ("Issuer" or "Company"), a Nevada Corporation, f.k.a. Forex International Trading Corporation [an S.E.C. reporting company trading on the OTC Markets - OTC QB].

**Background:**

The Holder acquired the above referenced Shares as follows:

## Assignment of Series D Preferred Stock to Direct Communications, Inc.

- On March 4, 2015, Issuer, entered into a Territorial License Agreement ("License Agreement") with Hermes Roll, LLC ("Hermes"). Pursuant to the License Agreement, Hermes licensed to the Issuer, certain intellectual property relating to Hermes' system and method for scheduling categorized deliverables based on a smartphone application and/or via the internet, in consideration of 100,000 shares of Series D Preferred Stock of the Issuer ("Preferred Shares") [Form 8-K, Filed March 12, 2015 for the Period Ending

Casey Weseloh
**EMPIRE STOCK TRANSFER, INC.**
David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
Re: Gopher Protocol, Inc. (GOPH):
Shareholder: AMP Group Holdings, Inc. - Rule 144
Number of Shares: 62,500
Certificate Number: 402 - Issued: July 26, 2016
August 22, 2016
Page 2

> March 2, 2015].

- The issuance of the Preferred Shares was made in reliance upon exemptions from registration pursuant to Section 4(2) under the Securities Act of 1933 and Rule 506 promulgated under Regulation D. Hermes is an accredited investor as defined in Rule 501 of Regulation D promulgated under the Securities Act of 1933.

- The Preferred Shares have a conversion price of $0.01 ("Conversion Price") and a stated value of $10.00 per share ("Stated Value"). Subject to the Issuer increasing its authorized shares of common stock to 500,000,000, each Preferred Share is convertible, at the option of the shareholder, into such number of shares of common stock of the Issuer as determined by dividing the Stated Value by the Conversion Price.

- The License Agreement authorized Hermes to assign its right and interest in the Series D Preferred Shares to various third parties.

- Hermes assigned 9,200 Preferred Shares to Direct Communications, Inc. ("Direct Communications") under the License Agreement.

## Direct Communications, Inc.'s Conversion of Series D Preferred Stock into Common Shares

- On August 31, 2015, Direct Communications gave a notice of conversion to the Issuer stating its intention to convert 250 Series D Preferred Shares into 250,000 common shares, which were issued to Direct Communications on or around that date [Form 10-Q, Filed November 16, 2015 for the Period Ending September 30, 2015].

## Sale of Common Stock by Direct Communications, Inc., to Theresa Merman Living Trust

- On August 27, 2015, Direct Communications sold 62,500 shares to the Theresa Merman Living Trust [Stock Purchase Agreement, dated August 27, 2015; Certificate Number 371, 62,500 shares, issued on August 31, 2015].

## Sale of Common Stock by Theresa Merman Living Trust to AMP Group Holdings, Inc.

- With a Closing Date effective June 29, 2016, the Theresa Merman Living Trust sold 62,500 shares to the Holder [Stock Purchase Agreement, dated June 28, 2016; Check

Casey Weseloh
**EMPIRE STOCK TRANSFER, INC.**
David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
Re: Gopher Protocol, Inc. (GOPH):
Shareholder: AMP Group Holdings, Inc. - Rule 144
Number of Shares: 62,500
Certificate Number: 402 - Issued: July 26, 2016
August 22, 2016
Page 3

      Number 1040, dated June 28, 2016, in the amount of $12,500.00].

- Certificate Number 402 was issued on July 26, 2016, to the Holder, representing 62,500 shares. Certificate Number 371 was then cancelled.

      In our opinion and based on the information and rationale set forth below, an exemption from registration is available under Rule 144 of the Act with respect to the Shares and Certificate Number 402. The restrictive legend may be removed from Certificate Number 402.

**Pertinent Law and Application to the Facts:**

      We have analyzed the facts and circumstances presented to us within the framework of the Act, including some of the scholarly treatises and articles authored addressing exemptions under the Act.

      <u>**Registration Requirements and Rule 144 Exemption:**</u>

      Section 5 of the Act requires that any offer or sale of securities which involves the mails or a means of interstate commerce must be registered. Certain offerings may be exempt from the registration process by the nature of the security, nature of the transaction, or the amount of the offering.

      Section 4 of the Act provides several transactional exemptions to the registration requirements of Section 5, as do certain rules and regulations promulgated thereunder. Specifically, Section 4(a)(1) provides that "[t]he provisions of section 5 shall not apply to... (1) transactions by any person other than an issuer, underwriter or dealer."

      Section 2(4) of the Act defines an "issuer" as including ". . . every person who issues or proposes to issue any security." An issuer is subject to the registration requirements of Section 5 of the Act whenever it makes an original distribution of securities to the public.

      Section 2(12) of the Act defines a "dealer" to include "any person who engages either for all or part of his time, directly or indirectly, as agent, broker, or principal, in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person."

      Based on the above definitions, the Holder is not an issuer nor a dealer under the Act.

Casey Weselob
**EMPIRE STOCK TRANSFER, INC.**
David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
Re: Gopher Protocol, Inc. (GOPH):
Shareholder: AMP Group Holdings, Inc. - Rule 144
Number of Shares: 62,500
Certificate Number: 402 - Issued: July 26, 2016
August 22, 2016
Page 4

"The term 'underwriter' is broadly defined in Section 2(11) of the . . . Act to mean any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates, or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking." An investor holding restricted securities may be considered underwriters if they act as a link in the chain of transactions through which securities are transferred to the public.

Rule 144 sets out objective standards under which an exemption to being classified as an underwriter is available to non-affiliates and provides a safe harbor for those claiming an exemption. Under Rule 144(b)(1) a seller who is not an affiliate, and has not been an affiliate during the preceding 90 days, who complies with the holding period requirement of Rule 144 (i.e., six months for a reporting company and 12 months for a non-reporting company) will not be classified as an underwriter.

**Affiliate Status:**

Rule 144(a)(1) provides that "[a]n affiliate of an issuer is a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer." Furthermore, any person or entity who is an officer, director, or which owns more than ten percent of the issuer's shares is considered an affiliate.

We have determined that Hermes Roll, LLC, Direct Communications, Inc., Theresa Merman Living Trust, and the Holder, are not now, nor have ever been, an affiliate, officer, director, or control person of the Issuer, and are not a beneficial owner of more than 10% of any class of security of the Issuer. I am satisfied that none of these individuals and entities are an affiliate of the Issuer.

**Holding Period:**

In the case of an S.E.C. reporting corporation, Rule 144 authorizes a non-affiliate holder of restricted stock to resell such stock upon the expiration of a six-month holding period. The foundational principle underlying Rule 144's holding period is that securities acquired and held for six months were most likely purchased with investment intent and not with a "view toward distribution." The holding period commences on the date when the full purchase price or other consideration has been paid. In this case, the Holder is deemed to have acquired the Shares more than six months prior to the issuance of this Opinion Letter (See, Tacking).

Casey Weseloh
**EMPIRE STOCK TRANSFER, INC.**
David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
Re: Gopher Protocol, Inc. (GOPH):
Shareholder: AMP Group Holdings, Inc. - Rule 144
Number of Shares: 62,500
Certificate Number: 402  - Issued: July 26, 2016
August 22, 2016
Page 5

### Tacking:

As provided in Rule 144(d)(3)(ii) "the holding period for other securities from the same issuer can be tacked on to the holding period on the new exchanged shares only if the exchange consists of solely of other securities of the same issuer." To meet the time frame, a shareholder is entitled to "tack" onto the holding periods of prior owners, except affiliates. Tacking is also permitted for shares acquired: (a) in stock dividends, splits, and recapitalizations; (b) through conversions (if made without payment of any additional consideration); (c) through gifts; and (d) from trusts and estates.

The original securities, the Preferred Shares, were acquired by Direct Communications on March 4, 2015. The holding period of Direct Communications and Theresa Merman Living Trust, may be tacked on to the holding period of the Holder. As such, we are of the opinion that the restrictive legend may be removed from Certificate Number 402.

### Shell Status:

For purposes of Rule 144(i)(1)(i), a shell company is a company that has no or nominal operations and either: (i) no or nominal assets; (ii) assets consisting solely of cash and cash equivalents; or (iii) assets consisting of any amount of cash and cash equivalents and nominal other assets.

The Issuer was incorporated on July 22, 2009, and is a "Development-stage Company that is developing a real-time, heuristic based, mobile technology, per license agreement it holds. Upon development, the technology will consist of a smart microchip, mobile application software and supporting software that run on a server." The Issuer maintains a website: www.gopherprotocol.com, containing additional information concerning its business and its products.

Furthermore, we have reviewed the annual and quarterly reports filed by the Issuer and published in the OTC News Service at www.otcmarkets.com. It is our opinion that the requirements of Rule 144(I) have been satisfied. To the best of our knowledge and belief, the Issuer is not now and never has been a "shell company" within the meaning of "shell company" as defined by the staff of the Securities and Exchange Commission ("SEC") in SEC Release 33-8587.

Casey Weseloh
**EMPIRE STOCK TRANSFER, INC.**
David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
<u>Re: Gopher Protocol, Inc. (GOPH)</u>:
Shareholder: AMP Group Holdings, Inc. - Rule 144
Number of Shares: 62,500
Certificate Number: 402 - Issued: July 26, 2016
August 22, 2016
Page 6

**Records and Documents:**

My investigation has included review of everything I deemed necessary and appropriate under S.E.C. rules and regulations, including, but not limited to, the following records and documents provided by the Issuer and the Holder:

1.     Form 8-K, Filed March 12, 2015 for the Period Ending March 2, 2015;

2.     Form 10-Q, Filed November 16, 2015 for the Period Ending September 30, 2015;

3.     Stock Purchase Agreement, dated August 27, 2015;

4.     Certificate Number 371, 62,500 shares, issued on August 31, 2015;

5.     Stock Purchase Agreement, dated June 28, 2016;

6.     Check Number 1040, dated June 28, 2016, in the amount of $12,500.00;

7.     Certificate Number 402, representing 62,500 shares issued on July 26, 2016;

8.     Shareholder Statement, dated July 29, 2016; and,

9.     Company Certification, dated July 29, 2016.

**Qualifications:**

The opinion expressed above is subject to the following qualifications and limitations:

•      Nothing came to my attention during the course of my investigation that led me to conclude that any of the documents provided by the Company and the Holder were not genuine or authentic, were not complete, or that the facts set forth therein were not true. The opinions do not take into consideration any events that may occur subsequent to the date of this opinion letter. Any inaccuracy in the factual representations provided by the Company and/or Holder may affect the opinions and conclusions set forth in this opinion letter. This opinion letter may not be relied upon by any person or entity which has any knowledge of the facts or circumstances which are contrary to said representations, or which would alter the opinions and conclusions set forth above.

Casey Weselah
**EMPIRE STOCK TRANSFER, INC.**
David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
Re: Gopher Protocol, Inc. (GOPH):
Shareholder: AMP Group Holdings, Inc. - Rule 144
Number of Shares: 62,500
Certificate Number: 402 - Issued: July 26, 2016
August 22, 2016
Page 7

- We are of the opinion that the Company is current in its reporting requirements. The information provided by the Company (i) constitutes "adequate current public information" concerning the securities and the Company and "is available within the meaning of Rule 144(c)(2) under the Securities Act"; (ii) includes all of the information that a broker-dealer would be required to obtain from the Company to publish a quotation of the securities under Rule 15c2-11 under the Securities Exchange Act of 1934, as amended; (iii) complies as to form with the OTC Markets Guidelines for Providing Adequate Current Information, which are located on the internet at www.otcmarkets.com; and (iv) has been posted in the OTC Markets News Service.

- Our opinions are expressly limited to the matters set forth above and we render no opinion, whether by implication or otherwise, as to any other matters relating to the Company or the Holder.

- We express no opinion concerning the past, present or future fair market value of the Shares.

- The various statutory provisions, regulatory rules, and court decisions upon which the above opinions are based are subject to change.

- Be advised that opinion letters from counsel are not binding upon the S.E.C., other regulatory bodies or the courts.

- This opinion letter is only valid for ninety (90) days from the date of issuance.

- We are admitted to practice law in the State of California. The opinions expressed above are limited to the Federal laws of the United States of America. We express no opinion with respect to the laws of any other jurisdiction. No opinion is expressed herein with respect to the qualification of the Shares under the securities or blue sky laws of any state or any foreign jurisdiction.

- This opinion is solely for the use of the Holder, for the Company, and for the use of the Transfer Agent and the Broker/Dealer. This opinion may not be published, relied upon or provided to any other person or entity without our prior written consent.

- No attorney/client relationship is intended, or created by, the rendering of this Opinion Letter. We are acting as independent special counsel for this single transaction only.

Casey Weseloh
**EMPIRE STOCK TRANSFER, INC.**
David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
Re: Gopher Protocol, Inc. (GOPH):
Shareholder: AMP Group Holdings, Inc. - Rule 144
Number of Shares: 62,500
Certificate Number: 402 - Issued: July 26, 2016
August 22, 2016
Page 8

**Conclusion:**

I am of the opinion that the Holder is not an issuer, underwriter or dealer, and meets the "substantial burden" set forth by the S.E.C. on those who desire to rely on a sales exemption under Rule 144, and may avail itself of the protection of the safe harbor under Rule 144. Accordingly, I am further of the opinion that Certificate Number 402 representing 62,500 common shares is exempt from the registration requirements of the Act.

Very Truly Yours,

Tod Anthony DiTommaso, Esq.

# STOCK PURCHASE AGREEMENT

This Stock Purchase Agreement ("Agreement") is entered into as of June 28, 2016 by and between Theresa E. Merman Living Trust ("Seller") and AMP Group Holdings Inc. ("Purchaser"). Purchaser and Seller may collectively be referred to as the "Parties."

WHEREAS, Seller is the record owner and holder of shares of the capital stock of Gopher Protocol (the "Company"), a California Corporation

WHEREAS, the Parties desire to enter into this Agreement pursuant to which Purchaser will purchase from Seller shares of capital stock of the Company.

NOW, THEREFORE, in consideration for the promises set forth in this Agreement, the Parties agree as follows:

1. PURCHASE AND SALE: Subject to the terms and conditions set forth in this Agreement, Purchaser hereby agrees to purchase from Seller, and Seller hereby agrees to sell, transfer and convey to the Purchaser *Sixty Two Hundred Thousand Five Hundred (62,500)* common shares of Gopher Protocol stock of the Company (the "Stock").

2. PURCHASE PRICE: The purchase price for each share of Stock shall be *Twenty cents ($.20)* for an aggregate purchase price of *Twelve Thousand Five Hundred Dollars ($12,500.00)* (the "Purchase Price"), to be paid to the Seller in cash at the closing.

3. CLOSING: The closing contemplated by this Agreement for the transfer of the Stock and the payment of the Purchase Prices shall take place TBD on June 29, 2016 at TBD (the "Closing"). The certificates representing the Stock shall be duly endorsed for transfer or accompanied by an appropriate stock transfer.

4. REPRESENTATIONS AND WARRANTIES OF SELLER: Seller hereby warrants and represents that:

   (a) Restrictions on Stock. The Seller is not a party to any agreements that create rights or obligations in the Stock relating to any third party including voting or stockholder agreements. The Seller is the lawful owner of the Stock, free and clear of any encumbrances, security interests or liens of any kind and has full power and authority to sell and transfer the Stock as contemplated in this Agreement.
   (b) Organization and Standing. To the Seller's knowledge, the Company is duly organized, validly existing and in good standing under the laws of the State of Nevada *[insert state of incorporation]* and has full power and authority to own

and operate its property and assets and to carry on its business as presently conducted.

5. **SEVERABILITY:** If any part or parts of this Agreement shall be held unenforceable for any reason, the remainder of this Agreement shall continue in full force and effect. If any provision of this Agreement is deemed invalid or unenforceable by any court of competent jurisdiction, and if limiting such provision would make the provision valid, then such provision shall be deemed to be construed as so limited.

6. **BINDING EFFECT:** The covenants and conditions contained in this Agreement shall apply to and bind the parties and the heirs, legal representatives, successors and permitted assigns of the Parties.

7. **BROKER'S FEES:** The Parties represent that there has been no act in connection with the transactions contemplated in this Agreement that would give rise to a valid claim against either party for a broker's fee, finder's fee or other similar payment.

8. **ENTIRE AGREEMENT:** This Agreement constitutes the entire agreement between the Parties and supersedes any prior understanding or representation of any kind preceding the date of this Agreement. There are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Agreement. This Agreement may be modified in writing and must be signed by both the Seller and Purchaser.

9. **GOVERNING LAW:** This Agreement shall be governed by and construed in accordance with the laws of the State of California.

10. **NOTICE:** Any notice required or otherwise given pursuant to this Agreement shall be in writing and mailed certified return receipt requested, postage prepaid, or delivered by overnight delivery service:

    (a) If to Purchaser:

    _____

    _____

    (b) If to Seller:

    _____

    _____

11. **WAIVER:** The failure of either party to enforce any provisions of this Agreement shall not be deemed a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed the day and year first above written.

SELLER:

BUYER:

By:

COMPANY:

By: _AMP Group Holdings INC._



WELLS FARGO BANK 1040

DATE 6-28-16

Y TO THE ORDER OF Theresa Merman $ 12500 00/100

Twelve Thousand Five Hundred Even DOLLARS

⑈1220002‹47‹881794 2803⑈ 1040





**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

# EXHIBIT 11

**Empire Stock Transfer**

**GOPH  - Gopher Protocol Inc.**

**Stock Transfer - Final Transaction Report**

Control Ticket Number:  STTK000000061482          Transaction Number    327          Transfer Date: 07/26/16
Type of Stock being Transferred:    CS3              Total Shares  213,000                Sale Amt/share:$ 0.00000
Paper certifs being Transferred from: 1
Paper certifs being Transferred to:    1             Received From:  VLADIMIR HANIN
                                                     Received: 07/26/16 at 10:11   Tran Type:Non-Routine Item Count:  1
Tax Reason: Gift      Gifted: 07/26/16   FMV/share:  How Received:FEDEX
$0.00000
                                                     Sent: 07/26/16 at 12:01        How Sent:  FEDEX
                                                     Outgoing Tracking Number:   776846188568

| | ----Transfer From---- | | | | ----Transfer To---- | | |
|---|---|---|---|---|---|---|---|
| Line # | Shareholder | Certificate Number | Number of Shares | Line # | Shareholder | Certificate Number | Shares per Certif |
| 1 | 121  Reko Holdings, LLC | CS3  372 | 213,000 | 1 | 130  Vladimir Hanin | CS3  403 | 213,000 |
| | | RESTRICTED CONTROL | | | | | RESTRICTED CONTROL |
| | | | 213,000 | | Number of new certs: 1 | | 213,000 |

Restricted Verification
Stamp _____
Legend _____

Completed By: RDP       Report Run By: RDP 07/26/16 12:02:07 pm

# Empire Stock Transfer

## GOPH - Gopher Protocol Inc.

### Stock Transfer - Final Transaction Report

7/26/16
12:02 pm
Page 1 of 1

Control Ticket Number:  STTK000000061482

Type of Stock being Transferred:  CS3

Paper certifs being Transferred from: 1

Paper certifs being Transferred to:  1

Tax Reason: Gift     Gifted: 07/26/16     FMV/share:
$0.00000

Transaction Number    327     Transfer Date: 07/26/16

Total Shares  213,000     Sale Amt/share:$ 0.00000

Received From:  VLADIMIR HANIN

Received: 07/26/16 at 10:11     Tran Type:Non-Routine Item Count: 1

How Received:FEDEX

Sent: 07/26/16 at 12:01     How Sent:  FEDEX

Outgoing Tracking Number:  776846188568

| Line # | Shareholder | Certificate Number | Number of Shares | Line # | Shareholder | Certificate Number | Shares per Certif |
|---|---|---|---|---|---|---|---|
| 1 | 121  Reko Holdings, LLC | CS3  372 | 213,000 | 1 | 130  Vladimir Hanin | CS3  403 | 213,000 |
| | | RESTRICTED CONTROL | 213,000 | | Number of new certs: 1 | RESTRICTED CONTROL | 213,000 |

-----Transfer From-----          -----Transfer To-----



Completed By: RDP     Report Run By: RDP 07/26/16 12:02:07 pm

[ ] Restricted Email   [ ] Indemnity Notice
[ ] Indemnity Required   [ ] Transfer Notice
[ ] Medallion   [ ] No Fees
[ ] No Instructions   [ ] Indemnity Attached

[ ] Other

RECEIVED
JUL 26 2016
EMPIRE STOCK TRANSFER INC.

Legend Remains

327

## Transfer Instruction Form

Company Name & CUSIP No: __GOPHER PROTOCOL, INC. CUSIP 38268V108__

Certificate Number: __372__ Total Number of Shares: __213,000__

Current Shareholder: REKO HOLDING, LLC

SS or Tax ID Number: _____

This certificate was acquired on Date) _____

at a cost of $ _____ _____

New Name/Registration: **VLADIMIR HANIN**

New Address: 5415 SEPULVEDA BLVD. 116 SHERMAN OAKS CA 91403

SS or Tax ID Number: 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

Number of Shares Being Transferred: __213,000__

Are these shares a gift? Yes No (circle one)

Are the recipients inheriting the shares from an estate? Yes No (circle one)

Does this transfer qualify as a wash sale? Yes No (circle one)

If these shares are being acquired, acquisition date_____ at a cost of $ .20

Current Owner(s) Signatures: _Hoeen_

Today's Date:7/22/16 Telephone: E-Mail: _VLADIMIRHANIN58@gmail.com

Medallion Guarantee Stamp Area:

Certificate Delivery Instructions: Method of Sending (check one) FEDEX  DHL  UPS

Account Number: _____

Contact Name: VLADIMIR HANIN Phone: _____

Address: _____





NUMBER
372

COMMON STOCK

SHARES
***213,000***

COMMON STOCK
CUSIP 38268V108

SEE REVERSE FOR CERTAIN DEFINITIONS

*GOPHER PROTOCOL INC.*

Par Value $.00001
INCORPORATED UNDER THE LAWS OF THE STATE OF
NEVADA

THIS CERTIFIES THAT

***Reko Holdings, LLC***

is the Owner of  *** Two Hundred Thirteen Thousand ***

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF
GOPHER PROTOCOL INC.

*transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed.  This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.*

*Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.*

Dated:  **November 6, 2015**

COUNTERSIGNED AND REGISTERED:
**EMPIRE STOCK TRANSFER INC.**
Transfer Agent and Registrar

By

AUTHORIZED SIGNATURE

CORPORATE
NEVADA
GOPHER PROTOCOL INC.
July 22, 2009
SEAL

SECRETARY

PRESIDENT

B   65247

RESTRICTED
CONTROL

The following abbreviations, when used in the inscription of the face of this certificate, shall be construed as though they were written out in full according to applicable laws or regulations:

TEN COM — as tenants in common

TEN ENT — as tenants by the entireties

JT TEN — as joint tenants with right of survivorship and not as tenants in common

UNIF GIFT MIN ACT — _____Custodian_____
(Cust)                    (Minor)
under Uniform Gifts to Minors Act

_____
(State)

Additional abbreviations may also be used though not in the above list.

*For Value Received,*_____*hereby sells, assigns and transfers unto*

PLEASE INSERT SOCIAL SECURITY
OR OTHER IDENTIFYING NUMBER

_____

(PLEASE PRINT OR TYPE NAME AND ADDRESS INCLUDING POSTAL ZIP CODE OF ASSIGNEE)

_____*Shares*

*of the Capital Stock represented by this Certificate and hereby*

*irrevocably constitutes and appoints*

_____*Attorney*

*to transfer the said stock on the books of the within–named Corporation*

*with full power of substitution in the premises.*

*Dated* _____

NOTICE    THE SIGNATURE(S) TO THIS ASSIGNMENT MUST CORRESPOND WITH THE NAME(S) AS WRITTEN UPON THE FACE OF THIS CERTIFICATE IN EVERY PARTICULAR WITHOUT ALTERATION OR ENLARGEMENT OR ANY CHANGE WHATSOEVER.

SIGNATURE(S) GUARANTEED

NOTICE    THE SIGNATURE(S) SHOULD BE GUARANTEED BY AN ELIGIBLE GUARANTOR INSTITUTION, (BANKS, STOCKBROKERS, SAVINGS AND LOAN ASSOCIATION AND CREDIT UNIONS) WITH MEMBERSHIP IN AN APPROVED SIGNATURE GUARANTEE MEDALLION PROGRAM PURSUANT TO S.E.C. RULE 17AD-15.

THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES FEDERAL OR STATE SECURITIES LAWS AND MAY NOT BE OFFERED FOR SALE, SOLD, OR OTHERWISE TRANSFERRED ON THE BOOKS OF THE COMPANY, WITHOUT REGISTRATION OF SUCH SECURITIES UNDER ALL APPLICABLE UNITED STATES FEDERAL OR STATE SECURITIES LAWS OR COMPLIANCE WITH AN APPLICABLE EXEMPTION THEREFROM, SUCH COMPLIANCE, AT THE OPTION OF THE COMPANY, TO BE EVIDENCED BY AN OPINION OF SHAREHOLDER'S COUNSEL, IN A FORM ACCEPTABLE TO THE COMPANY, THAT NO VIOLATION OF SUCH

Print Form

# IRREVOCABLE STOCK POWER

**FOR VALUE RECEIVED, the undersigned does hereby sell, assign and transfer unto:**

| VLADIMIR HANIN | 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 |
|---|---|
| Name | Social Security/Tax ID Number |

| 5415 SEPULVEDA BLVD. 116 SHERMAN OAKS CA 91403 | |
|---|---|
| Address | |

| 213,000 | shares of the Common Stock of: |
|---|---|
| Number of shares | |

| Gopher Protocol Inc. | |
|---|---|
| Issuer name | |

**Represented by:**

| 372 | |
|---|---|
| Certificate Number(s) | |

**and does hereby irrevocably constitute and appoint Empire Stock Transfer Inc. to transfer the said stock on the books of the within-named Corporation with full power of substitution in the premises.**

| _(signature)_ | 7/22/16 |
|---|---|
| Signed | Dated |

**NOTICE: The signature(s) to this assignment must correspond with the name(s) as written upon the face of this certificate in every particular without alteration or enlargement or any change whatsoever.**

MEDALLION GUARANTEED
JPMORGAN CHASE
BANK, N.A.

AUTHORIZED SIGNATURE
Z 9 0 1 0 4 0 6
( 727CA )
SECURITIES TRANSFER AGENTS MEDALLION PROGRAM™

Signature Guaranteed (Guarantor: Affix stamp here)

Medallion Signature Guarantee (Guarantor: Affix stamp here)

# STOCK PURCHASE AGREEMENT

This Stock Purchase Agreement ("Agreement") is entered into as of June 28, 2016 by and between Reko Holding, LLC ("Seller") and Vladimir Hanin ("Purchaser").
Purchaser and Seller may collectively be referred to as the "Parties."

WHEREAS, Seller is the record owner and holder of shares of the capital stock of Gopher Protocol (the "Company"), a California Corporation

WHEREAS, the Parties desire to enter into this Agreement pursuant to which Purchaser will purchase from Seller shares of capital stock of the Company.

NOW, THEREFORE, in consideration for the promises set forth in this Agreement, the Parties agree as follows:

1. PURCHASE AND SALE: Subject to the terms and conditions set forth in this Agreement, Purchaser hereby agrees to purchase from Seller, and Seller hereby agrees to sell, transfer and convey to the Purchaser *Cert 372 Two Hundred Thirteen Thousand (213,000)* common shares of Gopher Protocol stock of the Company (the "Stock").

2. PURCHASE PRICE: The purchase price for each share of Stock shall be *Twenty cents ($.20)* for an aggregate purchase price of *Forty Two Thousand Six Hundred Dollars ($42,600.00)* (the "Purchase Price"), to be paid to the Seller in cash at the closing.

3. CLOSING: The closing contemplated by this Agreement for the transfer of the Stock and the payment of the Purchase Prices shall take place TBD on June 29, 2016 at TBD (the "Closing"). The certificates representing the Stock shall be duly endorsed for transfer or accompanied by an appropriate stock transfer.

4. REPRESENTATIONS AND WARRANTIES OF SELLER: Seller hereby warrants and represents that:

   (a) Restrictions on Stock. The Seller is not a party to any agreements that create rights or obligations in the Stock relating to any third party including voting or stockholder agreements. The Seller is the lawful owner of the Stock, free and clear of any encumbrances, security interests or liens of any kind and has full power and authority to sell and transfer the Stock as contemplated in this Agreement.

   (b) Organization and Standing. To the Seller's knowledge, the Company is duly organized, validly existing and in good standing under the laws of the State of Nevada *[insert state of incorporation]* and has full power and authority to own

   and operate its property and assets and to carry on its business as presently conducted.

5. SEVERABILITY: If any part or parts of this Agreement shall be held unenforceable for any reason, the remainder of this Agreement shall continue in full force and effect. If any provision of this Agreement is deemed invalid or unenforceable by any court of competent jurisdiction, and if limiting such provision would make the provision valid, then such provision shall be deemed to be construed as so limited.

6. BINDING EFFECT: The covenants and conditions contained in this Agreement shall apply to and bind the parties and the heirs, legal representatives, successors and permitted assigns of the Parties.

7. BROKER'S FEES: The Parties represent that there has been no act in connection with the transactions contemplated in this Agreement that would give rise to a valid claim against either party for a broker's fee, finder's fee or other similar payment.

8. **ENTIRE AGREEMENT:** This Agreement constitutes the entire agreement between the Parties and supersedes any prior understanding or representation of any kind preceding the date of this Agreement. There are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Agreement. This Agreement may be modified in writing and must be signed by both the Seller and Purchaser.

9. **GOVERNING LAW:** This Agreement shall be governed by and construed in accordance with the laws of the State of California.

10. **NOTICE:** Any notice required or otherwise given pursuant to this Agreement shall be in writing and mailed certified return receipt requested, postage prepaid, or delivered by overnight delivery service:

    (a)  If to Purchaser:

    (b)  If to Seller:

11. **WAIVER:** The failure of either party to enforce any provisions of this Agreement shall not be deemed a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

**IN WITNESS WHEREOF, the parties have caused this Agreement to be executed the day and year first above written.**

SELLER:

_____

BUYER:    COMPANY:

By: _V. H_

By: _V. H._

Chase Online                                                                07/05/16  3:10 PM



| Search | |

## Check 105

VLADIMIR HANIN
6415 SEPULVEDA BLVD., APT. 116
SHERMAN OAKS, CA 91411-4505

DATE  06.24.16                                                   105

PAY TO THE ORDER OF  Rako Holding LLC          $ 42.600

Fourty two thousand six hundred #

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO

⑆322278627⑆  8206667830⑈0105

32464723464237446
06/05/2016  SEQ: 03404

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE

ENDORSE HERE

**Security | Terms of Use**

© 2016 JPMorgan Chase & Co.

**Rico Portaro**

| | |
|---|---|
| **From:** | Rico Portaro |
| **Sent:** | Tuesday, July 26, 2016 10:22 AM |
| **To:** | 'vladimirhanin58@gmail.com' |
| **Subject:** | Gopher Protocol Transfer |

Good Morning Vladimir,

I just received your transfer in today and wanted to clarify what it is you're looking to do with this certificate. Please call me at the number below at your earliest convenience.

Regards,
Rico
---
Rico Portaro
**Empire Stock Transfer Inc.**
1859 Whitney Mesa Dr. |  Henderson, NV 89014
rico@empirestock.com | P (702) 818-5898 | F (702) 974-1444 | www.empirestock.com

We are a full-service agent offering:
Transfer Agent & Registrar | EDGAR Filings | Proxy/Annual Meetings | Resident Agent Services

Let us do what we do best so you can do what you do best – run your business.
**Small Cap Agents for Today's Business**

CONFIDENTIALITY NOTICE: This e-mail and any attached documents contain information which is PRIVILEGED, PROPRIETARY and CONFIDENTIAL, are protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, Federal and State copyright laws, and are intended only for the use of the recipient(s) named herein.  No part of this document or any attachments may be reproduced or transmitted without permission from Empire Stock Transfer Inc. If you are not the intended recipient, you are hereby notified that any disclosure, distribution, or the taking of any action in reliance upon the contents of this communication is strictly prohibited.  If you have received this transmission in error, please notify us immediately.

# Log Sheet

Issuer:                  GOPH-Gopher Protocol Inc.

Received:              07/26/16      10:11 AM            ID/SCL#: 38268V108372

Received From:     VLADIMIR HANIN

How Received:      FEDEX

Track Number In:  783663236974

Control Ticket:      STTK000000061482

SEC Item Count:     1      Non-Routine

Contents:              372

Transaction No.:    327              Completed: 07/26/16

Track Number Out: FEDEX 776846188568

Sent To:               Individual Shareholders

Fees:            Due:                  Rcvd:                  Check #:

Assigned To:

Certificate Number(s) or Book Entry ID's:  1

         CS3-403 (RESTRICTED CONTROL)

Comments:        _____

                 _____

                 _____

Initials      Date

_____  _____  Logged In

_____  _____  Medallion Verified

_____  _____  Review Documents

_____  _____  Processed by

_____  _____  Stamp Certificates as Canceled and Transferred

_____  _____  Final Review/Authentification

_____  _____  Batch Completed and Made Available

_____  _____  Management Review



FedEx carbon-neutral
envelope shipping

ORIGIN ID:VNYA  (818) 645-3072
VLADIMIR HANIN
5415 SEPULVEDA BLVD
APT 116
SHERMAN OAKS, CA 91411
UNITED STATES US

SHIP DATE: 25JUL16
ACTWGT: 0.20 LB
CAD: 6992820/SSF01704

TO
**EMPIRE STOCK TRANSFER, INC.**
**1859 WHITNEY MESA DR**

**HENDERSON NV 89014**
(702) 818-5898        REF:
PO:                   DEPT:



**FedEx**
Express

**E**

TRK#
0201  7836 6323 6974

TUE – 26 JUL 10:30A
PRIORITY OVERNIGHT

**QV LASA**

89014
NV-US   **LAS**

FedEx Ship Manager - Print Your Label(s)

ORIGIN ID:LASA    (702) 818-5898
PATRICK MOKROS
EMPIRE STOCK TRANSFER INC.
1859 WHITNEY MESA DR.

HENDERSON, NV 89014
UNITED STATES US

SHIP DATE: 26JUL16
ACTWGT: 0.50 LB
CAD: 5040518/INET3790

BILL SENDER

TO VLADIMIR HANIN

5415 SEPULVEDA BLVD - UNIT 116

SHERMAN OAKS CA 91403
(702) 818-5898              REF: GOPH 403
INV:
PO:                         DEPT:



FedEx
Express

E

WED - 27 JUL 10:30A
PRIORITY OVERNIGHT

TRK#
0201   7768 4618 8568

XH VNYA                91403
             CA-US     BUR

7/26/2016

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g, jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

https://www.fedex.com/shipping/shipAction.handle?method=doContinue    1/1



NUMBER
403

SHARES
***213,000***

COMMON STOCK

COMMON STOCK
CUSIP 38268V108

## GOPHER PROTOCOL INC.

Par Value $.00001
INCORPORATED UNDER THE LAWS OF THE STATE OF
NEVADA

SEE REVERSE FOR CERTAIN DEFINITIONS

THIS CERTIFIES THAT

***Vladimir Hanin***

is the Owner of *** Two Hundred Thirteen Thousand ***

RESTRICTED CONTROL

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF

### GOPHER PROTOCOL INC.

*transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.*

*Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.*

Dated: July 26, 2016

COUNTERSIGNED AND REGISTERED:
EMPIRE STOCK TRANSFER INC.
                    Transfer Agent and Registrar

By

AUTHORIZED SIGNATURE

CORPORATE
NEVADA
GOPHER PROTOCOL INC
July 22, 2009
SEAL

SECRETARY

PRESIDENT

B  69245

# EXHIBIT 12

**Roberta Mors**

| | |
|---|---|
| **From:** | mo <schnappmoshe@gmail.com> |
| **Sent:** | Friday, August 12, 2016 6:43 PM |
| **To:** | Roberta Mors; Brian Barthlow |
| **Cc:** | Michael D. Murray; Mo |
| **Subject:** | Re: Empire Stock Transfer Inc. - Legend Removal Notice Gopher Protocol Inc. 401 187,500 Shares 8.11.16 |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

# STOP!

Explanation:

1. Legal opinion is **TOTALLY DEFECTIVE** as it has discrepancies on page 2 & 3 - The opinion describe transfer of 62,000 shares (3 times) while the correspondent certificate is for 62,500. Moreover, the opinion describing sale of 62,000 shares while the ONLY one agreement that was attached is for 62,500 shares. The opinion missing the two other/additional agreements that it described. It seems as the opinion should be RE_WRITEN.
2. The Company could not find an **indemnification package** for the transfer and issuance of certificate # 401 and as such basically "in the dark" for said transfer/issuance.

> On Aug 12, 2016, at 4:01 PM, Roberta Mors <roberta@empirestock.com> wrote:
>
> Attached you will find a restrictive legend removal request that we have received. We are sending this optional notification as previously discussed. We will process the request tomorrow morning as long as the transfer is in good order. No action by the issuer is necessary unless there is a known circumstance under which the legend should not be removed. Please advise if this is the case by sending a STOP request and explanation by email or fax. We will review the STOP and proceed accordingly. We hope this will assist in communication of transfer activity and further our client relationship. Please let us know if you have any special needs that we might be able to assist with.
>
> Thanks,
>
> Roberta Mors
> Empire Stock Transfer Inc.
>
> ------------------
>
> Additionally, here is some information that might be of assistance to our public company clients.
>
> We have EDGAR an filings department. You'll benefit from high quality and reliable services without the hidden fees associated with many other EDGAR filers. We provide fast turn-around



After printing this label:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our.ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

*Gopher*

## Casey Weseloh

| | |
|---|---|
| **From:** | Casey Weseloh |
| **Sent:** | Monday, August 22, 2016 9:56 AM |
| **To:** | 'afulton@alpine-securities.com' |
| **Cc:** | info@empirestock.com |
| **Subject:** | Gopher Transfers GSS & AMP |
| **Attachments:** | Gopher Amp 8.22.16.pdf; Gopher GSS 8.22.16.pdf |

Hello,

Thank you for taking my call earlier.

Attached are the 2 transfers that the Company is rejecting the Legal Opinion. Please read all the concerns on the front page from the Company.

I am allowing up until Wednesday August 24 to receive the items to represent to the Company. If we do not receive them we will be rejecting them back.

Thank you for your help!

Casey Weseloh
**Empire Stock Transfer Inc.**
casey@empirestock.com | P (702) 818-5898 | F (702) 974-1444 | www.empirestock.com

We are a full-service agent offering:
Transfer Agent & Registrar | EDGAR Filings | Proxy/Annual Meetings | Resident Agent Servic   es

Let us do what we do best so you can do what you do best – run your business.
**Small Cap Agents for Today's Business**

CONFIDENTIALITY NOTICE: This e-mail and any attached documents contain information which is PRIVILEGED, PROPRIETARY and CONFIDENTIAL, are protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, Federal and State copyright laws, and are intended only for the use of the recipient(s) named herein. No part of this document or any attachments may be reproduced or transmitted without permission from Empire Stock Transfer Inc. If you are not the intended recipient, you are hereby notified that any disclosure, distribution, or the taking of any action in reliance upon the contents of this communication is strictly prohibited. If you have received this transmission in error, please notify us immediately.

1

**Roberta Mors**

| | |
|---|---|
| **From:** | mo <schnappmoshe@gmail.com> |
| **Sent:** | Friday, August 19, 2016 6:43 PM |
| **To:** | Roberta Mors; Brian Barthlow; Matthew Blevins |
| **Cc:** | Michael D. Murray; Mo |
| **Subject:** | Re: Empire Stock Transfer Inc. - Legend Removal Notice Gopher Protocol Inc. 401 187,500 Shares 8.19.16 |

*afulton @ alpine.com*

# STOP!

1. Legal opinion is **TOTALLY DEFECTIVE (again...)** as it has discrepancies on page 3 - The opinion describe that Direct Communication sold 65,000 shares while if it sold it sold only 62,500. In the same sentence the opinion describe that the certificate is for 62,500. It seems as the opinion should be RE_WRITEN.
2. The attached ONE agreement of the sale has discrepancies which cannot be explained. The agreement has the date 7/21/2016, while per the agreement closing will take place on 6/29/2016 (before the agreement was signed????) and the check is dated 6/25/2016 (before closing????).
3. The certificate holder seek legend removal cert # 401 was issued on 7/20/2016 (without the company indemnification package) - **How can a cert being issued on 7/20/2016 when the corresponds agreement was signed day after? (See 2 above)**
4. The Company could not find an **indemnification package** for the transfer and issuance of certificate # 401 and as such basically "in the dark" for said transfer/issuance.
5. The Company request a FULL copy of ALL documents that were provided and caused the issuance of cert # 401.

**Roberta Mors**

| From: | Roberta Mors |
| --- | --- |
| Sent: | Friday, August 19, 2016 3:48 PM |
| To: | 'm.d.murray2010@gmail.com'; 'schnappmoshe@gmail.com' |
| Subject: | Empire Stock Transfer Inc. - Legend Removal Notice Gopher Protocol Inc. 401 187,500 Shares 8.19.16 |
| Attachments: | Gopher 401 187,500 Shares 8.19.16.pdf |

Attached you will find a restrictive legend removal request that we have received. We are sending this optional notification as previously discussed. We will process the request tomorrow morning as long as the transfer is in good order. No action by the issuer is necessary unless there is a known circumstance under which the legend should not be removed. Please advise if this is the case by sending a STOP request and explanation by email or fax. We will review the STOP and proceed accordingly. We hope this will assist in communication of transfer activity and further our client relationship. Please let us know if you have any special needs that we might be able to assist with.

Thanks,

Roberta Mors
Empire Stock Transfer Inc.

*Process*
*8-22-16*

--------------------

Additionally, here is some information that might be of assistance to our public company clients.

We have EDGAR an filings department. You'll benefit from high quality and reliable services without the hidden fees associated with many other EDGAR filers. We provide fast turn-around times and offer a complete range of filing services, from registration statements to periodic reports, in all EDGAR formats. Documents are handled by our staff only. Nothing is sent outside our office or outside the country. When outsourcing documents to Empire Stock Transfer, you will receive accurate and punctual filing using our advanced conversion technology. Our staff maintains the expertise to file your documents quickly and efficiently. Our EDGAR Filing Service produces high-quality documents with minimal effort, allowing us to dedicate ourselves to customer service and value. Our straightforward, itemized pricing structure guarantees that you will never be surprised upon receiving a statement.

We are a DTCC FAST participant agent. FAST is The Depository Trust Company's Fast Automated Securities Transfer service. What makes it fast and automated is that it does away with paperwork and paper securities almost completely, so that securities transfer agents can electronically provide custody, transfer, deposit and withdrawal services very quickly and efficiently. One feature of FAST is its balancing confirmation system, which delivers a daily record of the opening position, total credits, total debits and closing position in each FAST issue involved in a transaction the previous day.

What is DTC eligibility? This means that your company's stock is eligible for deposit with DTC aka "Cede & Co" aka the Street. Your company's security holders will be able to deposit their particular shares with a brokerage firm. Clearing firms, as full participants with DTC, handle the DTC eligibility submissions to DTC. Transfer agents were responsible for eligibility coordination years ago. Now, in order to make a new issue of securities eligible for DTC's delivery services, a completed and signed eligibility questionnaire must be

1

## ALPINE SECURITIES
*Stock Brokerage & Investment Company*

**RECEIVED**
AUG 1 2016
EMPIRE STOCK TRANSFER INC.

**August 10, 2016**

Empire Stock Transfer
1859 Whitney Mesa Dr
Henderson, NV 89014

[x] Restricted Email      [ ] Indemnity Notice
[ ] Indemnity Required    [ ] Transfer Notice
[ ] No Medallion          [ ] No Fees
[ ] No Instructions       [ ] Indemnity Attached

[ ] Other _____

### Transfer Instructions

**CUSIP:** 38268V108    **Security Name:** GOPHER PROTOCOL INC

### Certificates to Cancel

RECEIVED
AUG 1 2016
EMPIRE STOCK TRANSFER INC.

| Description: | Date: | Certificates: | Denomination: |
|---|---|---|---|
| GSS GROUP LLC | 7/20/2016 | 401 | 187,500 |

### Certificates to Issue

| Account Name: | ID: | Denominations: | Fees: |
|---|---|---|---|
| ALPCO | 87-0403873 | | |
| 39 Exchange Place | | 187,500 | |
| Salt Lake City, UT 84111 | | *UNRESTRICTED* | 60.00 |
| | | Reject Fee: | 75.00 |
| | | REMOVAL FEE: | 100.00 |
| | | CANCEL FEE: | 10.00 |
| **Totals:** | | 187,500 | 170.00 |

+75.00
245.00

Instructions: RULE 144 FREE UP
Account #: 308082083
TCN #: 308082083 223 2016

### *** Please call if Payment is incorrect***            AF

**Please remit certificates after transfer via FedEx Priority Overnight back to:**

Alpine Securities
39 Exchange Place
Salt Lake City, UT 84111
Tel# 801-355-5588
**FedEx # 121560747**

60194 | 30808208 3



NUMBER
401

COMMON STOCK

SHARES
***187,500***

COMMON STOCK
CUSIP 38268V108

SEE REVERSE FOR CERTAIN DEFINITIONS

## GOPHER PROTOCOL INC.

Par Value $.00001
INCORPORATED UNDER THE LAWS OF THE STATE OF
NEVADA

THIS CERTIFIES THAT

***GSS Group LLC***

**RESTRICTED**

Is the Owner of*** One Hundred Eighty-Seven Thousand Five Hundred ***

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF
GOPHER PROTOCOL INC.

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.

Dated: July 20, 2016

COUNTERSIGNED AND REGISTERED:
EMPIRE STOCK TRANSFER INC.
Transfer Agent and Registrar

By
AUTHORIZED SIGNATURE

CORPORATE
NEVADA
GOPHER PROTOCOL INC.
July 22, 2009
SEAL

SECRETARY

PRESIDENT

B   69238

The following abbreviations, when used in the inscription of the face of this certificate, shall be construed as though they were written out in full according to applicable laws or regulations:

TEN COM — as tenants in common

TEN ENT — as tenants by the entireties

JT TEN — as joint tenants with right of survivorship and not as tenants in common

UNIF GIFT MIN ACT — _____ Custodian_____
(Cust)                            (Minor)
under Uniform Gifts to Minors Act

_____
(State)

Additional abbreviations may also be used though not in the above list.

*For Value Received,* _____ *hereby sells, assigns and transfers unto*

PLEASE INSERT SOCIAL SECURITY
OR OTHER IDENTIFYING NUMBER

(PLEASE PRINT OR TYPE NAME AND ADDRESS INCLUDING POSTAL ZIP CODE OF ASSIGNEE)

*Shares of the Capital Stock represented by this Certificate and hereby irrevocably constitutes and appoints*

*Attorney to transfer the said stock on the books of the within-named Corporation with full power of substitution in the premises.*

*Dated* _____

NOTICE   THE SIGNATURE(S) TO THIS ASSIGNMENT MUST CORRESPOND WITH THE NAME(S) AS WRITTEN UPON THE FACE OF THIS CERTIFICATE IN EVERY PARTICULAR WITHOUT ALTERATION OR ENLARGEMENT OR ANY CHANGE WHATSOEVER.

SIGNATURE(S) GUARANTEED

NOTICE   THE SIGNATURE(S) SHOULD BE GUARANTEED BY AN ELIGIBLE GUARANTOR INSTITUTION, (BANKS, STOCKBROKERS, SAVINGS AND LOAN ASSOCIATION AND CREDIT UNIONS) WITH MEMBERSHIP IN AN APPROVED SIGNATURE GUARANTEE MEDALLION PROGRAM PURSUANT TO S.E.C. RULE 17AD-15.

# RESTRICTED

308082083

## IRREVOCABLE STOCK POWER

**FOR VALUE RECEIVED,** the undersigned does (do) hereby sell, assign and transfer to

_____

_____

_____

| (SOCIAL SECURITY |
| (OR TAXPAYER IDENTIFYING NO.) |

### PLEASE COMPLETE THIS PORTION

_____ shares of the _____ stock of _____

represented by Certificate(s) No(s) _____ inclusive,

standing in the name of the undersigned on the books of said Company.

The undersigned does (do) hereby irrevocably institute and appoint _____

_____ attorney to transfer the said stock or bond(s), as the case may be, on

the books of said Company, with full power of substitution in the premises.

Dated _____08/08/16_____

_____         _____

GARY SHIRINYAN         _____

PRINTED NAME         PRINTED NAME

SIGNATURE GUARANTEED
MEDALLION GUARANTEED
ALPINE SECURITIES
CORPORATION

A 0 0 7 1 0 9 2

( 007 )
SECURITIES TRANSFER AGENTS MEDALLION PROGRAM

SIGNATURE GUARANTEED
MEDALLION GUARANTEED
ALPINE SECURITIES
CORPORATION

A 0 0 7 1 0 9 2

( 007 )
SECURITIES TRANSFER AGENTS MEDALLION PROGRAM

## LIMITED LIABILITY COMPANY CERTIFICATION

Name of Limited Liability Company: **GSS GROUP LLC**

State of Organization: _____

_____

Please specify one of the following:

_____ **MEMBER MANAGED LLC** This Company is member managed and has appointed a Designated Member whose

name is _____. All other members' names are set forth below.

_____   _____

_____   _____

OR

**BC** **MANAGER MANAGED LLC** This Company is manager managed and has appointed a Manager whose name is

**GARY SHIKINYAN.**

_____

1. The undersigned is either a Manager or all of the Members of the Limited Liability Company whose name(s) and state of organization are set forth above.
2. The undersigned represents that the undersigned is duly authorized and empowered to execute this certification on behalf of the company.
3. The undersigned acknowledges that for the purposes of this certification the following terms have the meaning specified:
   - "Account" means an account for the execution of transaction in securities and such other services provided from time to time.
   - "Company" means the limited liability company whose name and states of organization are set forth above.
   - "Designated Member" means the member of the Company designated herein which the members of the Company have duly authorized and empowered to deal with and on behalf of the account in accordance with the representations, warranties, and certification contained therein.
   - "Organizational Documents" means the Articles of Organization, the Operating Agreement, and any other documents memorializing the decisions of, or resolutions adopted by, the members of the company.
4. The undersigned represents, warrants, and certifies that:
   a. Any statement of purpose of the Company in any of the Organizational documents which purports to limit the activities of the Company does not restrict the authority of the Company to purchase, hold, sell, transfer assign or otherwise deal in securities of any kind.
   b. The Organization Documents authorize and empower the Manager or the Designated Member for the account of, and on behalf of, the Company without limit to:
      - Open and maintain an Account in the name of the Company and enter into and execute agreements; and, do all things which are necessary to open and maintain such account.
      - Direct the purchase, sale, or transfer of stocks, bonds, put and call options and other securities, to borrow money secured by assets in the account (margin), and to issue such other instructions as are necessary for the operation of the account.
      - Receive notices, demands, confirmations, statements of account and communications of any kind relating to the operation of, or assets in the account.
      - Direct that the securities be transferred to another account for, or transferred into, the name of the Company or any third party, including an account for, or in the name of, the Manager or Designated Member. In addition, to direct the funds and other assets be distributed on behalf of the Account to the Company or any third party, including any Manger or Designated Member, or an account for any of them.
   c. Nothing in the Organizational Documents limits the authority or power of the Manager or Designated Member to manage or exercise control over or on behalf of the Account or the assets thereof.
   d. A true and correct copy of the Articles of organization as presently filed with the Secretary of State or as otherwise required in the state of organization is attached hereto; or, has otherwise been provided.

IF MANAGER MANAGED, MANAGER MUST SIGN BELOW, OR IF MEMBER MANAGED, ALL MEMBERS MUST SIGN BELOW.

**05/18/16**
DATE

X_____
MANAGER OR DESIGNATED MEMBER SIGNATURE

X_____
MEMBER SIGNATURE (if Applicable)

X_____
MEMBER SIGNATURE (if Applicable)

X_____
MEMBER SIGNATURE (if Applicable)

X_____
MEMBER SIGNATURE (if Applicable)

SIGNATURE GUARANTEED
MEDALLION GUARANTEED
ALPINE SECURITIES
CORPORATION

AUTHORIZED SIGNATURE
( 007 )                    A 0071092
SECURITIES TRANSFER AGENTS MEDALLION PROGRAM

Created: 3/25/2013

# STOCK PURCHASE AGREEMENT

This Stock Purchase Agreement ("Agreement") is entered into as of July 21, 2016 by and between Trevor J. Merman Living Trust ("Seller") and GSS GROUP LLC ("Purchaser"). Purchaser and Seller may collectively be referred to as the "Parties."

WHEREAS, Seller is the record owner and holder of shares of the capital stock of Gopher Protocol (the "Company"), a California Corporation

WHEREAS, the Parties desire to enter into this Agreement pursuant to which Purchaser will purchase from Seller shares of capital stock of the Company.

NOW, THEREFORE, in consideration for the promises set forth in this Agreement, the Parties agree as follows:

1. PURCHASE AND SALE: Subject to the terms and conditions set forth in this Agreement, Purchaser hereby agrees to purchase from Seller, and Seller hereby agrees to sell, transfer and convey to the Purchaser *Cert 369 Sixty Two Hundred Thousand Five Hundred (62,500)* common shares of Gopher Protocol stock of the Company (the "Stock").

2. PURCHASE PRICE: The purchase price for each share of Stock shall be *Twenty cents (\$.20)* for an aggregate purchase price of *Twelve Thousand Five Hundred Dollars (\$12,500.00)* (the "Purchase Price"), to be paid to the Seller in cash at the closing.

3. CLOSING: The closing contemplated by this Agreement for the transfer of the Stock and the payment of the Purchase Prices shall take place TBD on June 29, 2016 at TBD (the "Closing"). The certificates representing the Stock shall be duly endorsed for transfer or accompanied by an appropriate stock transfer.

4. REPRESENTATIONS AND WARRANTIES OF SELLER: Seller hereby warrants and represents that:

    (a) Restrictions on Stock. The Seller is not a party to any agreements that create rights or obligations in the Stock relating to any third party including voting or stockholder agreements. The Seller is the lawful owner of the Stock, free and clear of any encumbrances, security interests or liens of any kind and has full power and authority to sell and transfer the Stock as contemplated in this Agreement.

    (b) Organization and Standing. To the Seller's knowledge, the Company is duly organized, validly existing and in good standing under the laws of the State of Nevada *[insert state of incorporation]* and has full power and authority to own

and operate its property and assets and to carry on its business as presently conducted.

5.  SEVERABILITY: If any part or parts of this Agreement shall be held unenforceable for any reason, the remainder of this Agreement shall continue in full force and effect. If any provision of this Agreement is deemed invalid or unenforceable by any court of competent jurisdiction, and if limiting such provision would make the provision valid, then such provision shall be deemed to be construed as so limited.

6.  BINDING EFFECT: The covenants and conditions contained in this Agreement shall apply to and bind the parties and the heirs, legal representatives, successors and permitted assigns of the Parties.

7.  BROKER'S FEES:  The Parties represent that there has been no act in connection with the transactions contemplated in this Agreement that would give rise to a valid claim against either party for a broker's fee, finder's fee or other similar payment.

8.  ENTIRE AGREEMENT: This Agreement constitutes the entire agreement between the Parties and supersedes any prior understanding or representation of any kind preceding the date of this Agreement. There are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Agreement. This Agreement may be modified in writing and must be signed by both the Seller and Purchaser.

9.  GOVERNING LAW: This Agreement shall be governed by and construed in accordance with the laws of the State of California.

10. NOTICE:  Any notice required or otherwise given pursuant to this Agreement shall be in writing and mailed certified return receipt requested, postage prepaid, or delivered by overnight delivery service:

    (a)  If to Purchaser:

    _____

    _____

    _____

    (b)  If to Seller:

    _____

    _____

    _____

11. WAIVER: The failure of either party to enforce any provisions of this Agreement shall not be deemed a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed the day and year first above written.

SELLER:

BUYER:                                              COMPANY:

By:                                                 By: GSS GROUP LLC.

Chase Online                                                07/05/16  3:30 PM

# CHASE

Search                         🔍

---

## Check 155

GSS GROUP LLC                                    155

DATE 06/25/16

PAY TO THE ORDER OF  TREVOR S. Living trust          $ 12.500⁰⁰

twelve thousand five hundred          DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO

⑆3222716 27⑆      830326836⑈0155

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE

ENDORSE HERE



# ALPINE SECURITIES
### Stock Brokerage & Investment Company

**Re: Removal of Restrictive Legend Pursuant to Rule 144(b)**

GOPHER PROTOCOL , INC.

| Issuer (the "Company") | | |
|---|---|---|
| **GSS GLOBAL LLC** | | 308082083 |
| **Full Name of Shareholder** | | **Account Number** |
| 187,500 | 401 | |
| **Total Shares** | **Certificate Number(s)** | |

To Whom It May Concern:

    This letter is submitted to you and the Company in connection with my request that the restrictive legend on the certificate(s) representing the above identified securities (the "Securities") be removed pursuant to rule 144 promulgated under the Securities Act of 1933 ("Rule 144"). In connection therewith, the undersigned represents and warrants to you and the Company as follows:

1.  The undersigned is not and has not been during the preceding three months, an "affiliate" of the Company as that term is defined in paragraph (a) (1) of Rule 144.

2.  The undersigned has fully paid for, beneficially owned, and held the shares of the Company for a period of

    ☑ Six Months (If Issuer is an SEC reporting company) or

    ☐ One Year In accordance with paragraph (d) of rule 144 as amended on 2/15/2008

3.  These certificates are not issued from a Shell / Blank Check Company as defined by the SEC.

The undersigned is familiar with Rule 144 promulgated under the Securities Act of 1933 and agrees that you and the Company may rely upon the above statements.

Sincerely,

_____          8/10/2016
**Signature of Shareholder**                    **Date**
  GSS GLOBAL LLC
**(Print Name)**


_____          _____
**Signature of Joint Shareholder (if applicable)**        **Date**

**(Print Name)**

39 Exchange Place | Salt Lake City, UT 84111
P (801) 355-5588 | F (801) 355-5742 | toll free (800) 274-5588 | www.alpine-securities.com
Member FINRA & SIPC

Revised 10/4/2013

# RULE 144 BROKER'S REPRESENTATION LETTER – NON-AFFILIATE

Dear ___ALPINE_____ :

We have been requested by ___GSS GLOBAL LLC_____ (the "Seller") to
sell up to __187,500___ shares of common stock (the "Securities") of
_____(GOPH)_____ (the "Company") pursuant to the provisions
of Rule 144 adopted under the Securities Act of 1933 (the "Act"). We were provided with
a representation letter from Seller stating that Seller is not an affiliate of the issuer and
was not an affiliate during the 90-day period prior to the sale. In order to obtain the
removal, of the legend and stop order relating to the Securities and to permit their sale,
we hereby represent, warrant and agree as follows:

1. Reporting Issuer/Non-Reporting Issuer (mark one box)

   [X] Reporting Issuer: The Company
   a) has been subject to such 1934 Exchange Act filing requirements for at
      least 90 days
   b) has not been at any time within the 12 month period preceding the
      date hereof, a shell issuer as described in Rule 144(i)(1), and
   c) for shares held for at least 6 months but less than 1 year, is in
      compliance with the current public information requirements of Rule
      144(c)

   OR

   [ ] Non-Reporting Issuer*: The Company
   a) is not subject to the reporting requirements of the 1934 Exchange Act,
   b) has either (i) never been a shell company as described in Rule
      144(i)(1), or, (ii) if it was ever a shell company, complied with Rule
      144(i)(2) for at least 12 months prior to becoming a non-reporting
      company and has not been a shell company at any time since its
      compliance with Rule 144(i)(2).

   *Shares of a non-reporting company must be held for a minimum of 1
   year.

Sincerely,

___ACAP FINANCIAL, INC._____          ___8/10/2016_____
(Broker/Dealer)                               Date

By: ___D.C.A_____

## LAW OFFICE OF TOD A. DITOMMASO
3020 Bridgeway, Suite 269
Sausalito, CA 94965
(310) 367-0918
todanthonyditommaso@earthlink.net

August 22, 2016

Casey Weseloh
**EMPIRE STOCK TRANSFER, INC.**
1859 Whitney Mesa Dr.
Henderson, NV 89014

David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
57 West 200 South Suite 202
Salt Lake City, UT 84101

> **Re: Gopher Protocol, Inc. (GOPH):**
> **Shareholder: GSS GROUP, LLC - Rule 144**
> **Number of Shares: 187,500**
> **Certificate Number: 401**

Dear Casey and David:

We have been requested by GSS Group, LLC, ("Holder"), to provide an opinion with respect to the transferability, under available exemptions provided by Rule 144 of the Securities Act of 1933, as amended ("Act"), of Certificate Number 401, representing 187,500 shares ("Shares") of Common Stock of Gopher Protocol, Inc. ("Issuer" or "Company"), a Nevada Corporation, f.k.a. Forex International Trading Corporation [an S.E.C. reporting company trading on the OTC Markets - OTC QB].

**Background:**

The Holder acquired the above referenced Shares as follows:

**Assignment of Series D Preferred Stock to Direct Communications, Inc.**

- On March 4, 2015, Issuer, entered into a Territorial License Agreement ("License Agreement") with Hermes Roll, LLC ("Hermes"). Pursuant to the License Agreement, Hermes licensed to the Issuer, certain intellectual property relating to Hermes' system and method for scheduling categorized deliverables based on a smartphone application and/or via the internet, in consideration of 100,000 shares of Series D Preferred Stock of the Issuer ("Preferred Shares") [Form 8-K, Filed March 12, 2015 for the Period Ending March 2, 2015].

Casey Weseloh
**EMPIRE STOCK TRANSFER, INC.**
David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
Re: Gopher Protocol, Inc. (GOPH):
Shareholder: GSS GROUP, LLC - Rule 144
Number of Shares: 187,500
Certificate Number: 401
August 22, 2016
Page 2

- The issuance of the Preferred Shares was made in reliance upon exemptions from registration pursuant to Section 4(2) under the Securities Act of 1933 and Rule 506 promulgated under Regulation D. Hermes is an accredited investor as defined in Rule 501 of Regulation D promulgated under the Securities Act of 1933.

- The Preferred Shares have a conversion price of $0.01 ("Conversion Price") and a stated value of $10.00 per share ("Stated Value"). Subject to the Issuer increasing its authorized shares of common stock to 500,000,000, each Preferred Share is convertible, at the option of the shareholder, into such number of shares of common stock of the Issuer as determined by dividing the Stated Value by the Conversion Price.

- The License Agreement authorized Hermes to assign its right and interest in the Series D Preferred Shares to various third parties.

- Hermes assigned 9,200 Preferred Shares to Direct Communications, Inc. ("Direct Communications") under the License Agreement.

**Direct Communications, Inc.'s Conversion of Series D Preferred Stock into Common Shares**

- On August 31, 2015, Direct Communications gave a notice of conversion to the Issuer stating its intention to convert 250 Series D Preferred Shares into 250,000 common shares, which were issued to Direct Communications on or around that date [Form 10-Q, Filed November 16, 2015 for the Period Ending September 30, 2015].

**Sale of Common Stock by Direct Communications, Inc., to Simon Merman Living Trust, Trevor Merman Living Trust, and James Merman Living Trust**

- On August 27, 2015, Direct Communications sold 62,500 shares to the Simon Merman Living Trust [Stock Purchase Agreement, dated August 27, 2015; Certificate Number 368, 62,500 shares, issued on August 31, 2015].

- On August 27, 2015, Direct Communications sold 62,500 shares to the Trevor Merman Living Trust [Stock Purchase Agreement, dated August 27, 2015; Certificate Number 369, 62,500 shares, issued on August 31, 2015].

Casey Weselob
**EMPIRE STOCK TRANSFER, INC.**
David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
Re: Gopher Protocol, Inc. (GOPH):
Shareholder: GSS GROUP, LLC - Rule 144
Number of Shares: 187,500
Certificate Number: 401
August 22, 2016
Page 3

- On August 27, 2015, Direct Communications sold 62,500 shares to the James Merman Living Trust [Stock Purchase Agreement, dated August 27, 2015; Certificate Number 370, 62,500 shares, issued on August 31, 2015].

## Sale of Common Stock by Simon Merman Living Trust, Trevor Merman Living Trust, and James Merman Living Trust to GSS Group, LLC

- With a Closing Date effective June 29, 2016, the Simon Merman Living Trust sold 62,500 shares to Holder [Stock Purchase Agreement, dated June 28, 2016; Check Number 154, dated June 27, 2016, in the amount of $12,500.00].

- With a Closing Date effective June 29, 2016, the James Merman Living Trust sold 62,500 shares to Holder [Stock Purchase Agreement, dated June 28, 2016; Check Number 153, dated June 28, 2016, in the amount of $12,500.00].

- With a Closing Date effective June 29, 2016, the Trevor Merman Living Trust sold 62,500 shares to Holder [Stock Purchase Agreement, dated July 21, 2016; Check Number 155, dated June 25, 2016, in the amount of $12,500.00].

- Certificate Number 401 was issued on July 20, 2016, to Holder, representing 187,500 shares. Certificate Numbers 368, 369, and 370 were then cancelled.

In our opinion and based on the information and rationale set forth below, an exemption from registration is available under Rule 144 of the Act with respect to the Shares and Certificate Number 401. The restrictive legend may be removed from Certificate Number 401.

**Pertinent Law and Application to the Facts:**

We have analyzed the facts and circumstances presented to us within the framework of the Act, including some of the scholarly treatises and articles authored addressing exemptions under the Act.

### Registration Requirements and Rule 144 Exemption:

Section 5 of the Act requires that any offer or sale of securities which involves the mails or a means of interstate commerce must be registered. Certain offerings may be exempt from the registration process by the nature of the security, nature of the transaction, or the amount of the

Casey Weseloh
**EMPIRE STOCK TRANSFER, INC.**
David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
Re: Gopher Protocol, Inc. (GOPH):
Shareholder: GSS GROUP, LLC - Rule 144.
Number of Shares: 187,500
Certificate Number: 401
August 22, 2016
Page 4

offering.

Section 4 of the Act provides several transactional exemptions to the registration requirements of Section 5, as do certain rules and regulations promulgated thereunder. Specifically, Section 4(a)(1) provides that "[t]he provisions of section 5 shall not apply to. . . (1) transactions by any person other than an issuer, underwriter or dealer."

Section 2(4) of the Act defines an "issuer" as including ". . . every person who issues or proposes to issue any security." An issuer is subject to the registration requirements of Section 5 of the Act whenever it makes an original distribution of securities to the public.

Section 2(12) of the Act defines a "dealer" to include "any person who engages either for all or part of his time, directly or indirectly, as agent, broker, or principal, in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person."

Based on the above definitions, the Holder is not an issuer nor a dealer under the Act.

"The term 'underwriter' is broadly defined in Section 2(11) of the . . . Act to mean any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates, or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking." An investor holding restricted securities may be considered underwriters if they act as a link in the chain of transactions through which securities are transferred to the public.

Rule 144 sets out objective standards under which an exemption to being classified as an underwriter is available to non-affiliates and provides a safe harbor for those claiming an exemption. Under Rule 144(b)(1) a seller who is not an affiliate and has not been an affiliate during the preceding 90 days, who complies with the holding period requirement of Rule 144 (i.e., six months for a reporting company and 12 months for a non-reporting company) will not be classified as an underwriter.

**Affiliate Status:**

Rule 144(a)(1) provides that "[a]n affiliate of an issuer is a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer." Furthermore, any person or entity who is an officer, director, or

Casey Weseloh
**EMPIRE STOCK TRANSFER, INC.**
David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
Re: Gopher Protocol, Inc. (GOPH):
Shareholder: GSS GROUP, LLC - Rule 144
Number of Shares: 187,500
Certificate Number: 401
August 22, 2016
Page 5

which owns more than ten percent of the issuer's shares is considered an affiliate.

We have determined that Hermes Roll, LLC, Direct Communications, Inc., Simon Merman Living Trust, James Merman Living Trust, Trevor Merman Living Trust, and the Holder, are not now, nor have ever been, an affiliate, officer, director, or control person of the Issuer, and are not a beneficial owner of more than 10% of any class of security of the Issuer. I am satisfied that none of these individuals and entities are an affiliate of the Issuer.

**Holding Period:**

In the case of an S.E.C. reporting corporation, Rule 144 authorizes a non-affiliate holder of restricted stock to resell such stock upon the expiration of a six-month holding period. The foundational principle underlying Rule 144's holding period is that securities acquired and held for six months were most likely purchased with investment intent and not with a "view toward distribution." The holding period commences on the date when the full purchase price or other consideration has been paid. In this case, the Holder is deemed to have acquired the Shares more than six months prior to the issuance of this Opinion Letter (See, Tacking).

**Tacking:**

As provided in Rule 144(d)(3)(ii) "the holding period for other securities from the same issuer can be tacked on to the holding period on the new exchanged shares only if the exchange consists of solely of other securities of the same issuer." To meet the time frame, a shareholder is entitled to "tack" onto the holding periods of prior owners, except affiliates. Tacking is also permitted for shares acquired: (a) in stock dividends, splits, and recapitalizations; (b) through conversions (if made without payment of any additional consideration); (c) through gifts; and (d) from trusts and estates.

The original securities, the Preferred Shares, were acquired by Direct Communications on March 4, 2015. The holding period of Direct Communications, Simon Merman Living Trust, James Merman Living Trust, and Trevor Merman Living Trust, may be tacked on to the holding period of the Holder. As such, we are of the opinion that the restrictive legend may be removed from Certificate Number 401.

**Shell Status:**

For purposes of Rule 144(i)(1)(i), a shell company is a company that has no or nominal

Casey Weseloh
**EMPIRE STOCK TRANSFER, INC.**
David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
Re: Gopher Protocol, Inc. (GOPH):
Shareholder: GSS GROUP, LLC - Rule 144
Number of Shares: 187,500
Certificate Number: 401
August 22, 2016
Page 6

operations and either: (i) no or nominal assets; (ii) assets consisting solely of cash and cash equivalents; or (iii) assets consisting of any amount of cash and cash equivalents and nominal other assets.

The Issuer was incorporated on July 22, 2009, and is a "Development-stage Company that is developing a real-time, heuristic based, mobile technology, per license agreement it holds. Upon development, the technology will consist of a smart microchip, mobile application software and supporting software that run on a server." The Issuer maintains a website: www.gopherprotocol.com, containing additional information concerning its business and its products.

Furthermore, we have reviewed the annual and quarterly reports filed by the Issuer and published in the OTC News Service at www.otcmarkets.com. It is our opinion that the requirements of Rule 144(i) have been satisfied. To the best of our knowledge and belief, the Issuer is not now and never has been a "shell company" within the meaning of "shell company" as defined by the staff of the Securities and Exchange Commission ("SEC") in SEC Release 33-8587.

**Records and Documents:**

My investigation has included review of everything I deemed necessary and appropriate under S.E.C. rules and regulations, including, but not limited to, the following records and documents provided by the Issuer and the Holder:

1.      Form 8-K, Filed March 12, 2015 for the Period Ending March 2, 2015;

2.      Form 10-Q, Filed November 16, 2015 for the Period Ending September 30, 2015;

3.      Stock Purchase Agreement, dated August 27, 2015;

4.      Certificate Number 368, 62,500 shares, issued on August 31, 2015;

5.      Stock Purchase Agreement, dated August 27, 2015;

6.      Certificate Number 369, 62,500 shares, issued on August 31, 2015;

7.      Stock Purchase Agreement, dated August 27, 2015;

Casey Weseloh
**EMPIRE STOCK TRANSFER, INC.**
David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
Re: Gopher Protocol, Inc. (GOPH):
Shareholder: GSS GROUP, LLC - Rule 144
Number of Shares: 187,500
Certificate Number: 401
August 22, 2016
Page 7

8.   Certificate Number 370, 62,500 shares, issued on August 31, 2015;

9.   Stock Purchase Agreement, dated June 28, 2016;

10.   Check Number 154, dated June 27, 2016, in the amount of $12,500.00;

11.   Stock Purchase Agreement, dated June 28, 2016;

12.   Check Number 153, dated June 28, 2016, in the amount of $12,500.00;

13.   Stock Purchase Agreement, dated July 21, 2016;

14.   Check Number 155, dated June 25, 2016, in the amount of $12,500.00;

15.   Certificate Number 401, 187,500 shares, issued on July 20, 2016;

16.   Shareholder Statement, dated July 27, 2016; and,

17.   Company Certification, dated July 27, 2016.

**Qualifications:**

The opinion expressed above is subject to the following qualifications and limitations:

• Nothing came to my attention during the course of my investigation that led me to conclude that any of the documents provided by the Company and the Holder were not genuine or authentic, were not complete, or that the facts set forth therein were not true. The opinions do not take into consideration any events that may occur subsequent to the date of this opinion letter. Any inaccuracy in the factual representations provided by the Company and/or Holder may affect the opinions and conclusions set forth in this opinion letter. This opinion letter may not be relied upon by any person or entity which has any knowledge of the facts or circumstances which are contrary to said representations, or which would alter the opinions and conclusions set forth above.

• We are of the opinion that the Company is current in its reporting requirements. The information provided by the Company (i) constitutes "adequate current public information" concerning the securities and the Company and "is available within the meaning of Rule 144(c)(2) under the Securities Act"; (ii) includes all of the information

Casey Weseloh
**EMPIRE STOCK TRANSFER, INC.**
David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
Re: Gopher Protocol, Inc. (GOPH):
Shareholder: GSS GROUP, LLC - Rule 144
Number of Shares: 187,500
Certificate Number: 401
August 22, 2016
Page 8

       that a broker-dealer would be required to obtain from the Company to publish a quotation
of the securities under Rule 15c2-11 under the Securities Exchange Act of 1934, as
amended; (iii) complies as to form with the OTC Markets Guidelines for Providing
Adequate Current Information, which are located on the internet at
www.otcmarkets.com; and (iv) has been posted in the OTC Markets News Service.

- Our opinions are expressly limited to the matters set forth above and we render no
opinion, whether by implication or otherwise, as to any other matters relating to the
Company or the Holder.

- We express no opinion concerning the past, present or future fair market value of the
Shares.

- The various statutory provisions, regulatory rules, and court decisions upon which the
above opinions are based are subject to change.

- Be advised that opinion letters from counsel are not binding upon the S.E.C., other
regulatory bodies or the courts.

- This opinion letter is only valid for ninety (90) days from the date of issuance.

- We are admitted to practice law in the State of California.  The opinions expressed above
are limited to the Federal laws of the United States of America.   We express no opinion
with respect to the laws of any other jurisdiction. No opinion is expressed herein with
respect to the qualification of the Shares under the securities or blue sky laws of any state
or any foreign jurisdiction.

- This opinion is solely for the use of the Holder, for the Company, and for the use of the
Transfer Agent and the Broker/Dealer.  This opinion may not be published, relied upon
or provided to any other person or entity without our prior written consent.

- No attorney/client relationship is intended, or created by, the rendering of this Opinion
Letter.  We are acting as independent special counsel for this single transaction only.

**Conclusion:**

       I am of the opinion that the Holder is not an issuer, underwriter or dealer, and meets the
"substantial burden" set forth by the S.E.C. on those who desire to rely on a sales exemption
under Rule 144, and may avail itself of the protection of the safe harbor under Rule 144.

Casey Weseloh
**EMPIRE STOCK TRANSFER, INC.**
David C. Adams, Jr.-MBA/MAT
Corporate Markets Consultant
**ACAP FINANCIAL, INC.**
Re: Gopher Protocol, Inc. (GOPH):
Shareholder: GSS GROUP, LLC - Rule 144
Number of Shares: 187,500
Certificate Number: 401
August 22, 2016
Page 9

Accordingly, I am further of the opinion that Certificate Number 401 representing 187,500 common shares is exempt from the registration requirements of the Act.

Very Truly Yours

Tod Anthony DiTommaso, Esq.

*Should be Fixed!*



## *REJECTED TRANSFER

The securities described herein are being rejected for the reason(s) indicated below.

| PRESENTED BY: | REGARDING: |
|---|---|
| Alpine Securities | Company Name: Gopher Protocol Inc |
| | Certificate No(s).: 401 |
| | Total Share Amount: 187,500 |

### MISSING ITEMS

**GENERAL**

- ☐ Transfer instructions
- ☐ Delivery Instructions
- ☐ Signatures of transferor(s)
- ☐ Shareholder address(es)
- ☐ Signature guarantee stamp
- ☐ Stock power for Cert _____ must be signature guaranteed
- ☐ Our $60 fee per each new certificate issued: _____
- ☐ Additional fee in the amount of $100.00 for legend removal per certificate
- ☐ Corporate resolution/List of Managers or Members dated within six months authorizing an individual to sign on behalf of entity

**RESTRICTED/LEGAL**

- ☐ Form 144
- ☐ Broker's letter
- ☐ Seller's representation letter – Must be completed
- ☐ Opinion letter required
- ☐ Prospectus delivery letter
- ☐ Letters of testamentary
- ☐ Affidavit of Loss
- ☐ Court certificate dated within sixty days naming an executor or heir
- ☐ Lost instrument bond in an open penalty amount, issued in three counterparts, naming Empire Stock Transfer Inc. and subject corporation as obligees

### INCOMPLETE PAPERWORK

- ☐ Corporate resolution must completely filled out
- ☐ Officer/manager/member signing the stock power must differ from the officer/manager/member signing the resolution, OR "sole officer/manager/member" must be indicated

- ☐ Instructions to issue are over / under the number of shares presented _____
- ☐ If entity is an LLC and is managed by members, all members must provide information and signatures. If entity is an LLC and is managed by managers, all managers must provide information and signatures

### OTHER

- ☐ Shares not eligible for legend removal at this time, but will become eligible on _____
- ☐ Returned at the request of the broker/shareholder
- ☐ Shares not eligible in Canada per the Company
- ☒ Other: Per the company, see attached & contact them directly with any questions.

- ☐ Empire Stock Transfer Inc. is not the agent for this security. The transfer agent is: _____
- ☐ Authorization from the Company to transfer restricted shares
- ☐ The prospectus is out of date. All 144 paperwork is needed for legend removal

/s/ _Khush Npl_
Signature

08/16/2016
Date

Empire Stock Transfer Inc. • 1859 Whitney Mesa Drive, Henderson, NV 89014 • (T) 702-818-5898 (F) 702-974-1444 • www.empirestock.com

# EXHIBIT 13

GoPH 122583433



NUMBER
402

COMMON STOCK

SHARES
***62,500***

COMMON STOCK
CUSIP 38268V108

SEE REVERSE FOR CERTAIN DEFINITIONS

GOPHER PROTOCOL INC.

Par Value $.00001
INCORPORATED UNDER THE LAWS OF THE STATE OF
NEVADA

THIS CERTIFIES THAT

***Amp Group Holdings Inc.***

is the Owner of *** Sixty-Two Thousand Five Hundred ***

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF
GOPHER PROTOCOL INC.

*transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.*

*Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.*

Dated: July 26, 2016

COUNTERSIGNED AND REGISTERED:
EMPIRE STOCK TRANSFER INC.
Transfer Agent and Registrar

By
AUTHORIZED SIGNATURE

CORPORATE
NEVADA
GOPHER PROTOCOL INC.
July 22, 2009
SEAL

SECRETARY

PRESIDENT

RESTRICTED

B   69244



NUMBER
417

COMMON STOCK

SHARES
***62,500***

COMMON STOCK
CUSIP 38268V108

# GOPHER PROTOCOL INC.

Par Value $.00001
INCORPORATED UNDER THE LAWS OF THE STATE OF
NEVADA

SEE REVERSE FOR CERTAIN DEFINITIONS

THIS CERTIFIES THAT

***Alpco***

is the Owner of *** Sixty-Two Thousand Five Hundred ***

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF

### GOPHER PROTOCOL INC.

*transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.*

*Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.*

Dated: September 1, 2016
COUNTERSIGNED AND REGISTERED:
EMPIRE STOCK TRANSFER INC.
Transfer Agent and Registrar
By

AUTHORIZED SIGNATURE

CORPORATE
NEVADA
GOPHER PROTOCOL INC.
July 22, 2009
SEAL

SECRETARY

PRESIDENT

B    6.93.19