Thomas J. Eastmond – State Bar No. 211591
Ryan S. Riddles – State Bar No. 298745
**GOE & FORSYTHE, LLP**
18101 Von Karman Avenue, Suite 1200
Irvine, CA 92612
teastmond@goeforlaw.com
rriddles@goeforlaw.com

Telephone:  (949) 798-2460
Facsimile:   (949) 955-9437

General Counsel for Galina Vaynter and Vadim Vaynter aka Avady Vaynter

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| REKO HOLDINGS, LLC,<br><br>                    Plaintiff,<br><br>  v.<br><br>AMP GROUP HOLDINGS, INC., a Delaware corporation; PAUL KOZLOV; GSS GROUP LLC, a California limited liability company; SAPA GROUP, LLC, a California limited liability company; GARY SHIRINYAN; IIEVGENIA SAPA aka EVGENIA SAPA aka LEVGENIA SAPA; VLADIMIR HANIN, HJK TRADE, INC., a California corporation; HOVIK KOSTANDYAN; CITIBANK, N.A.; JPMORGAN CHASE BANK, N.A.; WELLS FARGO BANK, N.A.; GALINA VAYNTER; VADIM VAYNTER aka AVADY VAYNTER; GV GLOBAL COMMUNICATIONS, INC. a California corporation; DIRECT COMMUNICATIONS, INC., a | Case No. 2:18-cv-07401-GW-FFM<br><br>[Assigned to the Hon. George H. Wu, Courtroom 9D]<br><br>**NOTICE OF MOTION AND MOTION TO SET ASIDE DEFAULT ENTERED AGAINST DEFENDANTS GALINA VAYNTER, VADIM VAYNTER AKA AVADY VAYNTER, AND DIRECT COMMUNICATIONS, INC.; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF GALINA VAYNTER, REGINA KATS, AND THOMAS J. EASTMOND IN SUPPORT THEREOF**<br><br>Hearing:<br>Date:          June 3, 2019<br>Time:          8:30 a.m.<br>Courtroom:   9D |

California corporation; REGINA
KATS; ARTHUR KATS; LEGACY
RESOURCES GROUP, INC., an
unknown business entity; YITZHAK
KLEYMAN, and DOES 1 – 100,
inclusive,

         Defendants.

**TO THE HONORABLE GEORGE H. WU, UNITED STATES DISTRICT COURT JUDGE, AND ALL PARTIES IN INTEREST:**

    Defendants Galina Vaynter and Vadim Vaynter aka Avady Vaynter ("the Vaynters") and Direct Communications, Inc. ("DCI") (collectively, "Movants") hereby file this Motion to Set Aside Default Entered Against Defendants Galina Vaynter, Vadim Vaynter aka Avady Vaynter, and Direct Communications, Inc., pursuant to Federal Rule of Civil Procedure ("FRCP") 55(c). This motion ("Motion") will be heard on June 3, 2019 at 8:30 a.m in Department 9D of this Court. The default and/or any default judgment entered subsequent to the filing of this Motion should be set aside pursuant to FRCP 55 for good cause shown.

    This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declarations of Galina Vaynter, Regina Kats, and Thomas J. Eastmond, the Request for Judicial Notice filed contemporaneously herewith, the pleadings and papers on file herein, and any additional evidence or argument the Court may consider.

Date:  May 3, 2019                    **GOE & FORSYTHE, LLP**


                    By:*/s/Thomas J. Eastmond*
                          Thomas J. Eastmond
                          Counsel for Defendants Galina
                          Vaynter, Vadim Vaynter, aka Avady
                          Vaynter, and Direct
                          Communications, Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

By this Motion, the Movants seek to set aside the defaults entered against them by Plaintiff Reko Holdings, LLC ("Plaintiff") on January 16, 2019.

This litigation is a multi-polar fight over ownership of the membership interests in Reko Holdings, Inc. ("Reko") and its primary assets, which consists of shares of another company, Gopher Protocol, Inc. ("Gopher").  Contrary to the allegations of the operative Corrected Second Amended Complaint herein ("SAC"), the Vaynters are the owners of 50% of the membership interests.  Robert Yaspan ("Yaspan"), who purports to be the sole manager of Reko (and is also acting as Reko's attorney herein), on behalf of an undisclosed principal, seized control of Reko and this litigation, and is using it to attempt to wrest away the Vaynters' valuable interest.

Largely as a result of Yaspan's maneuvering, the Vaynters have been unable, until now, to assemble the funds to defend themselves in this litigation.  They have now done so, and seek relief from default so this complex matter may be decided on the merits.

### II.   FACTUAL SUMMARY

The Vaynters, through a family trust, have a beneficial interest in 50% of the membership interests in Reko.  (Declaration of Galina Vaynter ("Vaynter Dec."), ¶2.)  The Vaynters are informed that another beneficial owner of some quantity of Reko membership interests is one Moshe Schnapp ("Mr. Schnapp"), who also serves as a "consultant to Reko."  (Vaynter Dec., ¶3; Declaration of Regina Kats ("Kats Dec.", ¶3.)  As set forth above, Reko's primary assets were (and are) shares of Gopher.  Gopher is a publicly traded corporation, engaged in the business of developing real-time, heuristic based mobile technology.  Gopher's shares trade in the "over-the-counter" market.  In some instances, Gopher issues physical stock certificates to owners of stock in the company.  Each of the stock certificates issued

by Gopher is identified by a unique number.  (Vaynter Dec., ¶4; Kats Dec., ¶4.)

The Vaynters' daughter, Regina Kats ("Regina") was Reko's original Manager of Reko.  (Kats Dec., ¶2.)  In January 2017, Regina authorized Reko to file a lawsuit in Los Angeles County Superior Court against Hovik Kostandyan, Paul Kozlov, Gary Shirinyan, certain corporate entities associated with those individuals (collectively, the "Converting Defendants"), Citibank, N.A. ("Citibank") and Empire Stock Transfer, Inc. ("Empire").  The gravamen of this complaint (the "Original Complaint") was that the Converting Defendants had wrongfully converted certain stock certificates belonging to Reko and DCI,[1] and then (with Empire's and Citibank's assistance, through those entities' negligence) transferred the Gopher stock represented by those shares to third parties.  (Kats Dec., ¶¶5-6.)

This litigation (the "Superior Court Litigation") was originally taken on a contingency basis by Michael Hurey of the firm of Kleinberg & Lerner LLP ("K&L").  In January of 2018, Mr. Schnapp expressed dissatisfaction to Regina with K&L's handling of the case.  He proposed that his attorney, Yaspan, take over the case.  He represented to Regina that in order for this to occur, it would be necessary for Regina to resign as Reko's Manager, and have Yaspan take that position in her place.  Mr. Schnapp assured Regina that Yaspan would negotiate a "payment plan" with K&L and a forensic accountant retained in connection with the Superior Court Litigation, Barbara Luna.  Regina agreed, in large part due to the stress caused by arguments between Mr. Schnapp and Mr. Hurey over the conduct of the Superior Court Litigation.  (Kats Dec., ¶7.)

Once Yaspan became Manager of Reko, he took over as Reko's attorney as well, and filed the Second Amended Complaint.  The Vaynters were shocked to discover that Yaspan had named them, DCI, and Regina (as well as others) as new

---

[1] Prior to the commencement of the Superior Court Action, DCI assigned to Reko its right to recover for the claims alleged in the Original Complaint based on the conversion of DCI's Gopher shares.  The Vaynters are the owners of the stock of DCI.

1    defendants, along with the original Converter Defendants.  (Vaynter Dec., ¶8.)

2         The Vaynters had invested most of their disposable wealth into Reko.  As a

3    result of the above events, they are unable to access the value of the Gopher shares

4    held by DCI.  The Vaynters are informed that, meanwhile, Yaspan has sold

5    significant amounts of Gopher stock, giving them all the funds they need to finance

6    this litigation.  Being without resources, the Vaynters are now living in a small two

7    bedroom house with relatives.  (Vaynter Dec., ¶9.)

8         In late April, 2019, after striving since roughly December, 2018 to find

9    counsel to represent them and assemble the funds for an initial retainer, the Vaynters

10   retained their current counsel.  Counsel promptly began preparing this Motion,

11   completing it as expeditiously as possible in light of multiple contemporaneous

12   "hard deadlines" in his existing caseload.  (Vaynter Dec., ¶9; Declaration of Thomas

13   J. Eastmond ("Eastmond Dec."), ¶¶2-3, 5.)

14   **III.   ARGUMENT**

15        **A.     The Courts Have Broad Discretion in Setting Aside a Default.**

16        Federal Rules of Civil Procedure ("FRCP") Rule 55(c) provides as following

17   in regard to setting aside a default or default judgment:

18             "The court may set aside an entry of default for good
               cause, and it may set aside a default judgment under Rule
19             60(b)."

20        Courts have broader discretion and greater procedural flexibility in

21   evaluating relief from entry of default alone (e.g., a lesser quantum of proof may

22   suffice).  (See *Brady v. United States* (9th Cir. 2000) 211 F3d 499, 504 [court's

23   discretion is 'especially broad' when it is entry of default that is being set aside,

24   rather than a default judgment].)  When default judgment has not been entered, the

25   Court analyzes a motion to set aside entry of default under the "good cause"

26   standard of Rule 55(c) rather than the standard applied to setting aside a default

27   judgment under Rule 60(b). (See *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.

28   2d 508, 513 (9th Cir. 1986) [noting a court considering a motion to set aside entry of

1    default is free from the restraints of Fed.R.Civ.P. 60(b)].)  The underlying concern is

2    to determine whether there is some possibility that the outcome of the action after a

3    full trial will be contrary to the result achieved by the default. (*Hawaii Carpenters*,

4    supra, 794 F.2d at 513.)

5          The principal factors to be considered in determining whether good cause has

6    been shown are whether:

7          (1)    the default was willful;

8          (2)    the plaintiff would be prejudiced if the default were to be set aside;

9          (3)    defendant has a meritorious defense to plaintiff's claim; and

10         (4)    the defaulting party acted promptly in seeking to set aside the default.

11   (*Mendoza v. Wright Vineyard Management*, 783 F.2d 941, 945-46 (9th Cir.

12   1986) (internal quotations and brackets omitted).)

13         Although a defendant seeking relief from mere entry of default need only

14   show "good cause" (FRCP 55(c)), the same factors that apply under FRCP 60(b)(1)

15   to a defendant seeking to set aside a default judgment (i.e., a showing of "mistake,

16   inadvertence, surprise, or excusable neglect") are generally considered in

17   determining "good cause" under Rule 55(c).  (*Chrysler Credit Corp. v. Macino*, 710

18   F.2d 363, 368.)  The terms "surprise, inadvertence or excusable neglect" all boil

19   down to excusable neglect (i.e., has the moving party shown a reasonable excuse for

20   the default).  (*Meadows v. Dominican Republic*, 817 F.2d 517, 520 (9th Cir. 1987).)

21         What constitutes "exclusable" neglect is basically an equitable determination.

22   As noted by the United States Supreme Court in an analogous context:

23         "Because Congress provided no other guideposts for determining what sorts

24   of neglect will be considered 'excusable'…the determination is at bottom an

25   equitable one, taking account of all relevant circumstances surrounding the

26   omission.  These include…

27         -    The danger of prejudice to the debtor;

28         -    The length of the delay and its potential impact on judicial proceedings,

- The reason for the delay, including whether it was within the reasonable control of the movant, and

- Whether the movant acted in good faith."

(*Pioneer Investment Services Co. v. Brunswick Ltd. Partnership*, 507 U.S. 380, 395 (1993).)

However, these considerations must be applied against the backdrop of the strong policy in favor of adjudication of cases on the merits, applicable as well to bankruptcy cases." (*Mendoza v. Wright Vineyard Management,* supra, 783 F.2d 941, 945-46.) Indeed, "[w]here timely relief is sought from a default… and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the default so that cases may be decided on their merits." (*Id.*) As set forth below, Movants satisfy all of the factors.

1.    Willfulness/Culpability

"Here, the default was willful in the sense that it was not the result of a mistake; that willfulness was occasioned, however, only by the economic inability to retain counsel." (*DSPA.NL B.V. v. ARA Safety Inc.*, 2012 U.S. Dist. LEXIS 119057 at *3-4 (S.D.N.Y. Aug. 21, 2012).) A defendant's inability to retain counsel either due to lack of funds or conflicts of interest, despite reasonable attempts, should be considered in determining whether entry of default should be set aside. (*Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001).)

A defendant's conduct is culpable when he has "no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." (*TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 698 (9th Cir. 2001), overruled in part on other grounds by *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001).) A defendant may be found culpable if it has "received actual or constructive notice of the filing of the action and intentionally failed to answer." (*Id.* at 697 (emphasis in the original).) The term "intentionally" does not mean a court can treat a defendant as culpable "simply for having made a conscious choice not to answer; rather, to

treat a failure to answer as culpable, the movant must have acted with bad faith, such  as an intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process." (*United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1092 (9th Cir. 2010) ("*Mesle*").) "Neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process is not 'intentional.'" (*TCI Grp*., supra, 244 F.3d at 697-98. Such conduct is not necessarily culpable or inexcusable, although it may be "once the equitable factors are considered." (*Id*.)

Here, the Vaynters (due to Yaspan's sudden, well-coordinated attack, which simultaneously surprised them with the SAC and deprived them of the financial wherewithal to defend against it) were unable to retain counsel to appear and defend this case due to lack of funds.  Counsel typically required at least a $5,000 retainer even to appear and file an answer, which the Vaynters did not have.  It was only in late April that they finally were able to assemble funds to retain their present counsel.

2.     Prejudice

A plaintiff will only be "prejudiced," for purposes of FRCP 55, if its ability to pursue the claim has been hindered since the entry of the default judgment by loss of evidence or otherwise. *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984); *TCI Grp., supra*, 244 F.3d at 696-97.) For a delay to be prejudicial, it must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion rather than simply delaying the resolution of the case. (*TCI Grp*., supra, 244 F.3d at 701 (quoting *Falk*, 739 F.2d at 463). Being forced to litigate on the merits cannot be considered prejudicial because the plaintiff would have had to litigate the merits of the case had there been no default. (*Id*.)

Here, the only real result of relief from default will be that Plaintiff will have

1   to litigate this action to a resolution on the merits.  That does not constitute
2   "prejudice" under Rule 55.

3              3.       Meritorious Defense

4          The burden on a defaulted defendant to show that it has a meritorious defense
5   "is not extraordinarily heavy." (TCI Grp., supra, 244 F.3d at 700.) To justify
6   vacating a default a party must present the court with specific facts constituting a
7   defense. (*Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d
8   922, 926 (9th Cir. 2004) (citing *Madsen v. Bumb*, 419 F.2d 4, 6 (9th Cir. 1969)). A
9   "general denial without facts to support it" is insufficient to justify vacating a
10  default. (*Id*.) A defendant must "allege sufficient facts that, if true, would constitute
11  a defense." (*Mesle*, supra, 615 F.3d at 1094.) Whether factual allegations are true
12  "would be the subject of the later litigation" and "is not to be determined by the
13  court when it decides the motion to set aside the default." (*Id*.)

14         Often, a party seeking relief from default will attach a copy of his or her
15  proposed answer to the motion seeking that relief.  In this case, counsel for Movants
16  discovered, immediately after being retained, that a hearing on a motion for default
17  judgment was on the Court's calendar for May 6.  While preparing this Motion,
18  counsel saw the Court's minute order indicating that the matter was deemed
19  appropriate for resolution on the papers, without oral argument.  In counsel's
20  experience, this typically indicates that a grant of the motion is imminent.  Since a
21  different and more lenient legal standard may apply when relief is sought from entry
22  of default versus entry of a default judgment, counsel determined that time was of
23  the essence, foreclosing the reasonable possibility of an immediate answer to the
24  fact-intensive SAC. (Eastmond Dec., ¶4.)

25         Movants' "meritorious defense" is the allegations of the Original Complaint,
26  which accurately describes the conversion of Reko's and DCI's stock by the
27  Converter Defendants.  The allegations of the SAC are similar, except that it is
28  alleged (with sometimes contradictory allegations) that Movants conspired with the

Converter Defendants to facilitate the Converter Defendants' conversion of Reko Holdings' stock. Those allegations are false. The true facts are as related in the Original Complaint, which was prepared based on the input of the Vaynters. The Vaynters did not "aid and abet" the Converter Defendants (see, e.g., the SAC, p. 12, lines 26-27.) They did not convert or steal any of Reko's assets, nor cause Reko to sell to any of the Converter Defendants any "Gopher stock belonging to REKO at prices absurdly low" nor "engage in various stock market manipulation schemes using Reko's assets for capital" (see, e.g., the SAC, p. 14, lines 12-19).[2] (Vaynter Dec., ¶¶5-6; Kats Dec., ¶¶5-6, 8; Declaration of Judicial Notice, item no. 1.)

The facts as they are alleged in the Original Complaint, if proven true to the contradiction of the contrary facts in the SAC, would constitute a complete defense for Movants. Accordingly, Movants have a meritorious defense warranting relief from entry of default.

## IV. CONCLUSION

Based on the above, Movants respectfully request that the Motion be granted and the default entered as to the Vaynters and DCI be set aside.

Date: May 3, 2019            **GOE & FORSYTHE, LLP**

By:*/s/Thomas J. Eastmond*
    Thomas J. Eastmond
    Counsel for Defendants Galina Vaynter,
    Vadim Vaynter, aka Avady Vaynter, and
    Direct Communications, Inc.

---

[2] Plaintiffs' allegations in the Complaint contradict themselves. For example, having alleged (above) that the Vaynters "converted and stole" Reko's assets, they then allege that it was the Converter Defendants who transferred Reko's stock to themselves, forging Regina's signature on transfer documents. (SAC, p. 15, lines 22-27.)

## DECLARATION OF GALINA VAYNTER

I, Galina Vaynter, declare:

1.      I am a party in this proceeding.  I make this Declaration in support of the attached Motion to Set Aside Default as to myself, Vadim Vaynter aka Avady Vaynter ("Vadim") and Direct Communications, Inc. ("Movants"). I have personal knowledge of the facts stated herein (except as to matters stated on information and belief, or where references are to pleadings or papers filed in this adversary proceeding by my office), and if called to testify I could and would testify thereto.

2.       Along with my husband, Vadim, I have, through a family trust, a beneficial interest in 50% of the membership interests in Reko Holdings, LLC ("Reko").

3.      I am informed that another beneficial owner of some quantity of Reko membership interests is one Moshe Schnapp ("Mr. Schnapp"), who also serves as a "consultant" to Reko.

4.      Reko's primary assets were (and are) shares of Gopher Protocol, Inc. Gopher is a publicly traded corporation, engaged in the business of developing real-time, heuristic based mobile technology.  Gopher's shares trade in the "over-the-counter" market.  In some instances, Gopher issues physical stock certificates to owners of stock in the company.  Each of the stock certificates issued by Gopher is identified by a unique number.

5.      In January 2017, my daughter Regina Kats, who at the time was Manager of Reko authorized Reko to file a lawsuit in Los Angeles County Superior Court against Hovik Kostandyan, Paul Kozlov, Gary Shirinyan, certain corporate entities associated with those individuals (collectively, the "Converting Defendants"), Citibank, N.A. ("Citibank") and Empire Stock Transfer, Inc. ("Empire").  The gravamen of this complaint (the "Original Complaint") was that the Converting Defendants had wrongfully converted certain stock certificates belonging to Reko and DCI, and then (with Empire's and Citibank's assistance,

1    through those entities' negligence) transferred the Gopher stock represented by
2    those shares to third parties.  I assisted Reko's then attorney, Michael Hurey of the
3    firm of Kleinberg & Lerner LLP ("K&L"), in preparing the factual allegations of the
4    Original Complaint.  I am informed and believe that the allegations in the Original
5    Complaint accurately describe the events set forth therein.

6        6.      In particular, I declare based on personal knowledge that the allegations
7    in the Corrected Second Amended Complaint ("SAC") filed by Reko (now captured
8    by Robert M. Yaspan ("Yaspan") and utilized for his and his principals' purposes)
9    that I and Vadim conspired with the Converter Defendants to facilitate the Converter
10   Defendants' conversion of Reko Holdings' stock, are false.  We did not "aid and
11   abet" the Converter Defendants (see, e.g., the SAC, p. 12, lines 26-27.)   Nor did we
12   not convert or steal any of Reko's assets, nor cause Reko to sell to any of the
13   Converter Defendants any "Gopher stock belonging to REKO at prices absurdly
14   low" nor "engage in various stock market manipulation schemes using Reko's assets
15   for capital," nor commit any of the other misconduct alleged in the SAC.  We are
16   informed and believe that Regina's account of the theft of the Reko stock
17   certificates is true.

18       7.      Vadim and I had invested most of our disposable wealth into Reko.  As
19   a result of the above events, we are unable to access the value of the Gopher shares
20   held by DCI.  We are informed that, meanwhile, Yaspan has sold significant
21   amounts of Gopher stock, giving them all the funds they need to finance this
22   litigation.  Being without resources, we are now having to live with in a small two
23   bedroom house with relatives.

24       8.      Once Yaspan became Manager of Reko, he took over as Reko's
25   attorney as well, and filed the SAC.  We were shocked to discover that Yaspan had
26   named us and Regina (as well as others) as new defendants, along with the original
27   Converter Defendants.

28

9.      Due to Yaspan's sudden, well-coordinated attack, which simultaneously surprised us with the SAC and deprived them of the financial wherewithal to defend against it, we were initially unable to retain counsel to appear and defend this case due to lack of funds.  Counsel typically required at least a $5,000 retainer even to appear and file an answer, which we did not have.  It was only in late April that we finally were able to assemble funds to retain our present counsel.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 3rd day of May, 2019 at Woodland Hills , California.

By: _____
Galina Vaynter

15

**DECLARATION OF REGINA KATS**

I, Regina Kats, declare:

1.       I am a party in this proceeding.  I make this Declaration in support of the attached Motion to Set Aside Default as to Galina Vaynter, Vadim Vaynter aka Avady Vaynter ("Vadim") and Direct Communications, Inc. ("Movants"). I have personal knowledge of the facts stated herein (except as to matters stated on information and belief, or where references are to pleadings or papers filed in this adversary proceeding by my office), and if called to testify I could and would testify thereto.

2.       From the formation of Reko Holdings, LLC ("Reko") until January, 2018, I served as the Manager of Reko.

3.       I am informed that another beneficial owner of some quantity of Reko membership interests is one Moshe Schnapp ("Mr. Schnapp").

4.       Reko's primary assets were (and are) shares of Gopher Protocol, Inc. Gopher is a publicly traded corporation, engaged in the business of developing real-time, heuristic based mobile technology.  Gopher's shares trade in the "over-the-counter" market.  In some instances, Gopher issues physical stock certificates to owners of stock in the company.  Each of the stock certificates issued by Gopher is identified by a unique number.

5.       On or about September 26, 2016, I discovered that certain stock certificates for Gopher stock owned by Reko and DCI had been stolen.  I reported the theft of the certificates to the Los Angeles Police Department ("LAPD") on or about that same date.  A true copy of the police report and an affidavit made by me are attached to the Original Complaint (as defined below) as Exhibit 8.  However, I did not inform the LAPD that the location of the theft was Los Angeles Valley College, as reflected in the LAPD police report.  I believe that notation was added as a result of a clerical, transcription, or other error by the LAPD.

6.      In January 2017, I authorized Reko to file a lawsuit in Los Angeles County Superior Court against Hovik Kostandyan, Paul Kozlov, Gary Shirinyan, certain corporate entities associated with those individuals (collectively, the "Converting Defendants"), Citibank, N.A. ("Citibank") and Empire Stock Transfer, Inc. ("Empire").  The gravamen of this complaint (the "Original Complaint") was that the Converting Defendants had wrongfully converted certain stock certificates belonging to Reko and DCI, and then (with Empire's and Citibank's assistance, through those entities' negligence) transferred the Gopher stock represented by those shares to third parties.  I assisted Reko's then attorney, Michael Hurey of the firm of Kleinberg & Lerner LLP ("K&L"), in preparing the factual allegations of the Original Complaint.

7.      In January of 2018, Mr. Schnapp expressed dissatisfaction to me with K&L's handling of the case.  He proposed that his attorney, Yaspan, take over the case.  He represented to me that in order for this to occur, it would be necessary for Regina to resign as Reko's Manager, and have Yaspan take that position in her place.  I believed this statement at the time (being generally unfamiliar with this aspect of corporate law), but now understand it to have been false.  Mr. Schnapp assured me that Yaspan would negotiate a "payment plan" with K&L and a forensic accountant retained in connection with the Superior Court Litigation, Barbara Luna. I agreed, in large part due to the stress caused by arguments between Mr. Schnapp and Mr. Hurey over the conduct of the Superior Court Litigation.

8.      I declare based on personal knowledge that the allegations in the Corrected Second Amended Complaint ("SAC") filed by Reko (now captured by Robert M. Yaspan ("Yaspan") and utilized for his and his principals' purposes) that I and my parents Galina Vaynter and Vadim Vaynter conspired with the Converter Defendants to facilitate the Converter Defendants' conversion of Reko Holdings' stock, are false.  We did not "aid and abet" the Converter Defendants (see, e.g., the SAC, p. 12, lines 26-27.)    Nor did we not convert or steal any of Reko's assets, nor

1 │ cause Reko to sell to any of the Converter Defendants any "Gopher stock belonging
2 │ to REKO at prices absurdly low" nor "engage in various stock market manipulation
3 │ schemes using Reko's assets for capital," nor commit any of the other misconduct
4 │ alleged in the SAC.
5 │    I declare under penalty of perjury under the laws of the United States of
6 │ America that the foregoing is true and correct.  Executed this 3rd day of May, 2019 at
7 │ Woodland Hills , California.
8 │                              By: _____
                                        Regina Kats
9 │
10 │
11 │
12 │
13 │
14 │
15 │
16 │
17 │
18 │
19 │
20 │
21 │
22 │
23 │
24 │
25 │

## DECLARATION OF THOMAS J. EASTMOND

I, Thomas J. Eastmond, declare:

1.    I am an attorney with the law firm of Goe & Forsythe LLP, counsel for Galina Vaynter, Vadim Vaynter, and Direct Communications, Inc. ("Movants"). I make this Declaration in support of the attached Motion to Set Aside Default as to Movants. I have personal knowledge of the facts stated herein (except as to matters stated on information and belief, or where references are to pleadings or papers filed in this adversary proceeding by my office), and if called to testify I could and would testify thereto.

2.    I was first approached by Movants in late February, 2019, concerning legal representation in this matter. Movants indicated that they had had conversations with other potential counsel, who were unable to represent them. Examining the papers from this case which Movants provided me, it was immediately apparent that this is potentially a complex case that will likely involve significant costs to defend. I explained this to Movants. They indicated that they would try to assemble funds for a reasonably adequate retainer.

3.    On or about April 19, 2019, Movants retained me to represent them in this matter.

4.    Often, when seeking relief from default of a client, I will attach a copy of a proposed answer to the motion seeking that relief. In this case, I discovered, immediately after being retained, that a hearing on a motion for default judgment was on the Court's calendar for May 6. While preparing this Motion, I then saw the Court's minute order indicating that the matter was deemed appropriate for resolution on the papers, without oral argument. In my experience, this typically indicates that a grant of the motion is imminent. Since a different and more lenient legal standard may apply when relief is sought from entry of default versus entry of a default judgment, I determined that time was of the essence, foreclosing the reasonable possibility of an immediate answer to the fact-intensive SAC. I am still

working with Movants to confirm which of the 204 separate allegations in the operative Corrected Second Amended Complaint should be admitted, denied, or otherwise.  In place of a proposed answer, the attached Declarations of Galina Vaynter and Regina Kats set forth the substantive basis for Movants' defense.

5. I prepared and filed this Motion as expeditiously as was possible.  At the time I was retained by Movants, I had multiple additional "hard deadlines" in my existing caseload, including (primarily) an opposition to a high-stakes motion for relief from stay in a bankruptcy case, a related motion to stay an adversary proceeding in the same case, a motion for leave to amend a complaint in another bankruptcy adversary case involving an eight-figure difference in potential liability, and a May 6, 2019 hearing on a motion to certify a civil rights matter for interlocutory appeal.  Under the circumstances, given the complexity of this case, I could not reasonably have completed this Motion any more expeditiously.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 3rd day of May, 2019 at Irvine, California.


By:/s/Thomas J. Eastmond
Thomas J. Eastmond

18

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 18101 Von Karman Avenue, Suite 1200, Irvine, CA 92612

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION TO SET ASIDE DEFAULT ENTERED AGAINST DEFENDANTS GALINA VAYNTER, VADIM VAYNTER AKA AVADY VAYNTER, AND DIRECT COMMUNICATIONS, INC.; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF GALINA VAYNTER, REGINA KATS, AND THOMAS J. EASTMOND IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) May 3, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2.    SERVED BY UNITED STATES MAIL**:
On (*date*) May 3, 2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows: Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**Counsel for Reko Holdings, LLC**
Robert M. Yaspan, Esq.
Debra R. Brand, Esq.
LAW OFFICES OF ROBERT M. YASPAN
21700 Oxnard Street, Suite 1750
Woodland Hills, CA 91367

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:
(state the method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) May 3, 2019, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows:  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

- The Honorable George H. Wu, USDC, 255 E. Temple Street, Los Angeles, CA 90012

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 3, 2019 | Susan C. Stein | /s/Susan C. Stein |
|---|---|---|
| Date | Printed Name | Signature |

# Mailing Information for a Case 2:18-cv-07401-GW-FFM Reko Holdings, LLC v. AMP Group Holdings, Inc.

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Tod V Beebe**
  tbeebe@bkolaw.com,mmason@bkolaw.com
- **David Allan Berkley**
  db@severson.com,vam@severson.com
- **Brad A Hakala**
  bhakala@hakala-law.com
- **Katherine L Handy**
  kate.handy@kyl.com,ana.nunez@kyl.com
- **Christopher D Higashi**
  chigashi@bkolaw.com,mmason@bkolaw.com
- **Gregory Lane Huber**
  glh@severson.com,ssc@severson.com,efiling@severson.com
- **Mark D Lonergan**
  mdl@severson.com,efiling@severson.com,bjp@severson.com
- **Ryan Nicholas Ostrowski**
  rostrowski@hakala-law.com
- **David D Piper**
  david.piper@kyl.com,karen.stone@kyl.com
- **Ronald R St John**
  rstjohn@bkolaw.com,lbarney@bkolaw.com
- **Marquis Ian Wraight**
  miw@severson.com,ssc@severson.com,efiling@severson.com
- **Robert M Yaspan**
  court@yaspanlaw.com,tmenachian@yaspanlaw.com