ROBERT M. YASPAN (SBN 51867)
JOSEPH G. McCARTY (SBN 151020)
DEBRA R. BRAND (SBN 162285)
LAW OFFICES OF ROBERT M. YASPAN
21700 Oxnard Street, Suite 1750
Woodland Hills, California 91367
Telephone: (818) 905-7711
Facsimile: (818) 501-7711

Attorneys for Plaintiff
REKO HOLDINGS, LLC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

REKO HOLDINGS, LLC,

        Plaintiff,

        v.

AMP GROUP HOLDINGS, INC., a Delaware corporation; PAUL KOZLOV; GSS GROUP LLC, a California limited liability company; SAPA GROUP, LLC, a California limited liability company; GARY SHIRINYAN; IIEVGENIA SAPA aka EVGENIA SAPA aka LEVGENIA SAPA; VLADIMIR HANIN, HJK TRADE, INC., a California corporation; HOVIK KOSTANDYAN; CITIBANK, N.A.; JPMORGAN CHASE BANK, N.A.; WELLS FARGO BANK, N.A.; GALINA VAYNTER; VADIM VAYNTER aka AVADY VAYNTER; GV GLOBAL COMMUNICATIONS, INC., a California corporation; DIRECT COMMUNICATIONS, INC., a California corporation; REGINA

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.: 2:18-cv-07401-GW-FFM

[Assigned to the Hon. George H. Wu, Courtroom 9D]

THIRD AMENDED COMPLAINT FOR:
1.  CONVERSION
2.  CONVERSION
3.  UNJUST ENRICHMENT
4.  VIOLATION OF CALIFORNIA PENAL CODE § 496
5.  NEGLIGENCE
6.  AIDING AND ABETTING CONSPIRACY
7.  NEGLIGENCE
8.  FRAUD
9.  BREACH OF CONTRACT
10. BREACH OF FIDUCIARY DUTY
11. CONSPIRACY
12. VIOLATION OF FEDERAL CIVIL RICO STATUTE
13. RICO CONSPIRACY
14. ACCOUNTING
15. FOR UNLAWFUL, FRAUDULENT & UNFAIR BUSINESS PRACTICES [CALIFORNIA BUSINESS &

1

| | | |
|---|---|---|
| 1 | KATS; ARTHUR KATS; LEGACY | )   PROFESSIONS CODE §§ 17200, ET |
| 2 | RESOURCES GROUP, INC., an | )   SEQ.]; |
| | unknown business entity; YITZHAK | )   16. DECLARATORY RELIEF |
| 3 | KLEYMAN, and DOES 1 - 100, | )   17. INJUNCTION |
| 4 | inclusive, | ) |
| | Defendants. | )   DEMAND FOR A JURY TRIAL |
| 5 | | ) |
| 6 | | ) |
| | | ) |
| 7 | | )   Judge:      Hon. George H. Wu |

Plaintiff Reko Holdings, LLC ("REKO", "Reko" or "Plaintiff") complains and alleges in this Second Amended Complaint ("SAC") as follows:

## THE PARTIES

1.      Plaintiff is a limited liability company formed and existing under the laws of the State of Nevada. The first manager of REKO was Defendant Regina Kats ("REGINA").  She was the sole manager from its inception through January 26, 2018 when she resigned pursuant to a written letter of resignation.

2.      Robert M. Yaspan ("RMY") then became the sole manager of REKO.  RMY is still the sole manager.  Since RMY's appointment he has, at the direction of the owner, instituted an investigation of REKO's business affairs. One of the results of that investigation is this SAC which is an amendment to the original allegations found in the original complaint and the First Amended Complaint ("FAC").

3.      Neither REGINA nor RMY are or were a member of REKO and have never held any beneficial, legal or equitable interest in and to the assets of REKO.

Nor has any defendant named in this action.

4.     Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned, Defendant Galina Vaynter ("GALINA") was and is an individual, residing in the County of Los Angeles, State of California.

5.     Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned, Defendant Vadim Vaynter aka Avady Vaynter ("VADIM") was and is an individual, residing in the County of Los Angeles, State of California.

6.     Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned, GALINA and VADIM have been married.  Together GALINA and VADIM will be referred to as the "VAYNTERS".

7.     Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned, Defendant REGINA was and is an individual, residing in the County of Los Angeles, State of California.

8.     Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned, Defendant, Arthur Kats ("ARTHUR") was and is an individual, residing in the County of Los Angeles, State of California.

9.     Plaintiff is informed and believes, and on that basis alleges, that REGINA was and is the daughter of VADIM and GALINA.

10.     Plaintiff is informed and believes, and on that basis alleges, that ARTHUR and REGINA are, and have been, married at all relevant times.

3

11.     Plaintiff is informed and believes, and on that basis alleges, non-party Gopher Protocol, Inc. ("Gopher") is a corporation formed under the laws of the State of Nevada.  Gopher's stock is publicly traded and certain evidences of ownership in Gopher (i.e., paper stock certificates) are the subject of many of the allegations in this SAC.  Each of such paper stock certificates issued by Gopher is identified by a unique number.

12.     Plaintiff is informed and believes, and on that basis alleges, Defendant Direct Communications Inc. ("DCI") was, and is, a corporation existing under the laws of the State of California and doing business in the County of Los Angeles.  Plaintiff is informed and believes, and on that basis alleges, that VADIM owns, and for all relevant time periods has owned, all of DCI.  However, all of the Gopher stock now or previously owned by DCI in the total original amount of approximately 9,200 Series D preferred shares (which were converted originally to 9,200,000 common shares (the "DCI Shares") are held in trust for REKO's benefit and DCI does not own any Gopher stock for its own account.

13.     Plaintiff is informed and believes, and on that basis alleges, Defendant GV Global Communications Inc. ("GV") was, and is, a suspended corporation existing under the laws of the State of California and doing business in the County of Los Angeles.  Plaintiff is informed and believes and thereupon alleges that the VAYNTERS directly or indirectly own or control GV.  VADIM is the agent for service of process for GV.

14.    Plaintiff is informed and believes, and on that basis alleges, that Defendant Legacy Resources Group, Inc. ("LEGACY") is an entity of unknown formation - formed and existing under an unknown jurisdiction, having a principal place of business at Los Angeles.  Plaintiff is informed and believes and thereupon alleges that the VAYNTERS directly or indirectly own or control LEGACY.

15.    Plaintiff is informed and believes, and on that basis alleges, that there exists, and at all times herein mentioned there existed, a unity of interest in ownership between defendants DCI and ARTHUR, the VAYNTERS and DOES 36-45 such that individuality and separateness between defendants DCI and ARTHUR, the VAYNTERS and DOES 36-45 has ceased, and that DCI is the alter ego of ARTHUR, the VAYNTERS and DOES 36-45 in that:

A.    DCI is, and at all times herein mentioned was, a mere shell and sham without capital, assets or stock.  DCI was conceived, intended and used by ARTHUR, the VAYNTERS and DOES 36-45 as a device to avoid individual liability and for the purpose of substituting a financially insolvent corporation in the place of ARTHUR, the VAYNTERS and DOES 36-45. DCI is, and at all times herein mentioned was, so inadequately capitalized that, compared with the business to be done by DCI, and the risks of loss attendant thereto, its capitalization was illusory.

B.    ARTHUR, the VAYNTERS and DOES 36-45 completely controlled, dominated, managed and operated DCI, the business of DCI was carried out

without the holding of directors' or shareholders' meetings, no records or minutes of any corporate proceeding were maintained, and ARTHUR, the VAYNTERS and DOES 36-45 entered into personal transactions with DCI.

C.      Adherence to the fiction of the separate existence of DCI as an entity distinct from ARTHUR, the VAYNTERS and DOES 36-45 would permit the abuse of the corporate privilege and would sanction fraud.

16.      Plaintiff is informed and believes, and on that basis alleges, that there exists, and at all times herein mentioned there existed, a unity of interest in ownership between defendants GV and LEGACY and the VAYNTERS and DOES 46-60 and such that individuality and separateness between defendants GV and LEGACY and the VAYNTERS and DOES 46-60 has ceased, and that GV and LEGACY are the alter egos of the VAYNTERS and DOES 46-60 in that:

A.      GV and LEGACY are, and at all times herein mentioned was, mere shells and a sham without capital, assets or stock.  GV and LEGACY were conceived, intended and used by the VAYNTERS and DOES 46-60 as a device to avoid individual liability and for the purpose of substituting a financially insolvent corporation in the place of the VAYNTERS and DOES 46-60.  GV and LEGACY are, and at all times herein mentioned were, so inadequately capitalized that, compared with the business to be done by GV and LEGACY, and the risks of loss attendant thereto, its capitalization was illusory.

B.      The VAYNTERS and DOES 46-60 completely controlled,

dominated, managed and operated GV and LEGACY, the business of GV and LEGACY were carried out without the holding of directors' or shareholders' meetings, no records or minutes of any corporate proceeding were maintained, and the VAYNTERS and DOES 46-60 entered into personal transactions with GV and LEGACY.

C.     Adherence to the fiction of the separate existence of GV and LEGACY as an entity distinct from the VAYNTERS and DOES 46-60 would permit the abuse of the corporate privilege and would sanction fraud.

17.     Plaintiff is informed and believes, and on that basis alleges, that Defendant Yitzhak Kleyman ("KLEYMAN") has been a resident of the State of Israel and has at all times herein relevant conducted business, issued checks, maintained bank accounts, and received monies and property in the City and County of Los Angeles.  Plaintiff is informed and believes and thereupon alleges that the VAYNTERS at all relevant times directly or indirectly own or control KLEYMAN's alleged interests in Gopher stock, if any, and in the bank accounts allegedly in KLEYMAN's name located in banks in Los Angeles. Plaintiff is informed and believes and thereupon alleges that the VAYNTERS may have forged KLEYMAN's name, without KLEYMAN's permission, on certain evidences of transfer by which the Plaintiff and DCI (which held certain assets in trust for Plaintiff) deprived REKO of its assets.  Plaintiff is informed and believes and thereupon alleges that KLEYMAN consented to certain of VAYNTERS'

illegal actions.

18.     Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned, Defendant Vladimir Hanin ("HANIN") was and is an individual, residing in the County of Los Angeles, State of California.

19.     Plaintiff is informed and believes, and on that basis alleges, Defendant HJK Trade, Inc. ("HJK") was, and is, a corporation existing under the laws of the State of California and doing business in the County of Los Angeles.

20.     Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned, Defendant Hovik Kostandyan ("HOVIK") was and is an individual, residing in the County of Los Angeles, State of California.  Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned, HOVIK is listed as a director of HJK.

21.     Plaintiff is informed and believes, and on that basis alleges, that there exists, and at all times herein mentioned there existed, a unity of interest in ownership between defendants HJK and HOVIK and DOES 1 through 10 such that individuality and separateness between defendants HJK and HOVIK and DOES 1 through 10 has ceased, and that HJK is the alter ego of HOVIK and DOES 1 through 10 in that:

A.     HJK is, and at all times herein mentioned was, a mere shell and sham without capital, assets or stock.  HJK was conceived, intended and used by HOVIK and DOES 1 through 10 as a device to avoid individual liability and for

8

the purpose of substituting a financially insolvent corporation in the place of HOVIK and DOES 1 through 10.  HJK is, and at all times herein mentioned was, so inadequately capitalized that, compared with the business to be done by HJK, and the risks of loss attendant thereto, its capitalization was illusory.

B.     HOVIK and DOES 1 through 10 completely controlled, dominated, managed and operated HJK, the business of HJK was carried out without the holding of directors' or shareholders' meetings, no records or minutes of any corporate proceeding were maintained, and HOVIK and DOES 1 through 10 entered into personal transactions with HJK.

C.     Adherence to the fiction of the separate existence of HJK as an entity distinct from HOVIK and DOES 1 through 10 would permit the abuse of the corporate privilege and would sanction fraud.

22.     Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned, Defendant Gary Shirinyan ("GARY") was and is an individual, residing in the County of Los Angeles, State of California.

23.     Plaintiff is informed and believes, and on that basis alleges, at all times herein mentioned, Defendant Iievgenia Sapa aka Evgenia Sapa aka Levgenia Sapa ("SAPA") was and is an individual, residing in the County of Los Angeles, State of California.

24.     Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned, GARY and SAPA have either been married, or have had

some other type of intimate personal relationship.

25.     Plaintiff is informed and believes, and on that basis alleges, Defendant GSS Group LLC ("GSS") was, and is, a limited liability company existing under the laws of the State of California and doing business in the County of Los Angeles.  Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned, GARY is listed as a manager of GSS.

26.     Plaintiff is informed and believes, and on that basis alleges, that there exists, and at all times herein mentioned there existed, a unity of interest in ownership between defendants GSS and GARY and DOES 11 through 20 such that individuality and separateness between defendants GSS and GARY and DOES 11 through 20 has ceased, and that GSS is the alter ego of GARY and DOES 11 through 20 in that:

A.     GSS is, and at all times herein mentioned was, a mere shell and sham without capital, assets or stock.  GSS was conceived, intended and used by GARY and DOES 11 through 20 as a device to avoid individual liability and for the purpose of substituting a financially insolvent corporation in the place of GARY and DOES 11 through 20.  GSS is, and at all times herein mentioned was, so inadequately capitalized that, compared with the business to be done by GSS, and the risks of loss attendant thereto, its capitalization was illusory.

B.     GARY and DOES 11 through 20 completely controlled, dominated, managed and operated GSS, the business of GSS was carried out without the

holding of directors' or shareholders' meetings, no records or minutes of any corporate proceeding were maintained, and GARY and DOES 11 through 20 entered into personal transactions with GSS.

C.     Adherence to the fiction of the separate existence of GSS as an entity distinct from GARY and DOES 11 through 20 would permit the abuse of the corporate privilege and would sanction fraud.

27.     Plaintiff is informed and believes, and on that basis alleges, Defendant SAPA GROUP LLC ("SG") was, and is, a limited liability company existing under the laws of the State of California and doing business in the County of Los Angeles. Plaintiff is informed and believes and thereupon alleges that at all relevant times SG was owned, directed and controlled by GARY and SAPA.

28.     Plaintiff is informed and believes, and on that basis alleges, that there exists, and at all times herein mentioned there existed, a unity of interest in ownership between defendants SG and GARY, SAPA and DOES 21 through 30 such that individuality and separateness between defendants SG and GARY, SAPA and DOES 21 through 30 has ceased, and that GSS is the alter ego of GARY, SAPA and DOES 21 through 30 in that:

A.     SG is, and at all times herein mentioned was, a mere shell and sham without capital, assets or stock.  SG was conceived, intended and used by GARY, SAPA and DOES 21 through 30 as a device to avoid individual liability and for the purpose of substituting a financially insolvent corporation in the place of

GARY, SAPA and DOES 21 through 30.  SG is, and at all times herein mentioned was, so inadequately capitalized that, compared with the business to be done by SG, and the risks of loss attendant thereto, its capitalization was illusory.

B.      GARY, SAPA and DOES 21 through 30 completely controlled, dominated, managed and operated SG, the business of SG was carried out without the holding of directors' or shareholders' meetings, no records or minutes of any corporate proceeding were maintained, and GARY, SAPA and DOES 21 through 30 entered into personal transactions with SG.

C.      Adherence to the fiction of the separate existence of SG as an entity distinct from GARY, SAPA and DOES 21 through 30 would permit the abuse of the corporate privilege and would sanction fraud.

29.     Plaintiff is informed and believes, and on that basis alleges, that Defendant AMP Group Holdings, Inc. ("AMP") was, and is, a corporation existing under the laws of the State of Delaware and doing business in the County of Los Angeles.

30.     Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned, Defendant Paul Kozlov ("KOZLOV") was and is an individual, residing in the County of Los Angeles, State of California.  Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned, KOZLOV is listed as a manager of AMP.

31.     Plaintiff is informed and believes, and on that basis alleges, that there

exists, and at all times herein mentioned there existed, a unity of interest in ownership between defendants AMP and KOZLOV and DOES 31 through 35 such that individuality and separateness between defendants AMP and KOZLOV and DOES 31 through 35 has ceased, and that AMP is the alter ego of KOZLOV and DOES 31 through 35 in that:

A.     AMP is, and at all times herein mentioned was, a mere shell and sham without capital, assets or stock.  AMP was conceived, intended and used by KOZLOV and DOES 31 through 30 as a device to avoid individual liability and for the purpose of substituting a financially insolvent corporation in the place of KOZLOV and DOES 31 through 35.  AMP is, and at all times herein mentioned was, so inadequately capitalized that, compared with the business to be done by SG, and the risks of loss attendant thereto, its capitalization was illusory.

B.     KOZLOV and DOES 31 through 35 completely controlled, dominated, managed and operated AMP, the business of AMP was carried out without the holding of directors' or shareholders' meetings, no records or minutes of any corporate proceeding were maintained, and KOZLOV and DOES 31 through 35 entered into personal transactions with AMP.

C.     Adherence to the fiction of the separate existence of AMP as an entity distinct from KOZLOV and DOES 31 through 35 would permit the abuse of the corporate privilege and would sanction fraud.

32.     Plaintiff is informed and believes, and on that basis alleges,

Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), is an interstate federally regulated banking institution, licensed to do business in the State of California with offices throughout the State of California, and in Los Angeles County.

33.     Plaintiff is informed and believes, and on that basis alleges, Defendant Citibank, N.A. ("Citibank"), is an interstate federally regulated banking institution, licensed to do business in the State of California with offices throughout the State of California, and in Los Angeles County.

34.     Plaintiff is informed and believes, and on that basis alleges, Defendant JPMorgan Chase Bank, N.A. ("Chase"), is an interstate federally regulated banking institution, licensed to do business in the State of California with offices throughout the State of California, and in Los Angeles County.

35.     Together Wells Fargo, Citibank, Chase and DOES 90-100 are referred to as the "BANKS".

36.     All of the defendants other than the BANKS and DOES 70-89 shall be referred to as the "TRANSFER DEFENDANTS".  Defendants GARY, HOVIK, HANIN, KOZLOV, SAPA, GSS, SG, AMP, HJK, and DOES 1 through 35 shall be collectively referred to as the "SHIRINYAN DEFENDANTS". VADIM, GALINA, REGINA, ARTHUR, KLEYMAN, GV, LEGACY, DCI and DOES 36-69 shall collectively be referred to as the "VAYNTER DEFENDANTS".

37.     Non-defendant Attorney Michael Hurey of Kleinberg and Lerner

14

("K&L") has been an attorney for REKO in the past (through approximately March 2018) and has represented DCI and KLEYMAN from 2017 onward.

38.     The true names and capacities of DOES 1 through 100, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names, and when the true names and capacities of such Defendants are ascertained, Complainant will ask leave of Court to amend this Complaint to insert the same.

39.     Plaintiff is informed and believes, and thereon alleges, that each of the Defendants including the Doe Defendants, are in some manner liable for the events and happenings herein alleged and that such manner legally caused the damages herein set forth.

## JURISDICTION AND VENUE

40.     The Court has subject matter jurisdiction over this action based on California Constitution Article 6, Section 10.

41.     The Court has personal jurisdiction over all of the Defendants referred to herein because all causes of action asserted herein arise out of conduct undertook by Defendants in Los Angeles County, State of California.

42.     Venue is proper in this Court under Code of Civil Procedure §§ 395 and 395.5 because the injury to Plaintiff occurred, and is occurring, in Los Angeles County, State of California, and the liabilities to which Defendants are subject arise in Los Angeles County, State of California.

# **FACTUAL BACKGROUND**

43.     This SAC is based upon and made necessary by information recently discovered that points to Plaintiff's prior manager, REGINA's breaches of fiduciary duty, misfeasance, malfeasance and nonfeasance.  Through her stewardship of REKO, as aided and abetted by the TRANSFER DEFENDANTS, the Plaintiff was the victim of thefts in excess of $25 million in value.

44.     In addition, and in order to cover up the alleged thefts by REGINA, the other VAYNTER DEFENDANTS, and the SHIRINYAN DEFENDANTS: (a) REGINA caused to be filed, or filed, a false police report with the Los Angeles Police Department; and (b) REKO filed its complaint and FAC and, in so doing, failed to provide complete and accurate facts regarding the matters before this Court.

45.     From REKO's perspective the original complaint served to cover up the true facts and served to benefit not REKO, but rather REGINA, the other VAYNTER DEFENDANTS, and the SHIRINYAN DEFENDANTS.

A.     **The Conspiracy**

46.     It was only after RMY was appointed as Manager of the Plaintiff that these matters first became known and such discoveries were not made with the help of either REGINA or original counsel K&L in this case.  Instead, REGINA has totally failed to cooperate with Plaintiff's present counsel and manager and to this date has failed to and refused to turn over REKO's documents, books or

records (together, "REKO DOCUMENTS") to the present manager.  In a meeting held as recently as June 26, 2018 with REGINA, and her mother, GALINA, the two women refused to turn over any REKO DOCUMENTS to the attorneys for REKO's manager, despite demand being made.  In addition, prior counsel, K&L, has refused to debrief itself to current counsel, or to the current manager.

47.     Notably, Plaintiff is informed and believes, and thereupon alleges, that K&L is now, and was always, in a conflict of interest in that it not only represented REKO but also DCI and KLEYMAN, alleged co-conspirators against REKO.  K&L then compounded the scheme by failing to perform any due diligence on REGINA and the VAYNTERS's story to see if the filing of the initial complaint benefitted REKO, or instead the VAYNTER DEFENDANTS.  Nor was any due diligence (based on the files actually received from K&L) undertaken by K&L to determine if the allegations contained in the first two complaints filed in this action comported with the true facts.   Their inaction and non-efforts have delayed the process by which REKO now brings the facts to light in this SAC.

48.     Notably, Plaintiff is informed and believes, and thereupon alleges, that REGINA as recently as July 12, 2018 demanded that REKO's current manager turn over its representation in this case to K&L despite said conflict of interest.

49.     Plaintiff is informed and believes and hereupon alleges that REGINA and the VAYNTERS formulated a plan and device to cover up and otherwise

conceal the facts from REKO and this Court that: (a) REGINA and the other VAYNTER DEFENDANTS had converted and stolen certain assets of REKO's of a value in excess of $25 million; (b) REGINA and the other VAYNTER DEFENDANTS caused REKO to allegedly sell to the SHIRINYAN DEFENDANTS Gopher stock belonging to REKO at prices absurdly low -- enough below the market price to have signaled to the SHIRINYAN DEFENDANTS that the property had been stolen; (c) REGINA and the VAYNTER DEFENDANTS and the SHIRINYAN DEFENDANTS were engaging in various stock market manipulation schemes using REKO's assets for capital; (d)  REGINA and the VAYNTER DEFENDANTS and the SHIRINYAN DEFENDANTS continued to do business together until on or about September 19, 2016 when various disputes between them reached a boiling point and, REKO is informed and believes and thereupon alleges, GARY threatened GALINA in writing; and (e) whereupon GALINA and REGINA almost immediately and on or about September 26, 2016 published an allegedly false story through a police report and otherwise that GARY had physically stolen the REKO stock certificates from REGINA and/or the VAYNTERS.

50.     In furtherance of its scheme REGINA and the VAYNTER DEFENDANTS among other things: (a) lied to the owner of REKO; (b) failed to file tax returns for REKO and issue K-1s to the member; (c) failed to keep any books of account for REKO; (d) failed to make any reports to the owner of

REKO; (e) together with the SHIRINYAN DEFENDANTS forged REKO's endorsement on checks made payable to REKO such that the ill-gotten gains garnered by the illicit sale of REKO's assets would be converted to their benefit; and (f) together with the SHIRINYAN DEFENDANTS, converted the proceeds of the illicit sales to their own continuing benefit.

51.     This action arises out of a complex, corrupt and sophisticated scheme and conspiracy to deprive REKO of its assets, including certain stock certificates owned by the Plaintiff that were subsequently improperly transferred away from REKO.   Each and every one of the Defendants participated in some manner in connection with the complex, corrupt and sophisticated scheme the end result of which REKO was deprived of its assets amounting in value to over $25 million, plus or minus, and subject to proof.

52.     The TRANSFER DEFENDANTS orchestrated the entirety of the complex, corrupt and sophisticated scheme and conspiracy to deprive REKO of its assets and to manipulate the stock and stock prices of Gopher.

53.     REGINA participated in and/or negligently and/or intentionally let her parents' conspiracy to defraud occur without question or demurrer thereby breaching her fiduciary duties.

54.     The TRANSFER DEFENDANTS orchestrated the forgeries and/or used forged documents to transfer REKO's Gopher stock and proceeds from the sales of the stock including by, without limitation, forging signatures, stealing and

manufacturing identities, falsifying documents and by forging REGINA's

signature on various documents relating to REKO or REKO's assets.

55.     The BANKS aided and abetted the scheme and applied the medallion

guarantees when they knew they should not have because they failed to follow the

accepted standards and practices of the industry and their own internal standards

and practices with regard to the medallion guarantees; and they accepted

wrongfully and incomplete indorsed checks for deposit, and/or were, at least,

willfully blind with regard to the wrongful actions of the TRANSFER

DEFENDANTS and other co-conspirators.  The BANKS also participated in the

scheme by accepting wrongfully indorsed checks and converting the proceeds of

the sales of stock.

56.     The TRANSFER DEFENDANTS received the proceeds and profits

of the conspiracy to deprive REKO of its assets.

**B.     The Transfers**

57.     At its inception in 2015, REKO owned 71,000 Series D preferred

shares of Gopher.  Said shares were convertible into 71 million common shares of

Gopher.  It was, and is, the largest single shareholder of Gopher.   Today REKO

owns in its own name but 66,000,000 shares, a 5,000,000-share difference (the

"STOLEN REKO SHARES").  REKO did not voluntarily sell or transfer any

shares but for the wrongful actions of REGINA and the VAYNTERS.

58.     The STOLEN REKO SHARES were allegedly and illegally disposed

of, or retained, by the VAYNTER DEFENDANTS during the managership of REGINA as described in this paragraph (dealing with 4,000,000 shares, and paragraph 59, dealing with 1,000,000 shares) as follows:

A.     By converting Gopher paper stock certificate number 364 in the amount of 4,000,000 shares to five new Gopher paper stock certificates as follows: (1) Gopher paper stock certificate 372 in the amount of 213,000 common shares; (2) Gopher paper stock certificate 373 in the amount of 213,000 common shares; (3) Gopher paper stock certificate 374 in the amount of 213,000 common shares; (4) Gopher paper stock certificate 375 in the amount of 213,000 common shares; and (5) Gopher paper stock certificate 376 in the amount of 3,148,000 common shares.

B.     By transferring without authorization 213,000 common shares of Gopher from REKO to defendant HANIN on or about July 23, 2016.  The former share certificate referencing said shares is number 372 (one of the REKO Certificates and in the name of REKO); the current share certificate number in the name of HANIN is 403.   This transfer occurred during the managership of REGINA.   No funds were ever received by REKO in connection with this alleged transfer.   Instead the VAYNTER DEFENDANTS and the SHIRINYAN DEFENDANTS fraudulently concealed the existence of the transfer and, Plaintiff is informed and believes and thereupon alleges, obtained and retained any alleged consideration received for the alleged transfer.   REGINA was also a part of the

conspiracy to deprive REKO of its assets and was willfully blind to the VAYNTERS' wrongful actions.  REGINA also failed to investigate or prosecute the transfer for the purpose of returning the assets and/or consideration to REKO. HANIN is one of the SHIRINYAN DEFENDANTS and presumably the transferred shares and the proceeds from any sales went to them as part of the conspiracy.

C.      By transferring without authorization 213,000 common shares of Gopher from REKO to defendant HJK on or about July 22, 2016.  The former share certificate referencing said shares is number 373 (one of the REKO Certificates and in the name of REKO); the current share certificate number in the name of HJK is 405.   This transfer occurred during the managership of REGINA. No funds were ever received by REKO in connection with this alleged transfer. Instead the VAYNTER DEFENDANTS and the SHIRINYAN DEFENDANTS fraudulently concealed the existence of the transfer and, Plaintiff is informed and believes and thereupon alleges, obtained and retained any alleged consideration received for the alleged transfer.   REGINA was also a part of the conspiracy to deprive REKO of its assets and was willfully blind to the VAYNTERS' wrongful actions.  REGINA also failed to investigate or prosecute the transfer for the purpose of returning the assets and/or consideration to REKO.   HJK is one of the SHIRINYAN DEFENDANTS and presumably the transferred shares and the proceeds from any sales went to them as part of the conspiracy.

D.      By transferring without authorization 213,000 common shares of Gopher from REKO to defendant AMP on or about June 28, 2016.  The former share certificate referencing said shares is number 375 (one of the REKO Certificates and in the name of REKO); the current share certificate number in the name of AMP is 404.   This transfer occurred during the managership of REGINA.  No funds were ever received by REKO in connection with this alleged transfer.   Instead the VAYNTER DEFENDANTS and the SHIRINYAN DEFENDANTS fraudulently concealed the existence of the transfer and, Plaintiff is informed and believes and thereupon alleges, obtained and retained any alleged consideration received for the alleged transfer.   REGINA was also a part of the conspiracy to deprive REKO of its assets and was willfully blind to the VAYNTERS' wrongful actions.  REGINA also failed to investigate or prosecute the transfer for the purpose of returning the assets and/or consideration to REKO.  AMP is one of the SHIRINYAN DEFENDANTS and presumably the transferred shares and the proceeds from any sales went to them as part of the conspiracy.

E.      By transforming Gopher paper stock certificate 374  into six different stock certificates as follows: (i) Gopher paper share certificate number 379 in the amount of 20,000 shares; (ii) Gopher paper share certificate number 380 in the amount of 20,000 shares; (iii) Gopher paper share certificate number 381 in the amount of 20,000 shares; (iv) Gopher paper share certificate 382 in the amount of 20,000 shares; (v)  Gopher paper share certificate 383 in the amount of 20,000

shares; and (vi) Gopher paper share certificate 382 in the amount of 113,000 shares.  The VAYNTER DEFENDANTS were delivered these shares by the transfer agent and it is unknown who holds today said paper stock certificates.

F.     By illegally retaining and detaining Gopher paper stock certificate 376.in the amount of 3,148,000 shares.

G.     REKO did not authorize the transfers and dispositions described herein and never received any consideration thereof.

59.     The remaining 1,000,000 shares of the STOLEN REKO SHARES was converted from 1,000 Series D Preferred shares to Gopher paper stock certificate 358 made out to SAPA on or about April 1, 2015 (during the managership of REGINA).  However, said Gopher paper stock certificate 358 was never delivered by the VAYNTER DEFENDANTS to SAPA or the other SHIRINYAN DEFENDANTS for a presently unknown reason.    REKO is informed and believes, and thereupon alleges, that the failure to deliver was related to either a failure to pay or simply that "thieves fell out".  REKO did not authorize the transfers and dispositions described herein and never received any consideration therefor.

60.     REGINA was a part of the conspiracy to deprive REKO of its assets and was willfully blind to the VAYNTERS' wrongful actions even though the VAYNTERS and the SHIRINYAN DEFENDANTS also stole REGINA's identity and forged her signatures as well.  REGINA also failed to investigate or prosecute

the transfer for the purpose of returning the assets and/or consideration to REKO.

61.     In addition, Plaintiff held equitable title to 9,200 shares of Gopher Series D preferred shares held in the legal name of DCI since approximately 2014. Said shares were convertible into 9,200,000 common shares of Gopher and said shares have been converted.  Of those 9,200,000 shares 3,000,000 shares (the "REQUESTED 2018 TRANSFER") were transferred out of DCI at REKO's request and those shares (Gopher paper stock certificate 456) that were a part of the REQUESTED 2018 TRANSFER are not a part of this litigation.  However, DCI, as directed by the VAYNTER DEFENDANTS, without the consent of REKO (but with the action and knowledge of REGINA) sold 250,000 shares of Gopher common shares held in trust for the benefit of REKO in several fraudulent transactions to the SHIRINYAN DEFENDANTS, who apparently claim they paid for the shares.  Said 250,000 shares were transformed into at least four different stock certificates (Numbers 368, 369, 370, and 371 among others).   REKO never received any consideration therefor.

62.     The following allegations in this paragraph are under information and belief:  Although Plaintiff has not now been able to independently verify such, Plaintiff adopts its earlier allegation from the First Amended Complaint (the "FAC") that DCI has assigned it rights in all of the Gopher stock certificates it holds to REKO.   This includes without limitation stock certificates (Certificates 368, 369, 370 and 371).

63.     DCI currently has in its name approximately 5,890,000 common shares of Gopher.  These shares are in addition to the Gopher common shares in REKO's own name.  DCI holds whatever shares it owns in Gopher for the sole benefit of Plaintiff.  DCI currently refuses to transfer title to the shares in its own name to REKO despite the trust relationship alleged herein and the direct allegations in the FAC that it had assigned its rights in its shares to REKO (Paragraph 23 of the FAC).  Said certificates were also in the possession and/or control of GALINA during the times relevant to this case.  These certificates included certain Gopher stock certificates that were in the name of four alleged family trusts all having the last name "Merman" totaling 250,000 shares of Gopher Stock (collectively the "Merman Certificates") that had formerly been in DCI's name.   Plaintiff is informed and believes that GALINA stole and used the identity of unknown persons with the last name "Merman" and forged and/or falsified and manufactured signatures on alleged documents using the last name of "Merman" for the purpose of holding the stock making the alleged transfer entirely fraudulent or the Merman Certificates were part of a transaction that never closed and therefore belonged to REKO by way of assignment from DCI and/or because DCI held the stock in trust for REKO the actual owner.

64.     REKO has never consented to or authorized the sale or transfer of any of its Gopher shares.

65.     As part of the conspiracy to steal assets belonging to REKO, Plaintiff

26

is informed and believes that the VAYNTER DEFENDANTS conspired with the SHIRINYAN DEFENDANTS to transfer and convert the STOLEN REKO SHARES and the proceeds thereof.

66.     However, Plaintiff is informed and believes that GARY discovered additional facts about the conspiracy and became disenchanted and/or learned that GALINA was going to renege on sharing the proceeds from the plot and threatened to report the matter to the police. Plaintiff is informed and believes that thereafter REGINA and GALINA made a false police report claiming to have lost the STOLEN REKO SHARES and thereafter accused GARY of stealing the certificates from them to cover up the VAYNTER DEFENDANTS' wrongful actions.  Either way the STOLEN REKO SHARES were wrongfully stolen from REKO.

67.     REKO has therefore been the victim of thefts and losses consisting of at least 10,950,000 common shares of Gopher.  Said shares have a current value, in excess of $25,000,000.

68.     REKO has never consented to or authorized the sale or transfer of any of the shares of Gopher that it owned, and it has never received any proceeds from the alleged transfers.  All of the transferred shares and alleged proceeds were stolen from and converted from REKO pursuant to the conspiracy between the Defendants as set forth in this SAC.

69.     As a part of the conspiracy, the TRANSFER DEFENDANTS, or

certain of them: (a) forged the stock transfer powers related to the share certificates; (b) forged the medallion guarantees of the signatures necessary to consummate the transactions; (c) fraudulently and/or negligently submitted the forged stock powers to the BANKS; (d) fraudulently reported the certificates as lost or stolen on or about September 26, 2016 to the Los Angeles Police Department when in reality they had been allegedly sold for consideration without authority; (e) forged "cancelled" checks to falsely show consideration and/or provided false documentation of payments; (f) forged notary public authentications; (g) stole the identify of  alleged buyers and/or sellers and forged documents; (h) presented and cashed checks (that were or should have been written to REKO) in their own accounts and accounts held by companies they owned using incomplete and false indorsements; and (i) stole and used third parties identities.  The BANKS participated in the conspiracy and/or aided and abetted the conspiracy as set forth herein, including without limitation, by converting funds belonging to Plaintiff by accepting incomplete and false indorsements on checks that were or should have been in the name of Plaintiff.  In addition, the BANK issued medallion guarantees without following Securities Transfer Agents Medallion Program ("STAMP") or internal policies that furthered the conspiracy.

70.    As a part of the conspiracy Plaintiff is informed and believes that the VAYNTER DEFENDANTS initially caused REKO to prosecute this litigation

against the interests of REKO for the purposes of hiding their role in this conspiracy.  Plaintiff is informed and believes that the following false allegations, among others, were made in the FAC without REKO's authority and have not and cannot be verified since:

<u>"The Theft and Subsequent Unauthorized Transfer of the Stock Certificates--"</u>

On a date that is presently unknown to Plaintiff, but was sometime after approximately April 12, 2016, Gopher stock certificate nos. 368, 369, 370, 371, 372, 373 and 375 were stolen from a private residence in Tarzana California."'

--   "On information and belief, the stock certificates were stolen by Defendant Gary Shirinyan."

--   "Ms. Kats, the managing member of Reko, first discovered the theft of Reko's stock certificates on or about September 26, 2016."

71.    Plaintiff is informed and believes, and thereon alleges, that sometime after April 12, 2016 and prior to September 26, 2016, Gopher stock certificates nos. 372, 373 and 375 came into the possession of the SHIRINYAN DEFENDANTS.  The SHIRINYAN DEFENDANTS failed to pay REKO **any consideration** for the stock transferred to them.

72.    Plaintiff is informed and believes that to the extent that any consideration was paid, such funds went to the TRANSFER DEFENDANTS as part of the conspiracy.

73.    At no time did REKO or REKO via DCI ever agree to transfer any

stock in Gopher to any of the Defendants.

74.    The stock transfers referred to above were improper in that none of the Defendants had the legal right to own or transfer the stock or possess any proceeds for the alleged sale of the stock.

75.    After RMY took over as the manager of REKO, he requested and made a demand on REGINA for the turn-over of all of the records and other personal property belonging to REKO.  REGINA has failed to turn over said REKO records and property and continues to refuse to do so and has instead attempted to extort concessions from REKO by threatening to "go to the FBI", the Los Angeles Police Department, the State Bar of California regarding alleged unspecified matters.

## FIRST CAUSE OF ACTION

## <u>CONVERSION</u>

(Against the TRANSFER DEFENDANTS and DOES 70-80)

76.    Plaintiff repeats and incorporates by this reference the allegations contained in Paragraphs 1 through 75 above as though fully set forth herein.

77.    The stock certificates and common stock shares described above were and are the property of Plaintiff because Plaintiff did not authorize any transfer of Gopher stock and by the assignment of the rights in the stock from DCI (stock owned in trust for Plaintiff).

78.    The stock certificates and common stock shares in Gopher are

identifiable and/or are capable of being made certain from a review of either the information of Plaintiff and/or the records of Defendants.

79.     The TRANSFER DEFENDANTS intentionally and substantially interfered with the ownership of the Gopher stock and stock certificates owned by REKO by taking possession of the stock certificates and converting them for their own use and enjoyment.

80.     The VAYNTER DEFENDANTS intentionally and substantially interfered with the ownership of the Gopher stock and stock certificates owned by REKO and the rights assigned to REKO by DCI by preventing REKO and DCI from having access to the stock certificates.  Furthermore, to the extent that the stock certificates were transferred for consideration, said consideration was also converted to the TRANSFER DEFENDANTS through the use of stolen identities and false and incomplete indorsements.

81.     On information and belief, the VAYNTER DEFENDANTS assisted in the transfer of the Gopher stock certificates to the SHIRINYAN DEFENDANTS and other third parties by making false statements of fact.  The BANK defendants aided and abetted the conspiracy by, among other things:

A.     Allowing the use of improper signatures without any evidence of authority;

B.     The improper use of improper notary jurats;

C.     The use of inaccurate statements from the alleged transferors and

transferees;

D.     The necessary documents were not properly executed and were executed by the wrong parties;

E.     The failure to follow STAMP standard and policies;

F.     The failure to follow the standards and policies of the industry;

G.     The failure to follow the BANKS' own standards and policies;

H.     The failure to properly train BANK employees;

I.     The conversion of the alleged proceeds from the transfer of REKO's stock certificates through stolen identities and false and incomplete indorsements on checks that were accepted for deposit by the BANKS; and

J.      The acceptance of additional "fees", gratuities, and/or bribes from the alleged transferors and transferees to ignore or cover up the deficiencies in the transfer documentation and indorsements.

K.     By negotiating checks that were written to REKO and depositing them into other defendants' accounts.

82.    Plaintiff did not consent in any manner to the TRANSFER DEFENDANTS and other third parties taking the stock certificates and common stock shares.

83.    The TRANSFER DEFENDANTS and other third parties have not returned the stock certificates or the common stock shares or the missing stocks and/or the proceeds of the alleged sales of the stock certificates, after demand was

32

made by REKO.

84.     As a result of the actions of TRANSFER DEFENDANTS in misappropriating and converting the stock certificates and common stock shares of Gopher, Plaintiff has been damaged in an amount that is presently uncertain, but is not less than $25,000,000, the exact amount of which will be proven at trial.  As further equitable relief, Plaintiff is requesting that the Court issue temporary, preliminary and/or and permanent injunctions enjoining the TRANSFER DEFENDANTS from selling, hypothecating or transferring any Gopher stock or proceeds from the sale of transfer of any Gopher stock that is in their possession and further ordering that any such Gopher stock or proceeds from Gopher stock be turned over to Plaintiff forthwith and further enjoining said defendants from converting any property belonging to REKO in the future.

85.     In doing the actions mentioned above, including forging documents and participating in the fraudulent and unauthorized transfer of stock certificates, the TRANSFER DEFENDANTS acted with malice, oppression, or conscious disregard for the common law rights of Plaintiff. Such wrongful and intentional acts justify awarding Plaintiff punitive damages pursuant to California Civil Code § 3294 in an amount sufficient to deter future similar conduct by such Defendants. Accordingly, Plaintiff is entitled to and hereby requests punitive damages to be paid to Plaintiff in a sum to be proven at trial.

## SECOND CAUSE OF ACTION

### CONVERSION

(Against the BANKS and DOES 81-85)

86.     Plaintiff repeats and incorporates by this reference the allegations contained in Paragraphs 1 through 85 above as though fully set forth herein.

87.     The stock certificates and common stock shares described above were and are the property of Plaintiff because Plaintiff did not authorize any transfer of Gopher stock and by the assignment of the rights in the stock from DCI (stock owned in trust for Plaintiff) as well as the proceeds from such wrongfully converted stock certificates.

88.     The proceeds from the sale of the stock certificates and common stock shares in Gopher are identifiable and/or are capable of being made certain from a review of either the information of Plaintiff and/or the records of Defendants.  To the extent that the stock certificates were allegedly transferred for consideration, said consideration was also converted to the TRANSFER DEFENDANTS through the use of stolen identities and false and incomplete indorsements.

89.     The Defendant BANKS converted the proceeds of said sale of Plaintiff's stock by, among other things:

A.     Allowing the use of improper signatures without any evidence of authority;

34

B.     The improper use of improper notary jurats;

C.     The use of inaccurate statements from the alleged transferors and transferees;

D.     The necessary documents were not properly executed and were executed by the wrong parties;

E.     The failure to follow STAMP standard and policies;

F.     The failure to follow the standards and policies of the industry;

G.     The failure to follow the BANKS' own standards and policies;

H.     The failure to properly train BANK employees;

I.     The conversion of the alleged proceeds from the transfer of REKO's stock certificates through stolen identities and false and incomplete indorsements on checks that were accepted for deposit by the BANKS; and

J.     The acceptance of additional "fees", gratuities, and/or bribes from the alleged transferors and transferees to ignore or cover up the deficiencies in the transfer documentation and indorsements.

K.     By negotiating checks that were written to REKO and depositing them into other defendants' accounts.

90.     Plaintiff did not consent in any manner to the TRANSFER DEFENDANTS and other third parties taking the stock certificates and common stock shares and/or the deposit of funds into a non-REKO account.

91.     As a result of the actions of BANKS in converting the proceeds of the

sales of stock certificates and common stock shares of Gopher, Plaintiff has been damaged in an amount that is presently uncertain, but is not less than $25,000,000, the exact amount of which will be proven at trial.

92.     In doing the actions mentioned above, the BANKS acted with malice, oppression, or conscious disregard for the common law rights of Plaintiff. Such wrongful and intentional acts justify awarding Plaintiff punitive damages pursuant to California Civil Code § 3294 in an amount sufficient to deter future similar conduct by such Defendants. Accordingly, Plaintiff is entitled to and hereby requests punitive damages to be paid to Plaintiff in a sum to be proven at trial.

## THIRD CAUSE OF ACTION

### UNJUST ENRICHMENT

(Against the TRANSFER DEFENDANTS and DOES 70-80)

93.     Plaintiff repeats and incorporates by this reference the allegations contained in Paragraphs 1 through 92 above as though fully set forth herein.

94.     As a legal, direct, and proximate result of the wrongdoing as set forth above, the sums obtained by the TRANSFER DEFENDANTS and other third parties were obtained by virtue of and in the course of their wrongdoing and were therefore not properly earned.

95.     As a result of defendant's unlawful misappropriation of Plaintiff's stock and proceeds of alleged sales, and unjust enrichment as alleged above, the TRANSFER DEFENDANTS are in possession of stock and money that belongs

to Plaintiff.

96.     Said sums must therefore be disgorged and repaid to Plaintiff in a sum that is presently unknown but is in excess of $25,000,000, together with interest at the legal rate thereon from on or about April 12, 2016, to the time of the entry of judgment herein.

97.     The court should also impose a constructive trust to prevent unjust enrichment to the TRANSFER DEFENDANTS and should require that any revenues and profits derived from the above-mentioned sale of stocks be placed in a constructive trust in favor of Plaintiff.

## FOURTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA PENAL CODE § 496

(Against the TRANSFER DEFENDANTS and DOES 70-80)

98.     Plaintiff repeats and incorporates by this reference the allegations contained in Paragraphs 1 through 97 above as though fully set forth herein.

99.     Section 496 of the California Penal Code provides, in pertinent part: "(a) Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision

37

(b) of Section 1170.

". . . (c) Any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."

100.   The TRANSFER DEFENDANTS and other third parties received the Gopher stock certificates as described above, knowing the same to be stolen from REKO.

101.   The TRANSFER DEFENDANTS and other third parties have concealed, transferred, and/or withheld the stolen stock certificates as well as the missing shares from REKO and/or DCI or have assisted others in doing the same.

102.   In light of the foregoing, Plaintiff is entitled to treble damages authorized under Penal Code § 496(c) against the TRANSFER DEFENDANTS and other third parties. The actual damages sustained by REKO by the theft and concealment of the Gopher common stock described above is not less than $25,000,000 and will be proven at trial. Plaintiff therefore seeks treble damages herein in the sum of not less than $75,000,000.

**FIFTH CAUSE OF ACTION**

<u>NEGLIGENCE</u>

(Against the BANKS and DOES 81-85)

103.   Plaintiff repeats and incorporates by this reference the allegations contained in Paragraphs 1 through 102 above as though fully set forth herein.

38

104.   Pursuant to California Civil Code Section 1714(a), Defendants Wells Fargo, Citibank, and Chase (the "BANKS") owed a duty of care to REKO. Defendants the BANKS are responsible not only for the result of their own willful acts, but also for an injury occasioned to REKO by want of ordinary care or skill in the management of the BANKS' property or person.

105.   Defendants BANKS owe Plaintiff a duty of care to prudently investigate and verify the authenticity of the signatures prior to issuing a Medallion Signature Guarantee which affects the Plaintiff and by allowing the use of stolen identities and/or fraudulent and/or incomplete indorsements on check for deposit of the proceeds of the sale of REKO's stock certificates in accounts belonging to the TRANSFER DEFENDANTS.

106.   The Plaintiff is informed and believes and thereupon alleges that Defendant Wells Fargo, at a location in Sherman Oaks, California, improperly issued medallion stamp guarantees (stamp #X0209353) in connection with stock certificate nos. 373 and 375 based on an unauthorized signature that was not that of the then-manager of REKO (REGINA).

107.   The Plaintiff is informed and believes and thereupon alleges that Defendant Citibank, at a location in Sherman Oaks, California, improperly issued a medallion guarantee (stamp #0209080) in connection with stock certificate nos. 368, 369, and 370 based on false, forged, and/or inconsistent information furnished by GSS.

108    The Plaintiff is informed and believes and thereupon alleges that Defendant Chase, at a location in Sherman Oaks, California, improperly issued a medallion stamp guarantee (stamp # Z9010406) in connection with stock certificate no. 372 based on an unauthorized signature that was not that of the then-manager of REKO (REGINA).

109.   The Plaintiff is informed and believes and thereupon alleges that Defendant Wells Fargo improperly allowed the deposit of checks and other deposit items made out to REKO but not endorsed by REKO in non-REKO accounts in a presently unknown amount. REKO does not know the totality of such deposits but will amend this complaint when that amount becomes known.

110.   The Plaintiff is informed and believes and thereupon alleges that Defendant Citibank improperly allowed the deposit of checks and other deposit items made out to REKO but not endorsed by REKO in non-REKO accounts in a presently unknown amount. REKO does not know the totality of such deposits but will amend this complaint when that amount becomes known.

111.   The Plaintiff is informed and believes and thereupon alleges that, Defendant Chase improperly allowed the deposit of checks and other deposit items made out to REKO but not endorsed by REKO in non-REKO accounts in a presently unknown amount. REKO does not know the totality of such deposits but will amend this complaint when that amount becomes known.

112.   REGINA, the then-manager of REKO, did not sign the stock

40

certificates referred to above and did not indorse any of the checks for the alleged proceeds of the sales of REKO's stock certificates.

113.   The BANKS negligently, carelessly, recklessly, and wantonly caused injury to Plaintiff in that among other things: The BANKS conducted themselves in such a manner that Defendants were able to fraudulently transfer part of a controlling interest in a publicly traded corporation with documentation that was obviously forged.

114.   The Plaintiff is informed and believes and thereupon alleges that the BANKS were notified, either by the obvious nature of the fraudulent transactions or by direct knowledge, that the transactions to which the medallion guarantees were provided were unauthorized.

115.   The Plaintiff is informed and believes and thereupon alleges that the BANKS, at locations in Los Angeles County, California, negligently medallion guaranteed the forged signatures without adequate safeguards or verification of the signatories.

116.   The Plaintiff is informed and believes and thereupon alleges that the BANKS failed to follow their own internal procedures and/or reasonable business practices accepted in the industry when deciding to issue the medallion guarantees referred to above, and as a result, negligently guaranteed the forged signatures without adequate verification of the individual who actually signed the documents.

117.   At the time of the forgery, all of the shares of stock were valued in an

41

amount that is presently unknown but was not less than $25,000,000 and the wrongfully indorsed and deposited checks total an amount in excess of $500,000.

118.   The BANKS had a duty to Plaintiff to ensure that they had in place adequate safeguards for verification of the signatories before the same were medallion guaranteed and adequate safeguards to ensure that false identities and indorsements could not be used to convert funds. More specifically, the BANKS failed to meet their duty of care as set forth above.

119.   As a direct result of the medallion guarantees by the BANKS and the acceptance of wrongful indorsements, the stock shares belonging to the Plaintiff were transferred to third party entities and the alleged proceeds from the alleged sales of REKO's stock were converted to the TRANSFER DEFENDANTS, all to the economic damage of the Plaintiff.

120.   Plaintiff had no knowledge of the illegal transfers of their respective shares of Gopher stock and the conversion of the alleged proceeds from the sales of Gopher stock, which would not have occurred but for the negligence of the BANKS.

121.   As a result of the BANKS' breach of their duty of care, Plaintiff has been damaged in an amount that is presently uncertain, but is not less than $25,0000,000, the exact amount of which will be proven at trial.

# SIXTH CAUSE OF ACTION

## AIDING AND ABETTING CONSPIRACY RE STOCK FRAUD AND CONVERSION

### (Against the BANKS and DOES 81-85)

122.   Plaintiff repeats and incorporates by this reference the allegations contained in Paragraphs 1 through 121 above as though fully set forth herein.

123.   Defendant the BANKS are responsible not only for the result of their own willful acts, but also for an injury occasioned to REKO by want of ordinary care or skill which aided and abetted the TRANSFER DEFENDANTS in their conspiracy as described in this SAC.

124.   The Plaintiff is informed and believes and thereupon alleges that Defendant Wells Fargo, at a location in Sherman Oaks, California, improperly issued medallion stamp guarantees (stamp #X0209353) in connection with stock certificate nos. 373 and 375 based on an unauthorized signature that was not that of the then-manager of REKO (REGINA).

125.   The Plaintiff is informed and believes and thereupon alleges that Defendant Citibank, at a location in Sherman Oaks, California, improperly issued a medallion guarantee (stamp #0209080) in connection with stock certificate nos. 368, 369, and 370 based on false, forged, and/or inconsistent information furnished by GSS.

126.   On information and belief, Defendant Chase, at a location in Sherman

Oaks, California, improperly issued a medallion stamp guarantee (stamp # Z9010406) in connection with stock certificate no. 372 based on an unauthorized signature that was not that of the then-manager of REKO (REGINA).

127.   REGINA did not sign the stock certificates referred to above.

128.   The BANKS conducted themselves in such a manner that Defendants were able to fraudulently transfer a controlling interest in a publicly traded corporation with documentation that was obviously forged and the deposit of the alleged proceeds from the sale in bank accounts belonging to the TRANSFER DEFENDANTS.

129.   The Plaintiff is informed and believes and thereupon alleges that the BANKS were notified, either by the obvious nature of the fraudulent transactions or by direct knowledge, that the transactions to which the medallion guarantees were provided were unauthorized.

130.   The Plaintiff is informed and believes and thereupon alleges that the BANKS, at locations in Los Angeles County, California, negligently medallion guaranteed the forged signatures without adequate safeguards or verification of the signatories and negligently allowed the use of stolen identities and fraudulent and incomplete indorsement to convert funds from REKO.

131.   The Plaintiff is informed and believes and thereupon alleges that the BANKS failed to follow their own internal procedures and/or reasonable business practices accepted in the industry when deciding to issue the medallion guarantees

referred to above, and as a result, negligently guaranteed the forged signatures without adequate verification of the individual who actually signed the documents.

132.   At the time of the forgery, all of the shares of stock were valued in an amount that is presently unknown but was not less than $25,000,000 as well as the conversion of alleged proceeds in an amount in excess of $500,000.

133.   As part of the STAMP program the BANKS were required to ensure that they had in place adequate safeguards for verification of the signatories before the same were medallion guaranteed.  More specifically, the BANK defendants aided and abetted the conspiracy among the TRANSFER DEFENDANTS by, among other things:

A.   Allowing the use of improper signatures without any evidence of authority;

B.   The improper use of improper notary jurats;

C.   The use of inaccurate statements from the alleged transferors and transferees;

D.   The necessary documents were not properly executed and were executed by the wrong parties;

E.   The failure to follow STAMP standard and policies;

F.   The failure to follow the standards and policies of the industry;

G.   The failure to follow the BANKS' own standards and policies;

H   The failure to properly train the BANKS' employees;

I.     The conversion of the alleged proceeds from the transfer of REKO's stock certificates through stolen identities and false and incomplete indorsements on checks that were accepted for deposit by the BANKS; and

J.     The acceptance of additional "fees", gratuities, and/or bribes from the alleged transferors and transferees to ignore or cover up the deficiencies in the transfer documentation and indorsements.

K.     By negotiating checks that were written to REKO and depositing them into other defendants' accounts.

134.   As a direct result of the medallion guarantees by the BANKS and the acceptance of stolen identities and fraudulent indorsement, the stock shares belonging to the Plaintiff and the proceeds for alleged sales were transferred to the TRANSFER DEFENDANTS and third-party entities, all to the economic damage of the Plaintiff.

135.   Plaintiff had no knowledge of the illegal transfers of their respective shares of Gopher stock and the conversion of the alleged proceeds from the sales from REKO, which would not have occurred but for the BANKS aiding and abetting the TRANSFER DEFENDANTS in their wrongful conspiracy.

136.   As a result of the BANKS' aiding and abetting the TRANSFER DEFENDANTS in their wrongful conspiracy, Plaintiff has been damaged in an amount that is presently uncertain, but is not less than $25 million, the exact amount of which will be proven at trial.

## SEVENTH CAUSE OF ACTION

<u>Negligence</u>

(Against REGINA and DOES 86-89)

137.   Plaintiff repeats and incorporates by this reference the allegations contained in Paragraphs 1 through 136 above as though fully set forth herein.

138.   As the then-manager of REKO, REGINA, among other duties, owed a duty to REKO to manage it in a reasonable, honest and competent manner and, at least, refrain from allowing others from converting, stealing or retaining REKO's assets.

139.   REGINA breached her duty of care by, among other breaches, failing to manage REKO in a reasonable, honest and competent manner and by allowing others to convert and/or steal and/or retain REKO's assets, by failing to file any or all requisite tax returns and tax information forms, failing to open a bank account for Plaintiff, and by failing, as Plaintiff is informed and believes and thereupon alleges, to purchase insurance that would cover REKO in cases of embezzlement, conversion or theft.

140.   As the proximate result of REGINA's breaches, REKO has suffered damages in the amount of at least $25,000,000.

# EIGHTH CAUSE OF ACTION

## (FRAUD)

(Against REGINA and the other TRANSFER DEFENDANTS and DOES 70-80

and 86-89)

141.   Plaintiff hereby incorporates paragraphs 1 through 140, inclusive, as though fully set forth herein.

142.   REGINA represented to Plaintiff that she could and would manage REKO and its assets competently, honestly and to REKO's benefit.

143.   More specifically, REGINA represented that she would not sell any of the Gopher Stock owned by REKO without specific authorization from REKO's Member.

144.   REGINA also represented that she was and would be always honest with REKO's Member and would protect its interest.

145.   The TRANSFER DEFENDANTS knew, or should have known, REGINA's position was accompanied by said responsibilities and thus were aware of REGINA's misrepresentations and adopted them as their own which were then used to transfer REKO's property to other parties.

146.   REKO reasonably relied on REGINA's representations and allowed her to manage its business and take possession of all of the Gopher Stock Certificates and other property it owned.  More specifically, REGINA took possession of Gopher Stock Certificates No.: 358, 368, 369, 370, 373, 375, and

377 along with the rest of the Gopher Stock Certificates for approximately 5,000,000, plus or minus, common shares of Gopher (collectively all the STOLEN REKO SHARES) that have disappeared, been lost, or been stolen during the managership of REGINA.

147.   REGINA fraudulently claimed ownership to the stolen property, including but not limited to, the Gopher stock certificates described herein and/or allowed the TRANSFER DEFENDANTS to claim ownership and sold them and/or allowed the TRANSFER DEFENDANTS  to sell them to the TRANSFER DEFENDANTS and/or other third parties and concealed the transfers from Plaintiff and retained and/or allowed the TRANSFER DEFENDANTS or other Co-Defendants to retain any consideration received for the transfers.   REGINA also failed to investigate or prosecute the transferees for the purpose of returning the assets and/or consideration to REKO.

148.   Most of the STOLEN REKO SHARES have now been transferred to various transferees.

149.   REGINA, the other TRANSFER DEFENDANTS and/or other Co-Defendants  accomplished the transfers and without permission or authority from REKO or its Member and, among other wrongful things: (a) forged the stock transfer powers related to the share certificates; (b) forged the medallion guarantees of the signatures necessary to consummate the transactions; (c) fraudulently and/or negligently submitted the forged stock powers to the BANKS;

49

(d) fraudulently reported the certificates as lost or stolen on or about September 26, 2016 to the Los Angeles Police Department when in reality they had been allegedly sold for consideration without authority; (e) forged "cancelled" checks to falsely show consideration and/or provided false documentation of payments; (f) forged notary public authentications; (g) stole the identify of alleged buyers and/or sellers and forged documents; (h) presented and cashed checks (that were or should have been written to REKO) in their own accounts and accounts held by companies they owned using incomplete and false indorsements; and (i) stole and used third parties identities.

150.   REGINA, and the other VAYNTER DEFENDANTS and/or other Co-Defendants caused REKO to commence this litigation, file the initial two complaints in this litigation against the interests of REKO for the purpose of hiding their role in the fraud.

151.   At no time did REKO or REKO via DCI ever agree to transfer any stock in Gopher.

152.   Plaintiff is informed and believes, and thereon alleges that, at the time REGINA, the other TRANSFER DEFENDANTS made the foregoing misrepresentations, they knew or should have known that the misrepresentations were false.

153.   As a proximate result of the actions and/or inactions of REGINA and the other TRANSFER DEFENDANTS" misrepresentations, and Plaintiffs

reasonable reliance on them, Plaintiff has suffered injury in an amount of at least $25,000,000.  As further equitable relief, Plaintiff is requesting that the Court issue temporary, preliminary and/or and permanent injunctions enjoining the TRANSFER DEFENDANTS from selling, hypothecating or transferring any Gopher stock or proceeds from the sale of transfer of any Gopher stock that is in their possession and further ordering that any such Gopher stock or proceeds from Gopher stock be turned over to Plaintiff forthwith and further enjoining said defendants from committing any fraud against REKO in the future.

154.   REGINA and the other TRANSFER DEFENDANTS, acted oppressively, maliciously, with a conscious disregard of the rights of others, and with the intent to defraud Plaintiff. In light of the foregoing conduct, plaintiff is entitled to punitive damages in an amount to be proven at trial.

## NINTH CAUSE OF ACTION

### (BREACH OF CONTRACT)

(Against REGINA and DOES 86-89)

155.   Plaintiff hereby incorporates paragraphs 1 through 154, inclusive, as though fully set forth herein.

156.   As the manager of REKO, REGINA entered into an oral and partially written contract that required her, among other duties, to manage Plaintiff in a competent matter and in pursuant to applicable law and REKO's operating agreement and be completely honest with REKO's member.  The operating

agreement does not allow the manager to sell or transfer any of REKO's assets without authorization from REKO's member.  No such authorization was ever requested of or granted by REKO's member.

157.   REGINA violated her contractual duties to REKO as set forth above and by, among other things, failing to get authorization to sell or transfer any of REKO's shares of Gopher stock, fraudulently claimed ownership to the STOLEN REKO SHARES and/or by allowing the TRANSFER DEFENDANTS  to claim ownership by concealing the transfers from Plaintiff, and Plaintiff's member and by retaining and/or allowing the TRANSFER DEFENDANTS to retain any consideration received for the transfers.   REGINA also failed to investigate or prosecute the transfers for the purpose of returning the assets and/or consideration to REKO.

158.   Most of the STOLEN REKO SHARES have now been transferred to various transferees.   REGINA also violated her duties to Plaintiff by failing to and refusing to turn over REKO's property, including, without limitation the STOLEN REKO SHARES, and records to Plaintiff's successor manager.

159.   REGINA also breached her contractual duties and allowed the TRANSFER DEFENDANTS to accomplish the transfers and without permission or authority from REKO or its Member and, among other wrongful things(a) forged the stock transfer powers related to the share certificates; (b) forged the medallion guarantees of the signatures necessary to consummate the transactions;

(c) fraudulently and/or negligently submitted the forged stock powers to the BANKS; (d) fraudulently reported the certificates as lost or stolen on or about September 26, 2016 to the Los Angeles Police Department when in reality they had been allegedly sold for consideration without authority; (e) forged "cancelled" checks to falsely show consideration and/or provided false documentation of payments; (f) forged notary public authentications; (g) stole the identify of alleged buyers and/or sellers and forged documents; (h) presented and cashed checks (that were or should have been written to REKO) in their own accounts and accounts held by companies they owned using incomplete and false indorsements; (i) stole and used third parties identities; (j) lied to the owner of REKO; (k) failed to file tax returns for REKO and issue K-1s to the member; (l) failed to keep any books of account for REKO; (m) failing to open and maintain a bank account for REKO; and (n) failed to make any reports to the owner of REKO.

160.    Plaintiff is informed and believes that REGINA, and the other VAYNTER DEFENDANTS caused REKO to prosecute this litigation against the interests of REKO for the purpose of hiding their role in the fraud.  More specifically, REGINA and the other VAYNTER DEFENDANTS made false allegations, among others, without REKO's authority and have not been verified as set forth above.

161.    At no time did REKO or REKO via DCI ever agree to transfer any

stock in Gopher.

162.   The TRANSFER DEFENDANTS knew or should have known  of REGINAS's contractual duties and wrongful acts and adopted them as their own. Plaintiff is informed and believes, and thereon alleges that, at the time of REGINA's breaches the other TRANSFER DEFENDANTS were or should have been aware of them.  More specifically, the TRANSFER DEFENDANTS were aware and specifically participated the REGINA's breaches of contract by, among other things, buying stock at substantially below market values and diverting the proceeds of the sales from Plaintiff.

163.   As a proximate result of REGINA breaches, Plaintiff has suffered injury in a certain and ascertainable amount in excess of $25,000,000.  As further equitable relief, Plaintiff is requesting that the Court issue temporary, preliminary and/or and permanent injunctions enjoining the TRANSFER DEFENDANTS from selling, hypothecating or transferring any Gopher stock or proceeds from the sale of transfer of any Gopher stock that is in their possession and further ordering that any such Gopher stock or proceeds from Gopher stock be turned over to Plaintiff forthwith and further enjoining said defendants from any further breaches of contract in the future.

# TENTH CAUSE OF ACTION

## (BREACH OF FIDUCIARY DUTY)

(Against REGINA and the other TRANSFER DEFENDANTS and DOES 70-80 and 86-89)

164.   Plaintiff hereby incorporates paragraphs 1 through 163, inclusive, as though fully set forth herein.

165.   As the manager of REKO, REGINA, among other duties, owed it a duty of the utmost care and absolute honesty in all of her dealings with it and its behalf; and a duty to manage Plaintiff in a competent matter and in pursuant to applicable law and REKO's operating agreement.  The operating agreement does not allow the manager to sell or transfer any of REKO's assets without authorization from REKO's member.  No such authorization was ever requested of or granted by REKO's member.

166.   REGINA violated her fiduciary duties to REKO as set forth above and by, among other things, failing to get authorization to sell or transfer any of REKO's shares of Gopher stock, fraudulently claimed ownership to the STOLEN REKO SHARES; by allowing the TRANSFER DEFENDANTS to claim ownership by concealing the transfers from Plaintiff, and Plaintiff's member; and/or by retaining and/or allowing the TRANSFER DEFENDANTS to retain any consideration received for the transfers.   REGINA also failed to investigate or prosecute the transfers for the purpose of returning the assets and/or consideration

55

to REKO.

167.   Most of the STOLEN REKO SHARES have now been transferred to various transferees.   REGINA also violated her duties to Plaintiff by failing to and refusing to turn over REKO's property, including, without limitation the STOLEN REKO SHARES, and records to Plaintiff's successor manager.

168.   REGINA breached her fiduciary duties and allowed the TRANSFER DEFENDANTS to accomplish the transfers and without permission or authority from REKO or its Member and, among other wrongful things: (a) forged the stock transfer powers related to the share certificates; (b) forged the medallion guarantees of the signatures necessary to consummate the transactions; (c) fraudulently and/or negligently submitted the forged stock powers to the BANKS; and (d) fraudulently reported the certificates as stolen on or about September 26, 2016 to the Los Angeles Police Department when in reality they had been sold for consideration without authority ; (e) Forged "cancelled" checks to falsely show consideration; (f) Forged notary public authentication while knowing said notary no longer had a current license; (g) forged identify of  alleged buyers and/or sellers; (h) stole third parties identities; (i) lied to the owner of REKO; (j) failed to file tax returns for REKO and issue K-1s to the member; (k) failed to keep any books of account for REKO; (l) failed to open and maintain a bank account for REKO;  and (m) failed to make any reports to the owner of REKO.

169.   Plaintiff is informed and believes that REGINA, and the other

VAYNTER DEFENDANTS caused REKO to prosecute this litigation against the interests of REKO for the purpose of hiding their role in the fraud.  More specifically, REGINA and the other VAYNTER DEFENDANTS made false allegations, among others, without REKO's authority and have not been verified as set forth above.

170.   At no time did REKO or REKO via DCI ever agree to transfer any stock in Gopher.

171.   The TRANSFER DEFENDANTS knew or should have known of REGINA's fiduciary duties and wrongful acts and adopted them as their own and therefore are responsible for the breaches of fiduciaries duties pursuant to their conspiracy set forth in the SAC.  Plaintiff is informed and believes, and thereon alleges that, at the time of REGINA's breaches the other TRANSFER DEFENDANTS were or should have been aware of them.  More specifically, the TRANSFER DEFENDANTS were aware and specifically participated the REGINA's breaches of contract by, among other things, buying stock at substantially below market values and diverting the proceeds of the sales from Plaintiff.

172.   As a proximate result of REGINA breaches, Plaintiff has suffered injury in a certain and ascertainable amount in excess of $25,000,000. As further equitable relief, Plaintiff is requesting that the Court issue temporary, preliminary and/or and permanent injunctions enjoining the TRANSFER DEFENDANTS

from selling, hypothecating or transferring any Gopher stock or proceeds from the sale of transfer of any Gopher stock that is in their possession and further ordering that any such Gopher stock or proceeds from Gopher stock be turned over to Plaintiff forthwith and further enjoining said defendants from any breaches of fiduciary duty against REKO in the future.

173.   Defendants acted oppressively, maliciously, with a conscious disregard of the rights of others, and with the intent to defraud Plaintiff. In light of the foregoing conduct, plaintiff is entitled to punitive damages in an amount to be proven at trial.

## ELEVENTH CAUSE OF ACTION

### (CONSPIRACY)

(Against all Defendants)

174.   Plaintiff hereby incorporates paragraphs 1 through 173, inclusive, as though fully set forth herein.

175.   The TRANSFER DEFENDANTS conspired to convert Plaintiff assets, the proceeds of the transfer of Plaintiff's assets, defraud Plaintiff and commit the wrongful acts set forth in this Second Amended Complaint.  The BANKS adopted and participated in the conspiracy and/or aided and abetted the TRANSFER DEFENDANTS in committing said wrongful acts.

176.   Each Defendant adopted the wrongful acts of the co-conspirators, participated in the conspiracy; and/or performed acts in furtherance of said

conspiracy.  The Defendants knew, or should have known, of REGINA's fiduciary duties as manager of REKO and her involvement in the conspiracy and therefore adopted her fiduciary obligations and are fully liable for any damage caused by the breaches thereof.

177.   Plaintiff suffered damages that were proximately caused by said conspiracy in a certain and ascertainable amount in excess of $25,000,000. As further equitable relief, Plaintiff is requesting that the Court issue temporary, preliminary and/or and permanent injunctions enjoining the TRANSFER DEFENDANTS from selling, hypothecating or transferring any Gopher stock or proceeds from the sale of transfer of any Gopher stock that is in their possession and further ordering that any such Gopher stock or proceeds from Gopher stock be turned over to Plaintiff forthwith and further enjoining said defendants from any breaches of fiduciary duty against REKO in the future.

178.   Defendants acted oppressively, maliciously, with a conscious disregard of the rights of others, and with the intent to defraud Plaintiff. In light of the foregoing conduct, plaintiff is entitled to punitive damages in an amount to be proven at trial.

# TWELFTH CAUSE OF ACTION

## (VIOLATION OF FEDERAL CIVIL RICO STATUTE)

### (Against all Defendants except GV Global Communications, Inc., Legacy Resources Group, Inc., Regina Kats, and Arthur Kats)

179.    Plaintiff hereby incorporates paragraphs 1 through 178, inclusive, as though fully set forth herein.

180.    The federal Racketeer Influenced and Corrupt Organization Act is found at 18 U.S.C. 1961 et. Seq. ("RICO").

181.    This cause of action is brought under the RICO statute.

182.    At all relevant times, each and all of the Defendants is and were a person within the meaning of 18 U.S.C. Section 1961(3) and 1962(c). (All of the defendants other than the BANKS, REGINA, ARTHUR, LEGACY, GV and DOES 70-89 shall be referred to as the "RICO TRANSFER DEFENDANTS".)

## The RICO Enterprise

183.    the RICO enterprise at issue in this case involves predicate acts that occurred as early as April 2015, with further predicate acts through September 2016, and with continuing predicate acts through to the present time (the "RICO Enterprise")  The predicate acts concerning the RICO TRANSFER DEFENDANTS began within about a month of Plaintiff's formation in early 2015 when the first of the REKO owned GPI stock certificates was converted on or about March 29, 2015.   The RICO TRANSFER DEFENDANTS' predicate acts

60

extended through the last of the stock conversion in or about July 2016 and the false police report in September 2016 and the predicate acts continue to this date through the perjury and false documents submitted by the RICO TRANSFER DEFENDANTS in discovery in this case.

184.   The RICO Enterprise at issue in this case involves a scheme for converting the REKO owned stock certificates of GPI, assigning alleged ownership of said stock certificates with the aid of the BANKS, transferring the stock certificates to third parties,  failing to turn over any alleged proceeds from any such transfers thereby converting any such proceeds, and using the converted certificates and proceeds to illegally manipulate the price of the GPI shares.  Each of the stock transfers constitute separate predicate acts since they involved different parties.  Furthermore, the stock manipulation part of enterprise also constituted a separate predicate act each time any of the stock was sold.  The predicate acts and the enterprise continued for more than two years and should easily satisfy the requirement of a pattern of continuous related activities.

185.  The BANKS participated by aiding and abetting the RICO Enterprise by providing the necessary Medallion Guaranties that allowed the stock conversion to take place and which constitute predicate acts in the RICO Enterprise.  Although the BANKS participate in the Securities Transfer Agent Medallion Program ("STAMP") program, in reality, they ignore virtually all of its guidelines and requirements.  The STAMP program is intended to provide a

method of verifying the authority and authenticity of the person and signatures on stock transfer documentation.

186.  The BANKS use the STAMP program as a "loss leader" service for their customers and do not charge their customers or only charge a minimal amount for the service.  Very low-level employees issued the Medallion Guarantees with inadequate or no training or supervision.  Apparently, the BANKS rely on statutes and caselaw that they contend allegedly limits their liability to the buyer who also presumably is the person in possession of the stock. As such, any liability would be indirect and derivative from the damaged party the actual rightful owner of stolen stock and apparently, the BANKS have determined that the cost of complying with the proper procedures and the value of the customer good will is greater than any liability exposure.

187.  Said Medallion Guarantees were a necessary part of Defendants' RICO Enterprise because the stock could not be transferred without them and the BANKS were necessarily aware that they were potentially harmful and exploitable instrumentalities that could be, would be, and were misused by nefarious persons. As such the BANKS were complicit, aided, and abetted and were an integral part of Defendants' RICO Enterprise and were fully aware of and/or willfully blind to the Defendants' RICO Enterprise.  Presumably, the BANKS predicate acts actually continue to this date as they have presumably continued to ignore the guidelines and continue to improperly issue Medallion Guaranties that can be and

are being used for criminal purposes.

188.   Each of the BANKS were responsible for more than one predicate act.  Additionally, the BANKS presumably continue to issue Medallion Guaranties under the same standards and practices and that can be used for nefarious purposes to this date.  As such, the BANKS cannot legitimately attempt to minimize their involvement in Defendants' RICO Enterprise.

189.   The BANKS were aware that their failure to follow proper procedures under the STAMP program would allow the conversion of stock including the Gopher stock.  However, the BANKS purposely and knowingly did not investigate the legitimacy of the transfers.  As such, they rendered themselves willfully blind regarding transactions and cannot legitimately deny that they had knowledge of the Defendants' RICO Enterprise or, at least, what they could have discovered if that have done the due diligence they were required to do under the STAMP program procedures.   The BANKS then proceeded to issue the required Medallion Guaranties and Defendants' RICO Enterprise could not have succeeded without assistance from the BANKS and therefore the BANKS were active participants in the RICO Enterprise.

### The VAYNTERS.

190.   From, at least March 2015 the VAYNTERS participated in the RICO Enterprise as follows:

A.      By placing into the channels of interstate commerce instruments and

63

physical stock certificates representing Reko-owned common shares of Gopher Protocol Inc., a Nevada corporation ("GPI" or "Gopher"), which instruments and certificates had been stolen and/or converted from Reko (the "CERTIFICATES").

B.   By placing into the channels of interstate commerce assignments of ownership interests in Reko-owned common shares (the "ASSIGNMENTS") in GPI for the purpose of facilitating the illicit and illegal transfer of stolen and/or converted stock ownership interests in GPI.

C.   By turning over the ASSIGNMENTS and CERTIFICATES for the purpose of accomplishing the transfer of said ASSIGNMENTS and CERTIFICATES to third parties through channels of interstate commerce for consideration which was then embezzled and/or retained without the consent of Plaintiff.

D.   By taking the ASSIGNMENTS and CERTIFICATES to the BANKS for the purpose of validating the ASSIGNMENTS and CERTIFICATES for transfer by the GPI-authorized stock transfer agent because the schemers knew that such validation was necessary to receive the necessary title transfer so that they could place the ASSIGNMENTS and CERTIFICATES in interstate commerce for the purpose of sale.

E.   By transferring the ASSIGNMENTS and CERTIFICATES to third parties to disguise the fact that the sales of the ASSIGNMENTS and CERTIFICATES in interstate commerce were being conducted by corporate (as to GPI) insiders in violation of the Securities Acts of 1933 and 1934, and the regulations relating thereto.

F.   By buying shares in the open market, and selling the shares owned by REKO that had been converted and/or stolen, for the purpose of illegally manipulating the price of the GPI shares.

G.   By entering into an agreement to sell shares of REKO's Gopher Stock (the "WELCH TRANSACTION") to a third party named David Howard Welch ("WELCH").  WELCH has alleged that he paid for the stock and that the Gopher stock was never delivered.

H.   By converting he alleged sale proceeds to their own uses.

I.   By using the WELCH TRANSACTION for the purpose of furthering the stock manipulation plan.

J.   By using their experience in numerous "pump and dump" stock manipulations enterprises over that past approximately fifteen years to attempt to manipulate the value of Gopher's stock which has resulted in volatile stock prices, disruption to Gopher's business and its business plans, and losses to Gopher and its shareholders.

K.   By issuing a stolen stock certificate issued to Levgenia Sapa for

65

1,000,000 shares ("Million Shares").

L.    By, in or about August 2015, falsifying a transfer by DCI purported to transfer 62,500 Gopher shares to the Simon J. Merman Living Trust; 62,500 Gopher shares to the Trevor J. Merman Living Trust; 62,500 Gopher shares to the James K. Merman Living Trust; and 62,500 Gopher shares the Theresa E. Merman Living Trust (collectively the Merman Trusts").

M.    By, in or about July 2016, assisting the SHIRINYAN DEFENDANTS in acquiring stock that was supposedly in the names of the Merman Trusts and Plaintiff.

N.    By filing a false criminal complaint stating that the Gopher stock certificates were lost and/or stolen which was another predicate act in the RICO Enterprise.

O.    By selling Gopher stock of a third party, Stanley Hills, LLC ("Stanley Hills") to a company named Micaddan Marketing Consultants, LLC ("Micaddan") without authorization.

**The SHIRINYAN DEFENDANTS**

191.    The SHIRINYAN DEFENDANTS participated in the RICO Enterprise as follows:

A.    By assisting in the conversion of REKO's Gopher shares for nefarious purposes including, without limitation, as part of an intended pump and

dump enterprise.  The increase in allegedly available-Gopher stock in the market caused the stock to become increasingly volatile and eventually the price became much lower thereby causing damage to REKO, Gopher's business and business plans, and Gopher's shareholders.

B.     Converting REKO's Gopher stock in a series of more than eight transactions over an approximate two-year period each of which were a predicate act in the overall RICO Enterprise.  The transactions involved different stock being sold to different Defendants.

C.     By claiming to have purchased stolen stock from the Merman Trusts and Plaintiff.   After the stock transferred to the SHIRINYAN DEFENDANTS, the SHIRINYAN DEFENDANTS sold the stock thus lowering the price of Gopher shares and causing Plaintiff losses.

D.      By producing numerous false checks through discovery which purported to document their payments to Plaintiff and the Merman Trusts, including alleged proof that the checks cleared the respective banks.

### The RICO TRANSFER DEFENDANTS

192.   The RICO TRANSFER DEFENDANTS participated in the RICO Enterprise by being aware of and using the BANKS, as well as particular persons working therein, that were incompetent and/or susceptible to influence, bribery, gifts, or other corruption and therefore could be counted on for issuing the necessary Medallion Guarantees regarding the stock transfers without following

67

the proper procedures put into place by the major "medallion guarantee associations", including , without limitation, STAMP, and required to be followed by the BANKS.

## The BANK DEFENDANTS

193.   The BANKS participated in the RICO Enterprise as follows:

A.      Each of the BANKS participated in the Securities Transfer Agent Medallion Program ("STAMP") and issued the Medallion Guarantees that were necessary to complete the transfer of REKO's Gopher stock pursuant to Defendants' RICO Enterprise without following the procedures required by STAMP and/or proper standards and suing the STAMP program as a "loss leader" service for their customers without charge their customers or only a minimal amount.  As such, inadequate or even no due diligence is provided and inadequate or no records are kept.  Very low-level employees issued the Medallion Guarantees with inadequate or no training or supervision.  Apparently, the BANKS rely on statutes and caselaw that they contend allegedly limits their liability.  Apparently, the cost of complying with the proper procedures and the value of the customer good will is greater than any liability exposure and the BANKS have made that calculation and did not conduct any adequate due diligence before issuing the Medallion Guarantees at issue in this case.  As such the BANKS were complicit, aided and abetted and were an integral part of Defendants' RICO Enterprise and were fully aware of and/or willfully blind to the

Defendants' RICO Enterprise.  The BANKS predicate acts continue to this date as they have presumably continued to ignore the guidelines and continue to improperly issue Medallion Guaranties that can be and are being used for criminal purposes.

       B.    The BANKS.

           a.    As to Defendant Wells Fargo.

           (i)    The various RICO TRANSFER DEFENDANTS obtained Medallion Guarantees from Wells Fargo with improper and inadequate documentation, authority and/or signatures.  Wells Fargo Bank knew, or should have known that the transactions were fraudulent, because Wells Fargo failed to properly fill out the documents in violation of its procedures, failed to follow the STAMP procedures, and the forms themselves were not proper, which include, but are not limited to, the following:

Stock No. 371

           (ii)    On or about July 25, 2016, Wells Fargo by Jodennie C. Canapi, provided the medallion stamp and signature allegedly for the transfer of stock to AMP Group Holdings, Inc. for the following:

- Signatory on the Transfer Instruction Form is allegedly Theresa Merman, but the signature does not have a medallion guarantee as required, so the transfer was not proper.

- Irrevocable Stock Power is notarized by Elena Tzvetanova Nikolova

69

(Commission No. 212661); not a medallion signature as required.

- There was not a jurat or acknowledgement attached to the purportedly notarized Irrevocable Stock Power.

- There is an absence of any documents regarding who is the authorized agent for owner of AMP

- The Irrevocable Stock Power that contained the Medallion signature guarantee was not properly executed. The form is to authorize the transfer of stock where the certificate on the back is not signed or not signed correctly. The "undersigned" would not be AMP Group Holdings, Inc. signing the document, but would have to be Theresa Merman. Nonetheless, the bank executed a Medallion Signature guarantee of someone on behalf of AMP Group Holdings, Inc.

- The Medallion Stamp Log states that a "statement" is the supporting documents; yet, the only alleged "statement" included in the file was an alleged ACAP Financial, Inc. document showing that AMP Group Holdings may have owned shares of Gopher Stock. This document does not purport to provide any proof of authorization by Paul Kozlov to execute any documents on behalf of AMP Group Holdings.

- Based upon the Medallion Signature guarantee on July 26, 2016, a new stock certificate was issued for 62,500 shares to AMP Group Holdings, Inc.

70

- Wells Fargo did not follow STAMP policies on stock transfers and required proof of documentation.

- Not clear whether bank employee took a bribe to improperly prepare documents, or whether or not the employee was not properly trained on the procedures and without proper training did not know what it was doing in violation of SEC requirements.

<u>Stock No. 373</u>

(iii)    On or about July 27, 2016, Wells Fargo by Jodennie C. Canapi, provided the medallion stamp and signature allegedly for the transfer of stock to HJK Trade, Inc. for the following:

- Transfer Instruction Form contains a Medallion Signatory Guarantee of Wells allegedly stating that Reko Holding, LLC is the signature.

- There is an absence of documents regarding who at Reko is authorized to sign the Transfer Instruction Form.

- There is an absence of any documents regarding who is the authorized agent for owner of HJK Trade Inc.

- The Irrevocable Stock Power that contained the Medallion signature guarantee was not properly executed.  The form is to authorize the transfer of stock where the certificate on the back is not signed or not signed correctly.  The "undersigned" would not be HJK Trade Inc. signing the document, but would be Reko Holdings, LLC.

71

Nonetheless, the bank executed a Medallion Signature guarantee of someone on behalf of HJK Trade Inc.

- The Medallion Stamp Log states that "articles of incorporation – general stock corp." is the supporting documents; yet, the Articles of Incorporation of a General Stock Corporation" does not state that Hovik Kostandyan was authorized to execute any documents on behalf of HJK Trade, Inc. but that he is the agent of service of process. The incorporator was listed as Michell Lucia and not Hovik Kostandyan. There is insufficient documents to show that Hovik Kostandyan had any authority to execute any documents.

- Based upon the Medallion Signature guarantee on July 28, 2016, a new stock certificate was issued for 213,000 shares to HJK Trade Inc.

- Well Fargo did not follow STAMP policies on stock transfers and required proof of documentation.

- Not clear whether bank employee took a gratuity or bribe to improperly prepare documents, or whether or not the employee was not properly trained on the procedures and without proper training did not know what it was doing in violation of SEC requirements.

Stock No. 375

(iv)     On or about July 25, 2016, Wells Fargo by Jodennie C. Canapi, provided the medallion stamp and signature for the transfer of stock to AMP

72

Group Holdings, Inc. for the following:

- Transfer Instruction Form allegedly notarized by Elena Tzvetanova Nikolova (Commission No. 212661); not a medallion signature as required.

- There was not a jurat or acknowledgement attached to the Transfer Instruction Form.

- Signatory on the Transfer Instruction Form is not the transferor as required by the form.

- There is an absence of any documents regarding who is the authorized agent for owner of AMP

- The Irrevocable Stock Power that contained the Medallion signature guarantee was not properly executed.  The form is to authorize the transfer of stock where the certificate on the back is not signed or not signed correctly.  The "undersigned" would not be AMP Group Holdings, Inc. signing the document, but would have to be Reko Holdings, LLC.  Nonetheless, the bank executed a Medallion Signature guarantee of someone on behalf of AMP Group Holdings, Inc.

- The Medallion Stamp Log states that a "statement" is the supporting documents; yet, the only alleged "statement" included in the file was an alleged ACAP Financial, Inc. document showing that AMP Group

Holdings may have owned stock in ACAP.  This document does not purport to provide any proof of authorization by Paul Kozlov to execute any documents on behalf of AMP Group Holdings and does not meet the requirements set forth in the form.

- Based upon the Medallion Signature guarantee on July 28, 2016, a new stock certificate was issued for 213,000 shares to AMP Group Holdings, Inc.

- Wells Fargo's own notes afterwards states that they suspected it to be customer Paul Kozlov.

- Wells Fargo did not follow STAMP policies on stock transfers and required proof of documentation.

- At this time, it is not clear whether the bank employee took a gratuity or bribe to improperly apply the Medallion Signature guarantee, or whether or not the employee was not properly trained on the procedures and without proper training did not know what it was doing in violation of SEC requirements.

(v)      At a minimum, Wells Fargo Bank, N.A. aided and abetted the Defendants' RICO Enterprise and the conversion of the stock certificates.

b.      As to Defendant CitiBank

(i)      The various RICO TRANSFER DEFENDANTS obtained Medallion Guarantees from CitiBank with improper and inadequate

74

documentation, authorities and/or signatures.  CitiBank knew, or should have

known, that the transactions were fraudulent, because Defendants failed to

properly fill out the documents in violation of its procedures, failed to follow the

STAMP procedures, and the forms themselves were not proper, which include, but

are not limited to, the following:

- On four different dates, Gary Shirinyan purportedly executed medallion signatures to purportedly transfer Gopher stock at Citibank.  This includes on July 14, 2016; July 15, 2016; July 16, 2016; and July 19, 2016. None of the medallion guarantees for Gary Shirinyan on those four dates followed STAMP procedures and the forms were not properly executed.

- Citibank improperly issued a medallion stamp guarantee for the stock certificates despite the fact that they bore the forged signature of certain members of the Merman family (the "Mermans").

- Citibank did not have the Mermans execute the book for the medallion signatures and did even confirm who was executing the documents on behalf of the alleged Mermans.

- If Citibank had conducted a reasonable investigation, it would have quickly and easily discovered that the Mermans

were not present, that the transaction was a fraudulent

transaction and that Direct Communications did not

consummate a transaction with any of the alleged Mermans.

    c.    As to Chase:

    (i)    In each transaction, the various RICO TRANSFER

DEFENDANTS obtained Medallion Guarantees from Chase with improper and

inadequate documentation, authorities and/or signatures.  Chase knew or was

willfully blind to the facts.  The transactions were fraudulent, and Defendants

failed to properly fill out the documents in violation of Chase procedures, failed to

follow the STAMP procedures, and the forms themselves were not proper, which

include, but are not limited to, the following:

- On or about July 22, 2018, Chase affixed a medallion signature on the Irrevocable Stock Power for Stock No. 372 allegedly for the transfer of stock to Vladimir Hanin.  Chase apparently failed to keep any records at all regarding the issuance of the Medallion Guaranties.  Such clearly shows inadequate due diligence and record keeping.  Additionally, it raises an issue as to whether Chase has purposely or accidently committed spoliation of evidence with regard to this matter.

- Plaintiff is informed and believes that Chase has issued other medallion guarantees without having adequate records and/or

following its internal and STAMP procedures regarding the

issuance of a medallion guarantee.

194.   The aforementioned Defendants violated RICO by defrauding

Plaintiff and others, inducing them to enter into transactions for the purchase and

sale of stock certificates that do not belong to Defendants without authority or

approval from the actual owner Plaintiff and by converting the stock certificates

and the proceeds from the sale transaction to Defendant's own use.  Pursuant to 18

U.S.C. Section 1961 Defendants violated RICO by using federal wires and the

United States Postal Service by using phone conversations, wired funds, emails,

texts, and mail to advance their illegal activities as well as transmitting the

proceeds from their illegal activities.

195.   The details of the transactions as set forth above, include without

limitation:

A.     Allowing the use of improper signatures without any evidence of

authority;

B.     The improper use of improper notary jurats;

C.     The use of inaccurate statements from the alleged transferors and

transferees;

D.     The necessary documents were not properly executed and were

executed by the wrong parties;

E.     The failure to follow STAMP standard and policies;

F.      The failure to follow the standards and policies of the industry;

G.      The failure to follow the BANKS' own standards and policies;

H.      The failure to properly train the BANKS' employees;

I.      The conversion of the alleged proceeds from the transfer of REKO's stock certificates through stolen identities and false and incomplete indorsements on checks that were accepted for deposit by the BANKS; and

J.      The acceptance of additional "fees", gratuities, and/or bribes from the alleged transferors and transferees to ignore or cover up the deficiencies in the transfer documentation and indorsements.

K.      By negotiating checks that were written to REKO and depositing them into other defendants' accounts.

L.      Failing to file tax returns for REKO and issue K-1s to the member and by failing to open a bank account for REKO.

M.      By otherwise engaging in any conduct that is likely to cause confusion or mistake and/or deceive as to the who the Defendants were acting on behalf or under what authority and/or as to the origin, sponsorship, and/or approval of the subject stock certificates.

196.    The Defendants conducted this activity through a pattern of racketeering activity in furtherance of their ongoing scheme to defraud and steal property from Plaintiff.  This pattern of racketeering activity includes, without limitation, the use of interstate wires to obtain money and property by means of

false and fraudulent pretenses, representations and promises; and the transport of monies and other property obtained by theft, conversion or fraud having a value in excess of $5,000 to persons outside of the state of California.  Defendants have unlawfully, knowingly, and intentionally engaged in two or more acts indictable under the Federal Wire Fraud Statute (18 U.S.C. Section 1343) and the Federal Interstate Transportation of Stolen Property Statutes (18 U.S.C. Sections 2314 & 2315), having unlawfully, fraudulently and intentionally engaged in predicate acts of racketeering with the meaning of 18 U.S.C. Section 1961(1)(b).

197.   Each of the foregoing acts of racketeering by the aforementioned Defendants in furtherance of the common purpose of Defendants unlawful enterprise was unlawful, fraudulent, intentionally related, continuous, and part of a pattern of conduct towards multiple victims and continued for a substantial period of time. It remains and continues to be the common purpose of Defendant to defraud REKO and other stockholders and purchasers.

198.   As a direct and proximate result of Defendants' willful and unlawful participation in and conduct through a pattern of racketeering in violation of 18 U.S.C. Section 1962, Plaintiff has been injured in business and property in an amount in excess of $25,000,000. As further relief, Plaintiff is requesting that the Court issue temporary, preliminary and/or and permanent injunctions enjoining the RICO TRANSFER DEFENDANTS from selling, hypothecating or transferring any Gopher stock or proceeds from the sale of transfer of any Gopher

stock that is in their possession and further ordering that any such Gopher stock or proceeds from Gopher stock be turned over to Plaintiff forthwith and further enjoining said defendants from violating the RICO statues in the future.

199.   The conduct of the Defendants was willful, wanton, and deliberate, constituting fraud and entitling Plaintiff to an award of exemplary and punitive damages in an amount to be proven at trial.  By reason of these violations, Plaintiff is further entitled to recover triple damages and attorney's fees pursuant to 18 U.S.C. Section 1964(c).

## THIRTEENTH CAUSE OF ACTION

### (CONSPIRACY TO VIOLATE FEDERAL CIVIL RICO STATUTE)

(Against all Defendants except GV Global Communications, Inc., Legacy Resources Group, Inc., Regina Kats, and Arthur Kats)

200.   Plaintiff hereby incorporates paragraphs 1 through 199, inclusive, as though fully set forth herein.

201.   In commission of the acts of racketeering set forth in the Eleventh Cause of Action, the Defendants conspired to violate 18 U.S.C. Section 1962(c), all in violation of 18 U.S.C. Section 1962(d).

202.   In the furtherance of the conspiracy, each of the Defendants were aware of the fraudulent nature of the scope of the violations and agreed to the commission of and participated in at least two acts of racketeering set forth above or to otherwise facilitate the fraudulent schemes and agreed to violate 18 U.S.C.

Section 1962(c).  More specifically, each of the Defendants violated RICO by defrauding Plaintiff and others, inducing them to enter into transactions for the purchase and sale of stock certificates that do not belong to Defendants without authority or approval from the actual owner Plaintiff and by converting the stock certificates and the proceeds from the sale transaction to Defendant's own use. Pursuant to 18 U.S.C. Section 1961 Defendants violated RICO by using federal wires and the United States Postal Service by using phone conversations, wired funds, emails, texts, and mail to advance their illegal activities as well as transmitting the proceeds from their illegal activities.

203.   In addition to the acts described in the Twelfth Cause of Action the Defendants violated RICO by:

A.   Making at least three different false statements to federally-insured banking institutions in violation of 18 U.S.C. §1014 in or around 2016.

B.   Willfully depositing $20,000, a sum in excess of $10,000, by dividing said sum into three different deposits to stay under the $10,000 mandatory reporting requirement on June 1, 2016 at 2:37 p.m., 3:11 p.m., and 3:24 p.m. at the Bank of America in violation of the "anti-structuring statute" 31 U.S.C. §§ 5322-5324.

C.   Willfully failing to report, and otherwise intending to hide, unlawful income by failing to file federal tax returns in 2015 and 2016 in violation of 18 U.S.C. § 371.

D.      Willfully failing to report, and otherwise intending to hide, unlawful income by filing false federal tax returns in 2015 and 2016 in violation of 26 U.S.C. § 7206(1).

E.      Willful tax evasion in 2015 and 2016 by hiding income from the United States government in violation of 26 U.S.C. § 7201.

F.      Stealing (and committing "theft") in 2015 and 2016 property from REKO in violation of California Penal Code §484 on at least four different occasions.

G.      Retaining in 2015 and 2016 property stolen from REKO in violation of California Penal Code §496 on at least four different occasions.

H.      Willfully failing to cause REKO to file federal income tax returns for REKO for the tax years 2015 and 2016 to protect the RICO TRANSFER DEFENDANTS and each of them and concealing the role of the RICO TRANSFER DEFENDANTS in the conspiracy.

I.      Willfully failing to prepare, issue and file federal and state Form 1099-misc statements of compensation for REKO for the tax years 2015 and 2016 to protect the VAYNTERS, allow the VAYNTERS to evade their taxes, and concealing the role of the VAYNTERS in the conspiracy.

J.      Using the U.S. Mail, and other instrumentalities of interstate commerce to willfully conspire to defraud the Plaintiff.

K.      Willfully causing REKO to fail to file State of California income tax

82

returns for the years 2015 and 2016 for the purpose of concealing the income earned by the RICO TRANSFER DEFENDANTS in connection with the conspiracies alleged herein in violation of California Revenue & Taxation Code §19706.

L.   Willfully Failing to follow the proper procedures under the STAMP program and allowing the conversion of the Gopher Stock with knowledge that the RICO Enterprise could not succeed without the required Medallion Guaranties.

204.   As a direct and proximate result of Defendants' willful and unlawful participation in and conduct through a pattern of racketeering in violation of 18 U.S.C. Section 1962, Plaintiff has been injured in business and property in an amount in excess of $25,000,000.  As further relief, Plaintiff is requesting that the Court issue temporary, preliminary and/or and permanent injunctions enjoining all Defendants from selling, hypothecating or transferring any Gopher stock or proceeds from the sale of transfer of any Gopher stock that is in their possession and further ordering that any such Gopher stock or proceeds from Gopher stock be turned over to Plaintiff forthwith and further enjoining said defendants from conspiring to violate the RICO stature in the future.

205.   The conduct of the Defendants was willful, wanton, and deliberate, constituting fraud and entitling Plaintiff to an award of exemplary and punitive damages in an amount to be proven at trial.  By reason of these violations, Plaintiff is further entitled to recover triple damages and attorney's fees pursuant

1   to 18 U.S.C. Section 1964(c).

2

**FOURTEENTH CAUSE OF ACTION**

3

4

(ACCOUNTING)

5

(Against REGINA and DOES 86-89)

6

7   206.   Plaintiff hereby incorporates paragraphs 1 through 205, inclusive, as

8   though fully set forth herein.

9   207.   REGINA as the manager of REKO owed it a duty to account for all

10  proceeds from the sale of any stock or other property of REKO as well as account

11

12  for REKO's stock and other property.

13  208.   REKO has made a demand on REGINA for said account and she has

14  failed to provide an accounting and refused to do so.

15

16  209.   Plaintiff is requesting that this Court provide an accounting for

17  REKO's stock and the proceeds from the sale of any stock or other property

18  belonging to REKO.

19

**FIFTEENTH CAUSE OF ACTION**

20

21  (FOR UNLAWFUL, FRAUDULENT & UNFAIR BUSINESS PRACTICES

22  [CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200, ET SEQ.])

23

(Against all Defendants)

24

25  210.   Plaintiff hereby incorporates paragraphs 1 through 209, inclusive, as

26  though fully set forth herein.

27

28  211.   In doing the wrongful acts described in this Second Amended

Complaint to transfer REKO's stock certificates, including without limitation:

A.      Allowing the use of improper signatures without any evidence of authority;

B.      The improper use of improper notary jurats;

C.      The use of inaccurate statements from the alleged transferors and transferees;

D.      The necessary documents were not properly executed and were executed by the wrong parties;

E.      The failure to follow STAMP standard and policies;

F.      The failure to follow the standards and policies of the industry;

G.      The failure to follow the BANKS' own standards and policies;

H.      The failure to properly train the BANKS' employees;

I.      The conversion of the alleged proceeds from the transfer of REKO's stock certificates through stolen identities and false and incomplete indorsements on checks that were accepted for deposit by the BANKS; and

J.      The acceptance of additional "fees", gratuities, and/or bribes from the alleged transferors and transferees to ignore or cover up the deficiencies in the transfer documentation and indorsements.

K.      By negotiating checks that were written to REKO and depositing them into other defendants' accounts.

L.      Otherwise engaging in any conduct that is likely to cause confusion

or mistake, or to deceive as to the who the Defendants were acting on behalf or under what authority with Plaintiff and/or as to any consummated business relationship between them, and/or as to the origin, sponsorship, and/or approval of the subject stock certificates; Defendants were acting in the course of business and their actions were business acts or practices.

212.   These business acts and practices were unfair, unlawful and/or fraudulent in violation of <u>California Business & Professions Code</u> Section 17200, et seq. and public policy.  The harm to Plaintiff are grave and outweighed any utility such acts may have had, if any.

213.   As the result of these unfair, unlawful, and/or fraudulent acts and practices, Defendants should be enjoined from conducting further such activities. To the extent that they received ill-gotten gains at the expense of Plaintiff in an amount to be proven at trial, but in a sum not less than $25,000,000 which gains will unjustly enrich Defendants if they should be ordered to disgorge and restore those gains to Plaintiff.

214.   The wrongful acts and practices of Defendants, unless enjoined by order of the court, will continue to cause irreparable harm to Plaintiff and Plaintiff will have no adequate remedy at law.

# SIXTEENTH CAUSE OF ACTION

## (DECLARATORY RELIEF)

### (Against all Defendants)

215.   Plaintiff hereby incorporates paragraphs 1 through 214, inclusive, as though fully set forth herein.

216.   Disputes have arisen, and actual controversies exist, between Plaintiff, on the one hand, and Defendants, on the other hand, concerning the respective rights, duties, and obligations of the parties regarding:

A.      That Robert M. Yaspan is the current manager and that REKO has one member that being a trust.

B.      That DCI has held and does hold the DCI Shares in trust for REKO, and/or assigned its Gopher stock to REKO as is alleged in the original, and/or first amended, complaint filed by DCI's lawyer, K&L, and approved by REGINA in her capacity as manager of REKO;

C.      That REKO has never authorized the sale or transfer of any of the Gopher shares held in its name;

D.      That REKO has not authorized DCI to transfer or sell any of the shares it holds in trust for REKO except for the transfer of 3,000,000 shares by Gopher paper stock certificate 358 in 2018;

E.      That the STOLEN REKO SHARES were sold without REKO's authorization;

F.     That GALINA was not REKO's agent for any purpose;

G.     That REGINA did not have authority to sell or transfer any of REKO's assets;

H.     Determining that TRANSFER DEFENDANTS have wrongfully converted Plaintiff's Gopher stock and the proceeds from the stock to their own use and/or have pretended to be Plaintiff and stolen its identity as well as the identities of third parties;

I.     That REKO did not authorize the sale of any of its Gopher stock, or stock certificates, to SP or SAPA;

J.     That the signatures of REGINA on all documents relating to the transfer of the STOLEN REKO SHARES were forged;

K.     That the signatures of the TRANSFER DEFENDANTS on some or all of the documents purporting to transfer title to the Gopher shares away from the Plaintiff were forged;

L.     That the STOLEN REKO SHARES are wrongfully in the possession of the TRANSFER DEFENDANTS;

M.     That REGINA breached her fiduciary duty by failing to file federal and state income tax returns for REKO, to file federal and state information forms required under state law, failing to open and maintain a bank account for REKO, and to otherwise comply with federal and state statutes and regulations regarding the collection of tax and other revenue.

N.      That Plaintiff is entitled to judgment for damages, injunction and otherwise as a result of the allegations in this complaint.

O.      That Plaintiff does own or has previously owned all of the Gopher shares held by the SHIRINYAN DEFENDANTS and is entitled to the return of said shares.

P.      That DCI does not own any shares in Gopher for its own benefit but rather hold same in trust for REKO.

Q.      That Plaintiff does own or has previously owned all of the Gopher shares held by the VAYNTER DEFENDANTS and is entitled to the return of said shares.

217.   Plaintiff is informed and believes and thereupon alleges that Defendants dispute Plaintiff's position on these issues and an actual conflict exists.

218.   Plaintiff desires a judicial determination of the respective rights and duties of Plaintiff and Defendants with respect to the above identified issues.

**SEVENTEENTH CAUSE OF ACTION**

<u>(FOR INJUNCTIVE RELIEF)</u>

(Against the TRANSFER DEFENDANTS and Does 1-89)

219.   Plaintiff hereby incorporates paragraphs 1 through 218, inclusive, as though fully set forth herein.

220.   As set forth in the First, Eighth, Ninth, Tenth, Eleventh, Twelfth,

Thirteenth, and Fifteenth causes of action, Plaintiff is entitled to equitable and injunctive relief based upon the defendants' wrongful actions.  Specifically, Plaintiff is entitled to the following relief:

A.      As further equitable relief in the First Cause of Action for Conversion, Plaintiff is requesting that the Court issue temporary, preliminary and/or and permanent injunctions enjoining the TRANSFER DEFENDANTS from selling, hypothecating or transferring any Gopher stock or proceeds from the sale of transfer of any Gopher stock that is in their possession and further ordering that any such Gopher stock or proceeds from Gopher stock be turned over to Plaintiff forthwith and further enjoining said defendants from converting any property belonging to REKO in the future.

B.      As further equitable relief Eighth Cause of Action for Fraud, Plaintiff is requesting that the Court issue temporary, preliminary and/or and permanent injunctions enjoining the TRANSFER DEFENDANTS from selling, hypothecating or transferring any Gopher stock or proceeds from the sale of transfer of any Gopher stock that is in their possession and further ordering that any such Gopher stock or proceeds from Gopher stock be turned over to Plaintiff forthwith and further enjoining said defendants from committing fraud on REKO in the future.

C.      As further equitable relief in the Ninth cause of action for Breach of Contract, Plaintiff is requesting that the Court issue temporary, preliminary and/or

and permanent injunctions enjoining the TRANSFER DEFENDANTS from selling, hypothecating or transferring any Gopher stock or proceeds from the sale of transfer of any Gopher stock that is in their possession and further ordering that any such Gopher stock or proceeds from Gopher stock be turned over to Plaintiff forthwith and further enjoining said defendants from breaching any fiduciary duty to REKO in the future.

D. As further equitable relief in the Eleventh cause of action for Conspiracy, Plaintiff is requesting that the Court issue temporary, preliminary and/or and permanent injunctions enjoining the TRANSFER DEFENDANTS from selling, hypothecating or transferring any Gopher stock or proceeds from the sale of transfer of any Gopher stock that is in their possession and further ordering that any such Gopher stock or proceeds from Gopher stock be turned over to Plaintiff forthwith and further enjoining said defendants from conspiring against REKO in the future.

E. As further relief in the Twelfth cause of action for Violation of Federal Civil RICO Statute, Plaintiff is requesting that the Court issue temporary, preliminary and/or and permanent injunctions enjoining the TRANSFER DEFENDANTS from selling, hypothecating or transferring any Gopher stock or proceeds from the sale of transfer of any Gopher stock that is in their possession and further ordering that any such Gopher stock or proceeds from Gopher stock be turned over to Plaintiff forthwith and further enjoining said defendants from

violating the RICO statute in the future.

F.     As further relief in the Thirteenth Cause of Action for RICO Conspiracy, Plaintiff is requesting that the Court issue temporary, preliminary and/or and permanent injunctions enjoining all Defendants from selling, hypothecating or transferring any Gopher stock or proceeds from the sale of transfer of any Gopher stock that is in their possession and further ordering that any such Gopher stock or proceeds from Gopher stock be turned over to Plaintiff forthwith and further enjoining said defendants from conspiring to violate the RICO stature in the future.

G.     As the result of these unfair, unlawful, and/or fraudulent acts and practices as set forth in the Fifteenth cause of action For Unlawful, Fraudulent & Unfair Business Practices [California Business & Professions Code Section 17200, et seq.], Defendants should be enjoined from conducting further such activities.  To the extent that they received ill-gotten gains at the expense of Plaintiff in an amount to be proven at trial, but in a sum not less than $25,000,000 which gains will unjustly enrich Defendants if they should be ordered to disgorge and restore those gains to Plaintiff.

221.   The Defendants' wrongful conduct, unless and until enjoined and restrained by order of this Court, will continue to cause great and irreparable injury to the Plaintiff.  Money damages will not be adequate and there exists no adequate remedy at law.  Plaintiff is suffering immediate irreparable injury as a

result of Defendants' acts as alleged herein, which shall continue if the temporary restraining order and preliminary injunction and permanent injunction are not granted as requested.

222.   The granting of a temporary restraining order and a preliminary injunction will not disserve the public and, in fact, is in the public interest, as public policy favors protecting the public against the confusion created by the defendants.  On the other hand, denying the injunction would at most benefit only the defendants in continuing their wrongful and unlawful conduct.

223.   Plaintiff has a strong likelihood of success in this action.  The balance of the pertinent factors tip in Plaintiff's favor and in favor of the issuance of a temporary restraining order, preliminary injunction and permanent injunction against the defendants as requested.

224.   Accordingly, Plaintiff requests that this Court issue an order temporarily restraining, and preliminarily and permanently enjoining the defendants as requested.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

## ON THE FIRST CAUSE OF ACTION FOR CONVERSION:

1.   For general, special and compensatory damages according to proof in an amount in excess of $25 million;

2.   For punitive and exemplary damages in an amount to be proven.

3.     For imposition of a constructive trust upon the personal property of Plaintiff which Defendants converted to their own use and benefit and/or for an equitable lien against the assets of Defendants.

**ON THE SECOND CAUSE OF ACTION FOR CONVERSION:**

1.     For general, special and compensatory damages according to proof in an amount in excess of $25 million.

2.     For punitive and exemplary damages in an amount to be proven.

**ON THE THIRD CAUSE OF ACTION FOR UNJUST ENRICHMENT:**

1.     For damages in a sum not less than $25,000,000.

2.     For the imposition of a constructive trust in favor of Plaintiff, consisting of all profits derived from the sale of stock proceeds.

3.     For prejudgment interest.

**ON THE FOURTH CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA PENAL CODE § 496:**

1.     For general, special and compensatory damages according to proof in an amount in excess of $25 million.

2.     For treble damages pursuant to Penal Code § 496.

**ON THE FIFTH CAUSE OF ACTION FOR NEGLIGENCE:**

1.     For general, special, and compensatory damages in an amount to be proven in excess of $25 million.

**ON THE SIXTH CAUSE OF ACTION FOR AIDING AND ABETTING CONSPIRACY:**

1.     For general, special, and compensatory damages in an amount to be proven in excess of $25 million.

2.     For punitive and exemplary damages in an amount to be proven.

**ON THE SEVENTH CAUSE OF ACTION FOR NEGLIGENCE:**

1.     For general, special, and compensatory damages in an amount to be proven in excess of $25 million.

**ON THE EIGHTH CAUSE OF ACTION FOR FRAUD:**

1.     For general, special, and compensatory damages in an amount to be proven in excess of $25 million.

2.     For punitive and exemplary damages in an amount to be proven.

**ON THE NINTH CAUSE OF ACTION FOR BREACH OF CONTRACT:**

1.     For general damages in an amount to be proven in excess of $25 million.

2.     For a temporary restraining order, preliminary injunction and permanent injunction restraining Regina Kats, and her respective agents, attorneys, successors, and representatives, and all persons acting in concert or participating with them, from selling, hypothecating any Gopher Stock or proceeds from the sale and turnover of any such Gopher Stock and/or proceeds to Plaintiff.

**ON THE TENTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY:**

    1.    For general, special, and compensatory damages in an amount to be proven in excess of $25 million.

    2.    For punitive and exemplary damages in an amount to be proven.

    3.    For a temporary restraining order, preliminary injunction and permanent injunction restraining Regina Kats, and her respective agents, attorneys, successors, and representatives, and all persons acting in concert or participating with them, from selling, hypothecating any Gopher Stock or proceeds from the sale and turnover of any such Gopher Stock and/or proceeds to Plaintiff.

**ON THE ELEVENTH CAUSE OF ACTION FOR CONSPIRACY:**

    1.    For general, special, and compensatory damages in an amount to be proven in excess of $25 million.

    2.    For punitive and exemplary damages in an amount to be proven.

    3.    For a temporary restraining order, preliminary injunction and permanent injunction restraining Regina Kats, and her respective agents, attorneys, successors, and representatives, and all persons acting in concert or participating with them, from selling, hypothecating any Gopher Stock or proceeds from the sale and turnover of any such Gopher Stock and/or proceeds to Plaintiff.

**ON THE TWELFTH CAUSE OF ACTION FOR VIOLATION OF FEDERAL CIVIL RICO STATUTE:**

1. For general, special, and compensatory damages in an amount to be proven in excess of $25 million.

2. For punitive and exemplary damages in an amount to be proven.

3. For a temporary restraining order, preliminary injunction and permanent injunction restraining Regina Kats, and her respective agents, attorneys, successors, and representatives, and all persons acting in concert or participating with them, from selling, hypothecating any Gopher Stock or proceeds from the sale and turnover of any such Gopher Stock and/or proceeds to Plaintiff.

4. For reasonable attorneys' fees.

**ON THE THIRTEENTH CAUSE OF ACTION FOR RICO CONSPIRACY:**

1. For general, special, and compensatory damages in an amount to be proven in excess of $25 million.

2. For punitive and exemplary damages in an amount to be proven.

3. For a temporary restraining order, preliminary injunction and permanent injunction restraining Regina Kats, and her respective agents, attorneys, successors, and representatives, and all persons acting in concert or participating with them, from selling, hypothecating any Gopher Stock or proceeds from the sale and turnover of any such Gopher Stock and/or proceeds to

Plaintiff.

4.      For reasonable attorneys' fees.

**ON THE FOURTEENTH CAUSE OF ACTION FOR ACCOUNTING:**

1.      For an accounting of all funds received on behalf of Plaintiff and all expenditures and/or transfers made.

**ON THE FIFTEENTH CAUSE OF ACTION FOR UNLAWFUL, FRAUDULENT & UNFAIR BUSINESS PRACTICES [CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200, ET SEQ.] :**

1.      For a preliminary and injunctive relief requiring Defendants to cease conducting business in an unfair manner.

2.      That the Court enter an order providing restitution to Plaintiff for all monies wrongfully obtained by the Defendants.

**ON THE SIXTEENTH CAUSE OF ACTION FOR DECLARATORY RELIEF:**

1.      For declaratory relief as requested.

**ON THE SEVENTEENTH CAUSE OF ACTION FOR INJUNCTION:**

1.      For injunctive relief as requested.

**ON ALL CAUSES OF ACTION:**

1.      For costs of suit.

2.      For such other and further relief as the Court deems just and proper.

# JURY DEMAND

Plaintiff hereby demands a trial by jury on all matters so triable.


DATED:  July 30, 2019          LAW OFFICES OF ROBERT M. YASPAN



By /s/ Robert M. Yaspan
    ROBERT M. YASPAN
    Attorneys for Plaintiff Reko Holdings, LLC